UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, AND ALAN CRENSHAW, *on behalf of themselves and other similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*, <br><br> Defendants. | Court File No. 25-cv-04669 (KMM/DTS) <br><br><br><br> **DECLARATION OF LUKE MIELKE** |

I, Luke Mielke, state as follows:

1. I am a 32-year-old resident of Falcon Heights, Minnesota. I work in political fundraising.

2. On the morning of Sunday December 14, 2025, I was parked in the Metro Transit Park and Ride lot near the Whipple building with a friend. My purpose in being there was to observe the area near the Whipple Building that I understand ICE uses to stage

its operations and to communicate what I observed to others. That morning, I saw a man, who I understood to be an ICE agent, holding a stack of license plates. I also observed him switch out a license plate on one of the parked vehicles. My friend video-recorded this.

3. On the morning of Tuesday, December 16, 2025, I went again with a friend to the Whipple Building to observe ICE and to disseminate information about ICE's activities in public.

4. I was in my car with my friend near the Whipple Building when we saw a convoy of vehicles leave. At the time, I assumed that the vehicles were being used by ICE or some affiliated agency. I noticed that the lead vehicle had no license plate. To continue my observation, I followed the convoy at a safe distance.

5. We followed the vehicles as they drove into St. Paul, up West Seventh, and onto 35E up into Blaine. We followed the vehicles on their circuitous path as they headed west into Anoka and then back south into Brooklyn Park on Highway 252. Eventually, the lead vehicle in the convoy exited Highway 252 onto 85th Avenue North. We followed. At all times, I was driving safely and within the posted speed limits.

6. Just off the 85th Avenue North exit, the lead car turned into an alley behind the Walgreens located at 2024 85th Avenue North, Brooklyn Park. I drove a short distance ahead and pulled into the Walgreens parking lot to see what the vehicle was up to.

7. As a turned into the parking lot, one of the other vehicles in the convoy, now behind me, turned on its red flashing lights and pulled me over in the parking lot. The first vehicle, which had pulled into the alley behind Walgreens swung around and boxed my car in.

8. An agent with a holstered sidearm exited the vehicle and walked up to my car. Although the cars had no markings identifying them as law enforcement and the agents did not wear uniforms, once the agent approached my car, I could see that he wore a badge on a chain around his neck that identified him as ICE.

9. The agent motioned for me to open the window, which I did. I asked if we were being detained and the agent said that we were. The agent asked what we were doing and demanded to see our identification. We refused to answer questions and declined to provide identification. The agent said he didn't need our IDs because they had already run our license plates.

10. The agent accused us of following him and told us that we had violated 18 U.S.C. § 111 because we were "interfering" with federal officers. The agent told us that he had our vehicle on tape following them and that they were going to submit the tape to the United States Attorney's Office for prosecution. We still refused to answer their questions and the agent told us that he would just give us a "warning." The agent then lectured us about how we needed to find a "legal" way to protest, despite the fact that we had broken no laws. Apparently satisfied that he had intimidated us, the agent went back to his vehicle and drove off and we were allowed to leave.

11. Being threatened with prosecution for doing nothing more than driving on a public road has made me more cautious in the way that I approach my observation activities. However, I believe that observation of ICE and dissemination of information about their activities is a crucial way for me to express dissent. I have already and plan to

- 4 -

continue to exercise my constitutional right to observe federal authorities' activities in public places.

**I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.**

Dated: 12/23/25
County: Ramsey

_____
Luke Mielke