## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MARGARITO CASTAÑON NAVA,** *et al.*, ) | |
| ) | **Case No. 18-cv-03757** |
| **Plaintiffs,** ) | |
| ) | **Judge Rebecca R. Pallmeyer** |
| **vs.** ) | |
| ) | **Class Action** |
| **DEPARTMENT OF HOMELAND** ) | |
| **SECURITY,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Margarito Castañon Nava, John Doe, Miguel Cortes Torres, Guillermo Hernandez Hernandez, Erick Rivera Sales, Illinois Coalition for Immigrant and Refugee Rights, and Organized Communities Against Deportations, on behalf of themselves and all Class Members, and Defendants Department of Homeland Security, Immigration and Customs Enforcement ("ICE"); Alejandro Mayorkas, Secretary, Department of Homeland Security; Tae Johnson, Acting Director, ICE; and Henry Lucero, Field Office Director, ICE Chicago Field Office, by and through their attorneys. This Agreement is effective as of the date it is executed by all Parties and upon final approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, as set forth below.

## I.  RECITALS

**A.**  On May 29, 2018, Plaintiffs filed suit in the Northern District of Illinois challenging ICE's conduct of warrantless arrests and vehicle stops in the Chicago Area of Responsibility.

**B.**  Plaintiffs' Second Amended Complaint ("Complaint") was filed on December 18, 2018.

**C.**  Plaintiffs allege statutory and constitutional violations resulting from ICE's large-scale and other indiscriminate enforcement actions that caused illegal warrantless arrests and vehicle stops. Plaintiffs allege that ICE's policy and practice of making warrantless arrests without the required individualized flight risk analysis is "final agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and constitutes a violation of 5 U.S.C. §§ 701-706 of the APA and 8 U.S.C. § 1357(a)(2). Plaintiffs further allege that Defendants violated Plaintiffs' Fourth Amendment rights by stopping certain individual Plaintiffs' vehicles without reasonable suspicion that they were aliens and in violation of immigration law. Plaintiffs

allege that Defendants' agents have a pattern and practice of making such illegal stops, and that this pattern and practice is a result of Defendants' lack of a policy for establishing and documenting a reasonable suspicion that an individual whom ICE has identified for arrest is within a vehicle before making a vehicle stop.

      **D.**    Plaintiffs further seek to represent a putative class of "[a]ll current and future persons whom ICE arrests or has arrested without having a warrant, within the area of responsibility of the ICE Chicago Field Office, who remain detained." (ECF No. 58, Second Amended Complaint ¶ 82.) Plaintiffs allege that Defendants violate 8 U.S.C. § 1357(a)(2) when, pursuant to the above-mentioned policy and practice, ICE officers arrest an individual without a warrant and without probable cause that the individual is likely to escape before a warrant can be obtained for the arrest. Some of the named Plaintiffs further seek to represent a subclass of all individuals "who were subject to a traffic stop initiated by ICE officers within the area of responsibility of the Chicago Field Office." (*Id.* ¶ 83.) Plaintiffs allege that Defendants violate the Fourth Amendment and 8 U.S.C. §§ 1357(a)(4), (a)(5) when, consistent with the above-mentioned pattern and practice, ICE officers conduct vehicle stops without a reasonable suspicion that at least one person in the vehicle is an alien and in the United States unlawfully.

      **E.**    Defendants deny all liability with respect to the Action, deny that they have engaged in any wrongdoing, deny the allegations in the Complaint, deny that they committed any violation of law, deny that they acted improperly in any way, and deny liability of any kind to the Plaintiffs or Class Members. Nonetheless, Defendants have agreed to the settlement and dismissal of the Action with prejudice in order to: (i) avoid the substantial expense, inconvenience, and distraction of further protracted litigation, including trial and appeal; and (ii) finally put to rest and terminate the Action and any and all Settled Claims as defined in Section II.

      **F.**    Both Plaintiffs and Defendants, through counsel, have conducted discussions and arm's-length negotiations regarding a compromise and settlement of the Action with a view to settling all matters in dispute.

      **G.**    This Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings regarding the Claims, or of any fault on the part of Plaintiffs or Defendants, and all such allegations are expressly denied. Nothing in this Agreement shall constitute an admission of liability. With the exception of the Broadcast Statement of Policy (attached as Appendix A), nothing in this Agreement shall be used as evidence of liability or non-liability by or against any Party. However, the use of the Broadcast Statement of Policy shall not be available for use in future litigation until eight (8) months, as measured from the Training Date, have expired, to give ample time for nationwide training and implementation.

      **H.**    Considering the benefits that the Plaintiffs and Class Members will receive from settlement of the Action and the risks of litigation, Class Counsel have concluded that the terms

and conditions of this Agreement are fair, reasonable, and in the best interests of the Plaintiffs and Class Members; Plaintiffs have agreed that Defendants shall be released from the Settled Claims pursuant to the terms and provisions of this Settlement Agreement; and Plaintiffs have agreed to the dismissal with prejudice of this Action and all Settled Claims as defined in Section II.

