UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

STATE OF MINNESOTA,

by and through its Attorney General Keith Ellison, CITY OF MINNEAPOLIS, and CITY OF ST. PAUL,

                Plaintiffs,

    v.

KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; JOHN CONDON, in his official capacity as Acting Executive Associate Director of Homeland Security Investigations; U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; MARCOS CHARLES, in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations; U.S. Immigration and Customs Enforcement; RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. Customs and Border Protection; GREGORY BOVINO, in his official capacity as Commander of the U.S. Border Patrol; U.S. Border Patrol; DAVID EASTERWOOD, in his official capacity as Acting Director, Saint

26-cv-00190-KMM-DJF

**AMENDED [PROPOSED] TEMPORARY RESTRAINING ORDER**

Paul Field Office, U.S. Immigration and
Customs Enforcement,

                Defendants.

This matter came before the Court on the motion for a temporary restraining order filed on behalf of Plaintiffs State of Minnesota, by and through its Attorney General Keith Ellison, the City of Minneapolis, and the City of St. Paul (collectively, "Plaintiffs").

[ORDER GRANTING PLAINTIFFS' MOTION:

The Court finds that Plaintiffs have suffered, and are likely to continue suffering, irreparable harm absent the temporary relief granted herein; that they are likely to prevail on the merits of their Tenth Amendment claim; that the balance of harms favors Plaintiffs; and that the public interest supports issuance of a temporary restraining order to address the grave violations of Plaintiffs' rights arising from Operation Metro Surge.

This Order is crafted to restore the status quo ante—the position of the parties prior to Defendants' commencement of Operation Metro Surge—and to allow the Court and the parties to fully consider the important issues in this case. This Order does not restrict Defendants or their officers and agents from conducting routine operations consistent with status quo ante within the District of Minnesota.

Based on the parties' submissions and the entire record, Plaintiffs' motion is GRANTED. The Court ORDERS as follows: Defendants and their agents and officers may continue enforcing federal immigration law in Minnesota. However, within 3 days, Defendants must reduce the numbers of officers and agents deployed in Minnesota to the levels that existed on November 30, 2025, prior to the commencement of Operation Metro Surge on December 1, 2025.]

[ORDER GRANTING OTHER RELIEF SOUGHT BY PLAINTIFFS:

The Court finds that Plaintiffs have suffered, and are likely to suffer, irreparable harm absent the temporary relief granted herein, that they are likely to prevail on the merits of their Tenth Amendment claim, that the balance of harm to the Plaintiffs and the injury granting the injunction will inflict on Defendants tips in Plaintiffs' favor, and that the public interest lies in issuing a temporary restraining order to address the grave violations of Plaintiffs' rights that have been demonstrated to exist amidst Operation Metro Surge.

Having fully considered Plaintiffs' motion and any opposition or responses thereto, it is HEREBY ORDERED that Plaintiffs' motion is GRANTED in part. The Court ORDERS as follows in accordance with Plaintiffs' requested relief:

1. Defendants and their agents and officers are enjoined from:

    a. Making stops or attempting arrests in school zones as defined in Minn. Stat. section 152.01, subd. 14a, or at or within 300 feet of any sensitive location as defined herein. "Sensitive location" means any medical care facilities, places of worship, courthouses, child care centers, funeral homes, social services establishments such as food pantries and domestic violence shelters, places where children are likely to be present such as playgrounds and bus stops, and state or city-owned, -leased, or -controlled buildings that are open to the public for governmental, educational, recreational, cultural, or civic purposes, in the State of Minnesota.

    b. Using race, ethnicity, accented speech, or proximity to predominantly Immigrant-serving businesses or cultural centers, as the sole grounds for supporting reasonable suspicion giving rise to "consensual encounters" or detentions, no matter how brief.

    The Court distinguishes this relief from the injunction issued in *Noem v. Vasquez Perdomo* on several grounds, including: the high statistical likelihood within Minnesota that people of color and immigrants within the community are either citizens by birthright, naturalized citizens, or otherwise lawfully present, and the developed record of harms—both to individuals, and Plaintiffs' sovereign interests—arising from alleged widespread practice of racial profiling and unjustified detentions of United States citizens characterizing Operation Metro Surge.

    c. Arresting any person who is not the subject of an administrative or judicial arrest warrant, absent a showing a) that the person is an alien who the officer has reason to believe is in the United States in violation of immigration laws and is likely to escape before a warrant can be obtained; or b) the existence of probable cause that the person has committed a federal crime.

        i. This Court has already ruled that a person following DHS agents from a safe distance in their vehicle or on foot does not, absent other circumstances demonstrating forcible obstruction, violate any federal law.

    ii. The Court further clarifies that United States citizens and lawful residents are not required to carry or provide proof of their citizenship or other legal right to be present. The absence of such documentation on their person cannot be used in support of claimed probable cause or reasonable suspicion. But, in the event a person does have and provides such proof, or claims to have such proof available to them, DHS agents are hereby enjoined from extending the detention beyond what is necessary to review that documentation.

d. Detaining any person without reasonable articulable suspicion that the person has committed a federal crime.