NOW, THEREFORE, it is hereby AGREED, by and among the Parties to this Agreement, through their respective attorneys, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties hereto from the Agreement, that the Settled Claims shall be compromised, settled, forever released, barred, and dismissed with prejudice, upon and subject to the following terms and conditions:

**II.     DEFINITIONS.** Whenever used in this Agreement, the following terms have the meanings set forth below:

**"Action"** means the civil action captioned *Castañon Nava, et al. v. Department of Homeland Security, et al.*, 1:18-cv-03757, United States District Court for the Northern District of Illinois.

**"Agreement"** means this Settlement Agreement, including all appendices.

**"Chicago Area of Responsibility"** means the area of the United States in which officers from the ICE Chicago Field Office are responsible for the enforcement of U.S. immigration law; this area consists of the states of Illinois, Indiana, Wisconsin, Missouri, Kentucky, and Kansas.

**"Class Member(s)"** means all current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the area of responsibility of the ICE Chicago Field Office.

**"Defendants"** means Department of Homeland Security, Immigration and Customs Enforcement (ICE); Alejandro Mayorkas, Secretary, Department of Homeland Security; Tae Johnson, Acting Director, ICE; and Henry Lucero, Field Office Director, ICE Chicago Field Office, and their successors.

**"Defendants' Counsel"** means the United States Department of Justice, Civil Division, Office of Immigration Litigation – District Court Section.

**"Effective Date of Settlement"** or **"Effective Date"** means the date when all of the following shall have occurred: (a) entry of the Preliminary Approval of the Settlement Agreement; (b) approval by the Court of this Settlement Agreement, following notice to the Class (if directed by the Court) and a fairness hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (c) entry by the Court of the Final Order approving the Settlement Agreement in all material respects and dismissing the case without prejudice with regard to all Settled Claims, with leave to enforce the Agreement at any time during the effective period; and (d) approval of the final training materials that result from this Agreement.

"**Effective Period**" means the period of time during which the provisions and obligations of this Agreement may be enforced.

"**ICE Officers**" means those officers assigned to Immigration and Customs Enforcement whose activities may involve making a warrantless arrest under 8 U.S.C. § 1357(a)(2).

"**Party**" or "**Parties**" means Plaintiffs and Defendants.

"**Plaintiffs**" means Margarito Castañon Nava, John Doe, Miguel Cortes Torres, Guillermo Hernandez Hernandez, Erick Rivera Sales, Illinois Coalition for Immigrant and Refugee Rights, and Organized Communities Against Deportations.

"**Plaintiffs' Counsel**" or "**Class Counsel**" means Winston & Strawn LLP, National Immigrant Justice Center, and the American Civil Liberties Union of Illinois. Should these entities change their names or merge with other entities, those new entities shall also qualify as Class Counsel.

"**Settled Claims**" means any and all demands, actions, causes of action, suits, obligations, assessments, damages, or liabilities, arising directly or indirectly out of, relating to, resulting from or in any way connected with alleged statutory and constitutional violations resulting from either the (1) warrantless arrests or (2) vehicle stops alleged in the Complaint that occurred before the end of the Effective Period. It is understood and agreed that the Settled Claims released in this Agreement do not include those based on warrantless arrests, including warrantless arrests resulting from vehicle stops, that occur after the Effective Period has concluded.

"**Settlement Protective Order**" means the protective order substantially in the form of Appendix B, which the Parties shall jointly request be entered by the Court and govern the exchange of materials contemplated by this Agreement by the Parties.

"**Training Date**" means that date by which the training of all ICE officers within the Chicago Area of Responsibility shall have taken place under the terms of this Agreement; this date shall be 45 days from the Effective Date.

"**Training Materials**" means those materials specifically created, adopted, or amended to ensure compliance with the terms of this Agreement regarding warrantless arrests, including warrantless arrests resulting from vehicle stops.


## III.     DURATION AND TERMINATION.

    **A.     Effective Period**     This Agreement shall be enforceable for a period of three years from the Effective Date; after which time, absent a pending motion to enforce its terms, the Agreement shall automatically terminate and dissolve without further action. If a motion to enforce under Section V.A of this Agreement is pending at the time the Agreement would otherwise terminate, all other obligations will cease and the only issue remaining will be the resolution of the pending motion.

### B.    Early Termination

1.     After a period of two years from the Effective Date has elapsed, Defendants may move the Court to advance the termination date of this Agreement.

2.     Any motion to advance the termination date of this Agreement shall be filed with Magistrate Judge Cummings or such other Magistrate Judge as may be assigned by the Court.

3.     At least 14 days prior to filing any motion to advance the termination date of this Agreement, Defendants shall meet and confer with Plaintiffs.

4.     In deciding whether to grant any motion to advance the termination date of this Agreement, the Court shall consider whether the facts and circumstances demonstrate Defendants have complied with the substantive terms of this Agreement and that further oversight is demonstrably unnecessary to ensure Defendants' continued compliance.