e. Seizing or threatening to seize property which is not necessary for evidentiary purposes or the subject of a search warrant, subpoena, or other court order to authorize the seizure of such property.

f. Threatening or using physical force, including brandishing weapons, against any person where such threat or force is not reasonably necessary to stop an immediate and serious threat of physical harm to a law enforcement officer or another person;

g. Dispersing individuals engaged in First Amendment-protected activity with physical force. Defendants may ask an individual engaged in First Amendment-protected activity to change location to avoid disrupting law enforcement, as long as the instructions are clear and the individual has time to comply and sufficient opportunity to observe and exercise his or her First Amendment rights;

h. Concealing their identity by means of mask or other disguise in a public place, except for DHS agents who are conducting undercover operations. For purposes of this relief, the Court adopts the common meaning of "undercover operations" to generally mean infiltration of groups or activities under the assumption of a false identity in order to develop investigative evidence without revealing their affiliation with law enforcement.

i. Using property owned by Plaintiffs without permission in violation of state and local law.

j. Violating state and local laws relating to the operation of motor vehicles, including those regulating speed, placement of license plates, direction of

    traffic, window opacity, seat belt usage, and use of intentional force (as with ramming) unless authorized by Minnesota Statutes section 609.066.

  k.  Abandoning vehicles on right-of-way or other public property, after arresting or otherwise removing the occupants of the vehicle without leaving an agent waiting at the scene for a tow truck to safeguard the vehicle.

  l.  Leaving live or undetonated materials such as pepper balls, tear gas cannisters, or other less-than-lethal munitions in public places following operations.

2.    Defendants are further enjoined from the following activities based on a finding by the Court that there is evidence in the record indicating Defendants have engaged in such activities for purposes of retaliation rather than for purposes of legitimate investigation into potential immigration violations under Title 8 or violations of 18 U.S.C. 111, and that such actions contribute to the harms established by Plaintiffs:

  a.  Driving to, or past, the homes of United States citizens in response to their participation in activities such as recording, following, or protesting DHS agents. Where DHS agents reasonably believe surveillance or further investigation into an individual is warranted, they must refer the matter in writing to Homeland Security Investigations or other law enforcement, and must articulate the basis for the referral.

  b.  Taking steps to identify, collect, or store information regarding United States citizens (including pictures of their faces) who have followed, observed, or protested DHS agents from a safe distance and who have not otherwise forcibly obstructed or impeded DHS activities.

  c.  Referring businesses or individuals to other federal law enforcement or federal agencies absent a written justification articulating the basis of the referral.

  d.  Retaliating further against Plaintiffs in this matter or their elected officials or employees or counsel, either with threatened criminal investigation related to their immigration policies, or with attacks on their law licenses.

3.    Defendants and the Federal Agents are further required to:

  a.  Wear visible identification of a unique, personally assigned, and recognizable alphanumeric identifier sequence affixed to their uniforms and conspicuously displayed in two separate places. The same unique and

personally assigned identifier sequence must remain conspicuously displayed in two separate places despite changes to the agent's uniform or tactical gear;

b. Use only vehicles bearing a distinctive marking that identifies the vehicle as belonging Defendants;

c. Audibly identify themselves by name and agency before entering private property for any reason.

d. Wear and activate body worn cameras ("BWCs") when engaged in enforcement activities unless expressly exempted by CBP, ICE, or DHS policy.

e. Provide to the Court a sealed list of all United States citizens whose information has been collected and stored in the course of Operation Metro Surge, the manner in which their information has been collected and stored, and the purpose for which their information was collected and stored.

f. Provide to the Court and to Plaintiffs' counsel, in searchable spreadsheet format, a accounting of every individual detained, arrested, or otherwise seized by Defendants in connection with Operation Metro Surge, including: the name of the individual; the date, time, and location of the detention; the identity of the detaining agency and agents; the specific factual basis and justification for the detention including the articulable facts supporting reasonable suspicion or probable cause, as applicable; and, the current custodial status of the individual, including whether the individual has been released, transferred, or remains detained.

   i. Specifically, when making a warrantless civil immigration arrest in the Twin Cities Metro Area, Defendants and their agents must file a report with this Court the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form, including: (a) the specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person is in the United States in violation of law or regulation regulating the admission, exclusion, expulsion, or removal of noncitizens; and, (b) the specific, particularized facts that supported the agent's pre-arrest probable cause to believe that the person is likely to escape before a warrant can be obtained, including the required facts to be documented in compliance with 8 U.S.C. § 1357(a)(2)1.

4.      It is further **ORDERED** that Federal Agents widely disseminate notice of this Order. Specifically, Defendants are ORDERED to provide copies of this Order, in either electronic or paper form, no later than 5 p.m. on ___ to all those described below:

   a. All law enforcement personnel, officers, and agents of the Federal Agents currently or subsequently deployed in Minnesota, including but not limited to all personnel in Minnesota who are part of Operation Metro Surge or any equivalent operation by a different name; and

   b. All employees, officers, and agents of the Federal Agents with supervisory or management authority over any law enforcement officers or agents currently or subsequently deployed in Minnesota, including the Secretary of Homeland Security.]

BY THE COURT:

Dated: _____     _____

U.S. District Judge, District of Minnesota