### C.    Effect of Agreement

1.     Upon approval of the Agreement by the Court, Plaintiffs shall dismiss the Action without prejudice, with leave to enforce its terms via the Conflict Resolution provisions set forth below.

2.     Upon termination of the Agreement, either through its terms or the mutual consent of the Parties, the Action shall be considered as dismissed with prejudice without further order of the Court being required.

## IV. AGREED-UPON TERMS

### A.    Broadcast Statement of Policy

1.     The Broadcast Statement of Policy (hereinafter "Broadcast") attached hereto in Appendix A shall be issued within ten (10) business days of the Effective Date.

2.     The Broadcast shall be issued to all ICE Officers nationwide.

3.     The terms of the Broadcast shall be enforceable under this Agreement upon the receipt of training by all ICE Officers assigned to duty within the Chicago Area of Responsibility, as reflected below in Section IV.B.

4.     The Broadcast shall remain effective for the duration of the Effective Period. Defendants shall not issue any other broadcasts, or take any other actions, that change or undermine the warrantless arrest or vehicle stop policies described in the Broadcast, unless the Broadcast runs contrary to a subsequent change in law.

5.    The Parties and the Court may cite the Broadcast as definitive authority for the propositions of law contained herein for all purposes related to the Agreement, including in resolving Motions to Enforce brought pursuant to Section V.C.

6.    Defendants shall post a copy of the Broadcast, along with a copy of this Agreement, to the "Legal Notices" page of the ICE website, i.e., https://www.ice.gov/legal-notices.

**B.    Training**

1.    Defendants will adopt, or amend current, training materials ("Training Materials") to ensure compliance with the terms of the Broadcast attached as Appendix A to this Agreement.

2.    The Training Materials generated pursuant to this Agreement shall be provided to Plaintiffs' Counsel prior to being disseminated for the purpose of training ICE Officers.

a.    Plaintiffs' Counsel shall review the Training Materials and, if Plaintiffs' Counsel believe the Training Materials do not conform to the provisions of the Broadcast, shall adhere to the Conflict Resolution provisions set forth below in Section V.

b.    Plaintiffs' Counsel's review is limited to that portion(s) of the Training Materials related to warrantless arrests and vehicle stops created or modified due to and in accordance with the terms of this Settlement Agreement.

c.    Plaintiffs' Counsel's objections to the Training Materials shall be limited solely to whether the Training Materials adhere to the language in the Broadcast, attached as Appendix A to this Agreement.

d.    In the event Defendants propose to make any revisions or changes to relevant portions of the Broadcast and / or Training Materials during the Effective Period, they shall first provide such revisions to Plaintiffs' Counsel for their review, in accordance with this Section. Plaintiffs shall respond with comments within ten (10) business days to the proposed revisions or changes. Nothing in this provision precludes Defendants from providing immediate notice alerting subordinate field offices of any statutory or regulatory changes.

3.    All Training Materials provided are subject to the Settlement Protective Order agreed to by the Parties, or as entered by the Court. Further dissemination by counsel shall be controlled by the Settlement Protective Order.

4.    ICE Officers within the Chicago Area of Responsibility shall be trained within forty-five (45) days of the date the Broadcast being issued.

5.     ICE Officers outside the Chicago Area of Responsibility shall be trained as soon as practicable, but no later than one hundred eighty (180) days of the date of the Broadcast being issued.

6.     Throughout the duration of the Effective Period, the Broadcast shall be incorporated and remain a part of ICE's normal training cycle. Such trainings shall occur at least once per year.

### C. Documentation

ICE Officers are required to document warrantless arrests, including warrantless arrests resulting from vehicle stops, in the narrative section of each individual alien's I-213 as set forth in the Broadcast attached as Appendix A to this Agreement.

### D. Compliance Reporting and Production

1.     Beginning on the 10th day of the second month following the Training Date, Defendants shall provide Plaintiffs' Counsel, via Defendants' Counsel, with copies of all I-213s related to warrantless arrests conducted pursuant to 8 U.S.C. § 1357(a)(2), including vehicle stops resulting in such warrantless arrests, conducted in the Northern District of Illinois. For all I-213s emanating from criminal enforcement investigations, operations, or actions conducted by Homeland Security Investigations ("HSI") where the I-213 may reveal a cooperating witness or victim in the criminal matter, Defendants may redact identifying information regarding the cooperating witness or victim and the nature of the criminal matter.

2.     Production of I-213s will continue on a monthly basis throughout the Effective Period of this Agreement.

3.     Production of I-213s for the preceding month will be due on the 10th day of the following month (e.g., the I-213s for the month of February will be produced on March 10), absent circumstances outside ICE's control. In such case, ICE will notify Plaintiffs as promptly as possible. Should Plaintiffs not agree to an extension, the Conflict Resolution provisions below will apply.

4.     All I-213s produced under the terms of this Agreement will be redacted for confidential information, including personal or law-enforcement sensitive information not generally disclosed to the public, as described in the Settlement Protective Order attached to this Agreement as Appendix B .

5.     All I-213s provided are subject to the Settlement Protective Order agreed to by the Parties, or as entered by the Court. Further dissemination by counsel shall be controlled by the Settlement Protective Order.

### E. Individual Remedy for Defendants' Non-Compliance

        1.    Subject to the terms below, upon a determination by the Parties or the Court via the Conflict Resolution procedures set forth below, that a Class Member was so arrested contrary to the terms of this Agreement, the Class Member shall be released from ICE custody as soon as practicable.

        2.    Class Members released pursuant to this Section shall be released on their own recognizance without bond or condition of release. Outside of the exceptions listed below, for any individuals whose release required the posting of bond or the imposition of any conditions of release, ICE shall promptly reimburse all bond payments and lift any imposed conditions of release.

        3.    The provisions of this Section shall not apply in the following circumstances:

        a.    to Class Members subject to mandatory detention pursuant to the Immigration and Nationality Act.

        b.    to Class Members for whom ICE has received a request supported by judicial warrant or proof of compliance with the Interstate Agreement on Detainers Act (91 P.L. 538, 84 Stat. 1397) from another law enforcement agency to release custody of such Class Member to that law enforcement agency.

        c.    to Class Members for whom ICE has determined to not set bond in any amount on the basis that the Class Member poses a danger to the community and an immigration judge likewise denies bond in any amount on the basis that the class member poses a danger to the community.

        i.    An assessment of whether a Class Member should be denied bond on the basis that they pose a danger to the community shall be confirmed by an Assistant Field Officer Director (AFOD) or higher.

        ii.    An assessment of whether a Class Member should be denied bond on the basis that they pose a danger to the community shall be based on the totality of the circumstances known to the AFOD (or higher position) at the time the determination to continue detention is made. In assessing the totality of the circumstances, ICE shall consider all relevant facts including, but not limited to, the seriousness and recency of any violent or dangerous crimes for which the Class Member was convicted, the sentence imposed for those crimes, and any evidence of rehabilitation.

        d.    Defendants shall provide a written explanation and any supporting material supporting why an exception under this Section applies before or during the meet and confer required under the Conflict Resolution provisions.

e.    A ruling from an immigration judge that places a Class Member within the exception contained in subsection 3.a. or 3.c. shall, for the purposes of this agreement only, be binding upon the Parties and not subject to collateral review by the District Court under the Conflict Resolution procedures of Section V.

4.    In cases where a warrantless arrest is made contrary to the terms of this Agreement, the relevant field officer's supervisors shall take remedial measures to ensure that the officer(s) involved complies with ICE policy as outlined in this Agreement, which may include ensuring the officer(s) involved receives remedial training. As soon as practicable, ICE shall inform Plaintiffs (via Defendants' Counsel) that remedial measures and/or training were implemented.

## F. Deferred Action

Within 30 days after the Effective Date, ICE shall undertake a review of granting deferred action for Plaintiffs Margarito Castañon Nava, John Doe, Miguel Cortes Torres, Guillermo Hernandez Hernandez, and Erick Rivera Sales. Each of these Plaintiffs shall be entitled but is not required to submit relevant documents and submit legal and factual arguments that would support ICE's favorable exercise of prosecutorial discretion. Absent evidence that they fall within an ICE enforcement priority under the February 18, 2021 memorandum, as amended or superseded, DHS shall terminate removal proceedings without prejudice and grant each of the named Plaintiffs deferred action, in one-year, automatically renewable increments for the duration of this Agreement that makes them eligible for work authorization. Absent facts and circumstances that would make them an enforcement priority, DHS shall maintain their deferred action for, at a minimum, the length of time the Agreement remains in effect.

## V. Conflict Resolution

1.    The Parties agree to work cooperatively with one another and in good faith and agree to use their best efforts to effectuate the purposes of this Agreement and to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to bringing such matters to the Court for resolution.

2.    In the event the Parties have a dispute concerning the meaning or requirements of this Agreement, they shall promptly meet and confer in a good-faith attempt to resolve the dispute. If those efforts do not succeed, the Parties shall promptly present the dispute to Magistrate Judge Cummings, or such other Magistrate Judge as the Court may assign, for resolution in a joint submission that sets forth their respective positions. The Court shall then resolve the dispute or order such further briefing, hearing, or other procedure, if any, that it deems necessary or appropriate.

### A. Allegations of Individual Violations

1.     In the event Plaintiffs believe ICE has arrested and detained a Class Member contrary to the provisions of this Agreement, Plaintiffs shall raise the issue via written notice to Defendants as soon as practicable.

2.     Defendants shall meet and confer with Plaintiffs regarding this issue within five (5) business days of the written notification.

3.     If the dispute cannot be resolved within five (5) business days of the date of the meet and confer, Plaintiffs may move to enforce the terms of this Agreement through a Motion to Enforce, as laid out in Section V.C. below.

### B. Allegations of Repeated, Material Violations

1.     In the event of a Party's good-faith belief of repeated material violations of this Agreement, and upon written notice of such alleged repeated material violations, the Parties shall meet and confer in good faith within ten (10) business days to resolve the dispute.

2.     If such dispute cannot be resolved within twenty (20) business days, a Party may move to enforce the terms of this Agreement through a Motion to Enforce, as laid out in Section V.C. below. The Court presiding over the Motion to Enforce under this subsection shall retain discretion to provide any equitable remedies not otherwise specified in this Agreement.

### C. Motions to Enforce

1.     The Parties may move to enforce this Agreement through a Motion to Enforce brought in the U.S. District Court for the Northern District of Illinois.

2.     Prior to filing a Motion to Enforce, the Parties shall meet and confer according to the provisions set forth in Section V.A. or V.B. above.

3.     Motions to Enforce shall be filed under agreement that the motion will be heard by Magistrate Judge Cummings or such other Magistrate Judge as the Court may assign.

4.     Motions to Enforce shall be restricted to warrantless arrests and vehicle stops resulting in a warrantless arrest conducted in the Chicago Area of Responsibility.

## VI. SETTLEMENT BASED ON COURT APPROVAL OF TERMS

**A.**     In the event that the Court does not approve the Settlement Agreement, the Parties' good-faith adherence to the terms of this Settlement Agreement prior to said non-approval, reversal, vacatur, or termination shall not be considered unlawful.

**B.** This Settlement Agreement is subject to and contingent upon Court approval under Rule 23(e) of the Federal Rules of Civil Procedure.

**C.** Except as otherwise provided herein, in the event the Agreement is terminated or modified in any material respect or fails to become effective for any reason, then the Agreement shall be without prejudice and none of its terms shall be effective or enforceable; the Parties to this Agreement shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the execution of this Agreement; and except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In the event that the Agreement is terminated or modified in any material respect, the Parties shall be deemed not to have waived, not to have modified, or not be estopped from asserting any additional defenses or arguments available to them. In such event, neither this Agreement nor any draft thereof, nor any negotiation, documentation, or other part or aspect of the Parties' settlement discussions, nor any other document filed or created in connection with this Settlement Agreement, shall have any effect or be admissible in evidence for any purpose in the Action or in any other proceeding, and all such documents or information shall be treated as strictly confidential and may not, absent a court order, be disclosed to any person other than the Parties' counsel, and in any event only for the purposes of the Litigation.

## VII. ATTORNEYS' FEES AND COSTS

**A.** Plaintiffs' Counsel shall be entitled to reasonable attorneys' fees and costs, pursuant to the EAJA, 28 U.S.C. § 2412 *et seq.* The Parties agree that Plaintiffs are entitled to attorney fees and costs in the amount of $369,939.41. Class Counsel expressly disclaims any right to collect attorneys' fees in excess of $369,939.41 for work related to the Action.

**B.** Notwithstanding the foregoing, Plaintiffs' Counsel shall also be entitled to reasonable attorneys' fees and costs for any successful Motion to Enforce filed pursuant to Section V.C. of this Agreement if the Court finds that Defendants' position was not substantially justified.

## VIII. ADDITIONAL PROVISIONS

**A.** **Time Periods.** The time periods and/or dates described in this Agreement with respect to providing Notice of the Preliminary Approval of the Agreement and Preliminary Approval and Fairness hearings are subject to approval and change by the Court or by the written agreement of the Parties' counsel, without notice to Class Members.

**B.** **Time for Compliance.** The dates described herein refer to calendar days, unless otherwise stated. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

**C.** **Entire Agreement; No Oral Modification.** The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations and

understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitute the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving the interpretation of this Agreement. Any amendment or modification of the Agreement must be in a writing signed by Plaintiffs' Counsel and Defendants' Counsel.

**D.** **Advice of Counsel.** The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement and its Appendices, it shall not be construed more strictly against one Party than another.

**E.** **Binding Agreement.** This Agreement and its Appendices shall be binding upon and inure to the benefit of the Parties' respective heirs, successors, and assigns.

**F.** **No Waiver.** The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**G.** **Requirement of Execution.** This Agreement shall be valid and binding as to the Class Members and Defendants upon (1) signature by authorized representatives of Defendants, and (2) signature as to form by an authorized representative of each of the law firms defined as Plaintiffs' Counsel, under the condition that the Agreement is approved by the Court.

**H.** **Representations and Warranties.** Each signatory hereto represents and warrants that such person has authority to bind the Party for whom such person acts.

**I.** **Execution in Counterparts.** This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**J.** **Extensions of Time.** The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

**K.** **Choice of Law.** This Agreement shall be governed by and construed in accordance with the laws of the United States of America.

**L.** **Appendices.** The Parties agree that Appendices A and B to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**M.** **Notices.** Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and shall be sent by email, as follows:

| If to Class Counsel: | If to Defendants' Counsel: |
|---|---|
| Mark Fleming | William H. Weiland |
| Mary Harper | William C. Bateman, III |
| NATIONAL IMMIGRANT JUSTICE CENTER | DEPARTMENT OF JUSTICE |
| MFleming@heartlandalliance.org | CIVIL DIVISION |
| mharper@heartlandalliance.org | OFFICE OF IMMIGRATION LITIGATION |
| | william.h.weiland@usdoj.gov |
| Ivan Poullaos | william.c.bateman@usdoj.gov |
| Patrick O'Meara | |
| WINSTON & STRAWN LLP | |
| IPoullao@winston.com | |
| POMeara@winston.com | |
| | |
| Rebecca Glenberg | |
| AMERICAN CIVIL LIBERTIES UNION | |
| RGlenberg@aclu-il.org | |

Each Party shall notify the other Party in accordance with this provision of any change to the foregoing persons or email addresses to which notices shall be sent.

## THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK

THEREFORE, all Parties enter into and execute this Agreement by signing, and agree that it shall take effect as of the Effective Date as noted above.

**APPROVED AS TO FORM:**

DATED: November 29, 2021

Ivan M. Poullaos
WINSTON & STRAWN LLP
IPoullao@winston.com

Mark Fleming
NATIONAL IMMIGRANT JUSTICE CENTER
MFleming@heartlandalliance.org

Rebecca K. Glenberg
Roger Baldwin Foundation of ACLU, Inc.
rglenberg@aclu-il.org

DATED: November 30, 2021

William H. Weiland
DEPARTMENT OF JUSTICE
CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
William.h.weiland@usdoj.gov

**FOR AND ON BEHALF OF PLAINTIFFS MARGARITO CASTAÑON NAVA, JOHN DOE, MIGUEL CORTES TORRES, GUILLERMO HERNANDEZ HERNANDEZ, AND ERICK RIVERA SALES**

DATED: November 29, 2021

Mark Fleming
NATIONAL IMMIGRANT JUSTICE CENTER
MFleming@heartlandalliance.org

**AGREED TO BY ORGANIZATIONAL PLAINTIFFS:**

DATED: 11·24·21

NAME: LAWRENCE L. BENITO

TITLE: CEO/ED.

Illinois Coalition for Immigrant and Refugee Rights (ICIRR)

DATED: 11/29/21

NAME: Xanat Sobrevilla

TITLE: organizer

Organized Communities Against Deportations (OCAD)

**FOR AND ON BEHALF OF DEFENDANTS:**

DATED: <u>November 30, 2021</u>

_____

William H. Weiland
DEPARTMENT OF JUSTICE
CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
William.h.weiland@usdoj.gov

## APPENDIX A

Broadcast Statement of Policy

**This Broadcast states the underlying laws and policies applicable to all arrests effected under 8 U.S.C. § 1357(a)(2) / INA § 287(a)(2) and is to be interpreted consistent with all implementing regulations, as well as any DHS or ICE policies or memoranda governing immigration enforcement priorities and any additional requirements such policies or memoranda may impose upon the taking of any action to enforce the immigration laws of the United States.**

A. Warrantless Arrests

Under 8 U.S.C. § 1357(a)(2) / INA § 287(a)(2), Immigration & Customs Enforcement ("ICE") Officers may conduct warrantless arrests if there is "reason to believe that the alien [] [to be] arrested is [present] in the United States in violation of any [U.S. immigration] law and is likely to escape before a warrant can be obtained for [the] arrest." The "reason to believe" standard requires ICE Officers to have probable cause that an individual is in the United States in violation of U.S. immigration laws *and* probable cause that the individual is likely to escape before a warrant can be obtained for the arrest.

In considering "likelihood of escape," an ICE Officer must consider the totality of circumstances known to the officer before making the arrest. While there is no exhaustive list of factors that should be considered in determining whether an individual is "likely to escape before a warrant can be obtained" under 8 U.S.C. § 1357(a) / INA § 287(a), factors relevant to the determination may include the ICE Officer's ability to determine the individual's identity, knowledge of that individual's prior escapes or evasions of immigration authorities, attempted flight from an ICE Officer, ties to the community (such as a family, home, or employment) or lack thereof, or other specific circumstances that weigh in favor or against a reasonable belief that the subject is likely to abscond. The particular circumstances before the ICE Officer are not to be viewed singly; rather, they must be considered as a whole. However, mere presence within the

United States in violation of U.S. immigration law is not, by itself, sufficient to conclude that an alien is likely to escape before a warrant for arrest can be *obtained*.

When conducting enforcement actions, ICE Officers shall, at the time of arrest or as soon as it is practical and safe to do so, identify themselves as immigration officers in accordance with 8 C.F.R. § 287.8(c)(2)(iii).

After having made an arrest under 8 U.S.C. § 1357(a)(2) / INA § 287(a)(2), an ICE Officer must document the facts and circumstances surrounding that warrantless arrest in the narrative section of the alien's I-213 as soon as practicable. This documentation must include: (1) that the alien was arrested without a warrant; (2) the location of the arrest and whether this location was a place of business, residence, vehicle, or a public area; (3) whether the alien is an employee of the business, if arrested at a place of business, or whether the alien is a resident of the residence, if arrested at a residential location; (4) the alien's ties to the community, if known at the time of arrest, including family, home, or employment (**Note**: Information learned post-arrest relevant to custody determination should be documented separately from the information relevant to likelihood of escape known at the time of the warrantless arrest.); (5) the specific, particularized facts supporting the conclusion that the alien was likely to escape before a warrant could be obtained; and (6) a statement of how "at the time of arrest, the designated immigration officer [did], as soon as it [wa]s practical and safe to do so, identify himself or herself as an immigration officer who is authorized to execute an arrest; and state[d] that the person is under arrest and the reason for the arrest."

## B. Vehicle Stops

The policy above applies to all warrantless arrests under 8 U.S.C. § 1357 (a) (2) / INA § 287(a)(2), including warrantless arrests resulting from vehicle stops.

As federal law enforcement officers, ICE Officers lack federal statutory authority to enforce state or local vehicle or traffic laws. *See* 8 U.S.C. §§ 1357 (a)(4), (a)(5) / INA §§ 287(a)(4), (a)(5). Accordingly, when making vehicle stops, ICE Officers shall not state to the driver or occupant(s) of a vehicle that the purpose for a stop is related to any vehicle or traffic laws and regulations.

ICE Officers may stop a vehicle to enforce civil immigration laws only if they are aware of specific, articulable facts that reasonably warrant suspicion that the vehicle contains an alien(s) who may be illegally in the country.

As soon as practicable after making an arrest under 8 U.S.C. § 1357(a)(2) / INA § 287(a)(2) pursuant to a vehicle stop, in addition to the documentation requirements for warrantless arrests described above, the ICE Officer also must document the facts and circumstances surrounding the vehicle stop that resulted in a warrantless arrest in the narrative section of the alien's I-213. This documentation shall include the specific, articulable facts that formed the basis for the ICE Officer's reasonable suspicion that an alien in the vehicle stopped was present within the United States in violation of U.S. immigration law.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARGARITO CASTAÑON NAVA**, *et al.*, ) | |
| ) | **Case No. 18-cv-03757** |
| **Plaintiffs,** ) | |
| ) | **Judge Rebecca R. Pallmeyer** |
| **v.** ) | |
| ) | **Class Action** |
| **DEPARTMENT OF HOMELAND** ) | |
| **SECURITY**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**[Proposed] Confidentiality Order**

A party to this action has moved that the Court enter a Confidentiality Order.  The Court has determined that the terms set forth herein are appropriate to protect the respective interests of the parties, the public, and the Court. Accordingly, it is ORDERED:

1.    **Scope.**  All materials produced or adduced in the course of Defendants' compliance with the settlement agreement, ECF No. , to include all policy memoranda and training materials, arrests documents, and any other documents produced in order to comply with the settlement agreement, shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.       **Confidential Information.**  All materials provided by Defendants to Plaintiffs in compliance with the settlement agreement shall be confidential and subject to the restrictions set out in this Order. All such materials will be designated as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER." These materials include but are not limited to:

(a)      Immigration and Customs Enforcement ("ICE") training materials; and

1

(b)    Form I-213s.

3.    **Designation.**

(a)    While all materials provided by Defendants to Plaintiffs pursuant to the terms of the settlement agreement are confidential, in order to ensure proper handling and safekeeping, Defendants will mark the materials by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the materials and on all copies in a manner that will not interfere with their legibility. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time of the documents are produced or disclosed. Applying the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b)    The inadvertent failure to designate a document as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" does not waive its confidential status.

4.    **Protection of Confidential Information.**

(a)    General Protections. Confidential Information shall not be used or disclosed by Plaintiffs, counsel for Plaintiffs, or any other persons identified in subparagraph (d) for any purpose whatsoever other than: (1) the review, editing, and approval of the

Broadcast Statement of Policy and training materials as set forth in the settlement agreement,
(2) the review of Form I-213s for compliance with the settlement agreement, (3) the use of the
confidential materials in a meet and confer amongst the parties or in court in the case that
Plaintiffs file a motion to enforce, and (4) the use of the Form I-213 by the particular subject of
the Form I-213 or his or her counsel in the subject's removal proceedings in immigration court.

(b)     Use in Federal Court. In the event Protected Material is used in any court
proceeding in this action, it shall not lose its protected status through such use, and the Party
using the information shall take all reasonable steps to protect its confidentiality during such
use.

(c)     Review and use of a particular Form I-213 outside of a meet and confer or
the Court is constrained to review and use by the particular noncitizen who is the subject of the
Form I-213, and his or her counsel, including use of the Form I-213 in the subject's removal
proceedings in immigration court.

(d)     Limited Third-Party Disclosures. The parties and counsel for the parties
shall not disclose or permit the disclosure of any Confidential Information to any third person or
entity except as set forth in subparagraphs (1)-(5). Subject to these requirements, the following
categories of persons may be allowed to review Confidential Information:

(1)     Counsel.  Counsel for Plaintiffs and employees of counsel who
have responsibility for the action;

(2)     Plaintiffs. Plaintiffs, to the extent the produced material directly
applies to him or her;

(3)     The subject of a particular Form I-213 and his or her counsel;

(4)     The Court  and its  personnel;

(5)     The immigration court and its personnel, to the extent the Form
I-213 is submitted by the subject of a particular Form I-213 or

3

his or her counsel;

(6)    Court Reporters;

(7)    Others by Consent. Other persons only by written consent of Defendants or upon order of the Court and on such conditions as may be agreed upon or ordered.

(e)    Control of Documents. Plaintiffs shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. Counsel shall maintain copies of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

5.    **Non-disclosable Material.**

(a)    Defendants will redact as privileged any items in the produced materials that fall under legally recognized privileges. As an example, Defendants anticipate the possibility that law enforcement privileged materials such as FBI numbers or information about active enforcement operations may be found in the materials produced. A privilege log will not be provided, but an explanation of the invocation of a privilege will be provided upon request.

(b)    Defendants will redact any information that is law enforcement sensitive if the disclosure of such information would cause harm to law enforcement officers, law enforcement activities, or crime witnesses or victims, or would jeopardize investigations or operations (e.g. law enforcement officer Personally Identifiable Information). An explanation of the invocation of law enforcement sensitive material will be provided upon request.

(c)    Defendants will redact any information the disclosure of which is prohibited by statute or regulations, including, but not limited to, information protected by the Violence Against Women Act, Victims of Trafficking and Violence Protection Act, or regulations concerning asylum confidentiality. An explanation of the invocation of statutory or

4

regulatory prohibition will be provided upon request.

(d) The inadvertent disclosure of material covered by paragraphs 5 (a) – (c) shall be governed by Federal Rule of Evidence 502 and this Confidentiality Order.

(e) If, in connection with the settlement agreement, Defendants inadvertently disclose information subject to a claim of a privilege or protection, the disclosure of the inadvertently disclosed information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work-product protection that Defendants would otherwise be entitled to assert with respect to the inadvertently disclosed information and its subject matter.

(f) If a claim of inadvertent disclosure is made by Defendants, Plaintiffs shall, within five (5) business days, return or destroy all copies of the inadvertently disclosed information and provide a certification of counsel that all such inadvertently disclosed information has been returned or destroyed.

6. **Challenges by a Party to Designation or Redaction.** The designation of any material or document as Confidential Information and redaction of material pursuant to Sections 5(a), (b), or (c) of this Order are subject to challenge by Plaintiffs. The following procedure shall apply to any such challenge.

(a) Meet and Confer. Plaintiffs' challenge must be in good faith and must begin the process by conferring directly with counsel for Defendants. Defendants' counsel must engage in good faith in the meet and confer process, including by meeting and conferring within five (5) business days of receiving notice of the challenge to the designation of Confidential Information or redactions, unless the parties agree to a different timeframe. In conferring, Plaintiffs must explain the basis for their belief that the confidentiality designation or redaction was not proper and must give Defendants an opportunity to review the designated

or redacted material, to reconsider the designation or redaction(s), and, if no change in designation or redaction is offered, to explain the basis for the designation or redaction. Defendants must respond to the challenge within five (5) business days of the meet and confer unless the parties agree to a different timeframe.

        (b)    Judicial Intervention.  If Plaintiffs elect to challenge a confidentiality designation or redaction, they may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Such a motion must be accompanied by a declaration affirming that Plaintiffs have complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge proceeding shall be on the Defendants. Until the Court rules on the challenge, Plaintiffs shall continue to treat the materials as Confidential Information under the terms of this Order.

    7.    **Action by the Court.** Applications to the Court for an order relating to materials or documents designated Confidential Information or challenges to redactions made pursuant to Sections 5(a), (b), or (c) of this Order shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in compliance with the settlement agreement.

    8.    **Order Subject to Modification.**  This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

    9.    **No Prior Judicial Determination.**  This Order is entered based on the representations and agreements of the parties and for the purpose of complying with the settlement agreement.

10.     **Persons  Bound.** This Order shall take effect when entered and shall be binding upon Plaintiffs, Plaintiffs' counsel, and persons made subject to this Order by its terms.

So Ordered.


Dated: _____                    _____

                                                      The Honorable Rebecca R. Pallmeyer

**FINAL DRAFT (11/23/21)**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

MARGARITO CASTANON NAVA, *et al.*,

    Plaintiffs,

        v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

    Defendants.

)
)
)
)
)
)
)
)
)
)

Case No. 1:18-cv-3757

Hon. Rebecca R. Pallmeyer

## ACKNOWLEDGMENT
## AND
## AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Confidentiality Order dated _____ in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her to use materials designated as Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

Name: _____

Employer: _____

Business Address: _____

_____

_____

_____   _____
Date              Signature