*State of Minnesota et al. v. Noem et al.*
No. 26-CV-00190-KMM-DJF (D. Minn.)

Amicus Curiae Brief of the Advocates for Human Rights

**Exhibit No. 14**

United Nations

**CCPR**/C/GC/35

**International Covenant on Civil and Political Rights**

Distr.: General
16 December 2014

Original: English

---

**Human Rights Committee**

## General comment No. 35

## Article 9 (Liberty and security of person)*

## I. General remarks

1. The present general comment replaces general comment No. 8 (sixteenth session), adopted in 1982.

2. Article 9 recognizes and protects both liberty of person and security of person. In the Universal Declaration of Human Rights, article 3 proclaims that everyone has the right to life, liberty and security of person. That is the first substantive right protected by the Universal Declaration, which indicates the profound importance of article 9 of the Covenant both for individuals and for society as a whole. Liberty and security of person are precious for their own sake, and also because the deprivation of liberty and security of person have historically been principal means for impairing the enjoyment of other rights.

3. Liberty of person concerns freedom from confinement of the body, not a general freedom of action.[1] Security of person concerns freedom from injury to the body and the mind, or bodily and mental integrity, as further discussed in paragraph 9 below. Article 9 guarantees those rights to everyone. "Everyone" includes, among others, girls and boys, soldiers, persons with disabilities, lesbian, gay, bisexual and transgender persons, aliens, refugees and asylum seekers, stateless persons, migrant workers, persons convicted of crime, and persons who have engaged in terrorist activity.

4. Paragraphs 2 to 5 of article 9 set out specific safeguards for the protection of liberty and security of person. Some of the provisions of article 9 (part of paragraph 2 and the whole of paragraph 3) apply only in connection with criminal charges. But the rest, in particular the important guarantee laid down in paragraph 4, i.e. the right to review by a court of the legality of detention, applies to all persons deprived of liberty.

5. Deprivation of liberty involves more severe restriction of motion within a narrower space than mere interference with liberty of movement under article 12.[2] Examples of

---

* Adopted by the Committee at its 112th session (7–31 October 2014).
[1] 854/1999, *Wackenheim* v. *France*, para. 6.3.
[2] 263/1987, *González del Río* v. *Peru*, para. 5.1; 833/1998, *Karker* v. *France*, para. 8.5.

GE.14-24451  (E)





Please recycle



deprivation of liberty include police custody, *arraigo*,[3] remand detention, imprisonment after conviction, house arrest,[4] administrative detention, involuntary hospitalization,[5] institutional custody of children and confinement to a restricted area of an airport,[6] as well as being involuntarily transported.[7] They also include certain further restrictions on a person who is already detained, for example, solitary confinement or the use of physical restraining devices.[8] During a period of military service, restrictions that would amount to deprivation of liberty for a civilian may not amount to deprivation of liberty if they do not exceed the exigencies of normal military service or deviate from the normal conditions of life within the armed forces of the State party concerned.[9]

6.    Deprivation of personal liberty is without free consent. Individuals who go voluntarily to a police station to participate in an investigation, and who know that they are free to leave at any time, are not being deprived of their liberty.[10]

7.    States parties have the duty to take appropriate measures to protect the right to liberty of person against deprivation by third parties.[11] States parties must protect individuals against abduction or detention by individual criminals or irregular groups, including armed or terrorist groups, operating within their territory. They must also protect individuals against wrongful deprivation of liberty by lawful organizations, such as employers, schools and hospitals. States parties should do their utmost to take appropriate measures to protect individuals against deprivation of liberty by the action of other States within their territory.[12]

8.    When private individuals or entities are empowered or authorized by a State party to exercise powers of arrest or detention, the State party remains responsible for adherence and ensuring adherence to article 9. It must rigorously limit those powers and must provide strict and effective control to ensure that those powers are not misused, and do not lead to arbitrary or unlawful arrest or detention. It must also provide effective remedies for victims if arbitrary or unlawful arrest or detention does occur.[13]

9.    The right to security of person protects individuals against intentional infliction of bodily or mental injury, regardless of whether the victim is detained or non-detained. For example, officials of States parties violate the right to personal security when they unjustifiably inflict bodily injury.[14] The right to personal security also obliges States parties to take appropriate measures in response to death threats against persons in the public sphere, and more generally to protect individuals from foreseeable threats to life or bodily

---

[3]    See concluding observations: Mexico (CCPR/C/MEX/CO/5, 2010), para. 15.

[4]    1134/2002, *Gorji-Dinka* v. *Cameroon*, para. 5.4; see also concluding observations: United Kingdom (CCPR/C/GBR/CO/6, 2008), para. 17 (control orders including curfews of up to 16 hours).

[5]    754/1997, *A.* v. *New Zealand*, para. 7.2 (mental health); see concluding observations: Republic of Moldova (CCPR/C/MDA/CO/2, 2009), para. 13 (contagious disease).

[6]    See concluding observations: Belgium (CCPR/CO/81/BEL, 2004), para. 17 (detention of migrants pending expulsion).

[7]    R.12/52, *Saldías de López v. Uruguay*, para. 13.

[8]    See concluding observations: Czech Republic (CCPR/C/CZE/CO/2, 2007), para. 13; and Republic of Korea (CCPR/C/KOR/CO/3, 2006), para. 13.

[9]    265/1987, *Vuolanne* v. *Finland*, para. 9.4.

[10]    1758/2008, *Jessop* v. *New Zealand*, para. 7.9–7.10.

[11]    See concluding observations: Yemen (CCPR/C/YEM/CO/5, 2012), para. 24.

[12]    319/1988, *Cañón García* v. *Ecuador*, paras. 5.1–5.2.

[13]    See concluding observations: Guatemala (CCPR/C/GTM/CO/3, 2012), para. 16.

[14]    613/1995, *Leehong* v. *Jamaica*, para. 9.3.

integrity proceeding from any governmental or private actors.[15] States parties must take both measures to prevent future injury and retrospective measures, such as enforcement of criminal laws, in response to past injury. For example, States parties must respond appropriately to patterns of violence against categories of victims such as intimidation of human rights defenders and journalists, retaliation against witnesses, violence against women, including domestic violence, the hazing of conscripts in the armed forces, violence against children, violence against persons on the basis of their sexual orientation or gender identity,[16] and violence against persons with disabilities.[17] They should also prevent and redress unjustifiable use of force in law enforcement,[18] and protect their populations against abuses by private security forces, and against the risks posed by excessive availability of firearms.[19] The right to security of person does not address all risks to physical or mental health and is not implicated in the indirect health impact of being the target of civil or criminal proceedings.[20]

## II.    Arbitrary detention and unlawful detention

10.    The right to liberty of person is not absolute. Article 9 recognizes that sometimes deprivation of liberty is justified, for example, in the enforcement of criminal laws. Paragraph 1 requires that deprivation of liberty must not be arbitrary, and must be carried out with respect for the rule of law.

11.    The second sentence of paragraph 1 prohibits arbitrary arrest and detention, while the third sentence prohibits unlawful deprivation of liberty, i.e., deprivation of liberty that is not imposed on such grounds and in accordance with such procedure as are established by law. The two prohibitions overlap, in that arrests or detentions may be in violation of the applicable law but not arbitrary, or legally permitted but arbitrary, or both arbitrary and unlawful. Arrest or detention that lacks any legal basis is also arbitrary.[21] Unauthorized confinement of prisoners beyond the length of their sentences is arbitrary as well as unlawful;[22] the same is true for unauthorized extension of other forms of detention. Continued confinement of detainees in defiance of a judicial order for their release is arbitrary as well as unlawful.[23]

12.    An arrest or detention may be authorized by domestic law and nonetheless be arbitrary. The notion of "arbitrariness" is not to be equated with "against the law", but must be interpreted more broadly to include elements of inappropriateness, injustice, lack of predictability and due process of law,[24] as well as elements of reasonableness, necessity and proportionality. For example, remand in custody on criminal charges must be reasonable

---

[15]    1560/2007, *Marcellana and Gumanoy* v. *Philippines*, para. 7.7. States parties also violate the right to security of person if they purport to exercise jurisdiction over a person outside their territory by issuing a *fatwa* or similar death sentence authorizing the killing of the victim. See concluding observations: Islamic Republic of Iran (CCPR/C/79/Add.25, 1993), para. 9; paragraph 63 below (discussing extraterritorial application).

[16]    See concluding observations: El Salvador (CCPR/CO/78/SLV, 2003), para. 16.

[17]    See concluding observations: Norway (CCPR/C/NOR/CO/6, 2011), para. 10.

[18]    613/1995, *Leehong* v. *Jamaica*, paras. 9.3; see Basic Principles on the Use of Force and Firearms by Law Enforcement Officials (1990).

[19]    See concluding observations: Philippines (CCPR/C/PHL/CO/4, 2012), para. 14.

[20]    1124/2002, *Obodzinsky* v. *Canada*, para. 8.5.

[21]    414/1990, *Mika Miha* v. *Equatorial Guinea*, para. 6.5.

[22]    See concluding observations: Brazil (CCPR/C/BRA/CO/2, 2005), para. 16.

[23]    856/1999, *Chambala* v. *Zambia*, para. 7.3.

[24]    1134/2002, *Gorji-Dinka* v. *Cameroon*, para. 5.1; 305/1988, *Van Alphen* v. *Netherlands*, para. 5.8.

and necessary in all the circumstances.[25] Aside from judicially imposed sentences for a fixed period of time, the decision to keep a person in any form of detention is arbitrary if it is not subject to periodic re-evaluation of the justification for continuing the detention.[26]

13.    The term "arrest" refers to any apprehension of a person that commences a deprivation of liberty, and the term "detention" refers to the deprivation of liberty that begins with the arrest and continues in time from apprehension until release.[27] Arrest within the meaning of article 9 need not involve a formal arrest as defined under domestic law.[28] When an additional deprivation of liberty is imposed on a person already in custody, such as detention on unrelated criminal charges, the commencement of that deprivation of liberty also amounts to an arrest.[29]

14.    The Covenant does not provide an enumeration of the permissible reasons for depriving a person of liberty. Article 9 expressly recognizes that individuals may be detained on criminal charges, and article 11 expressly prohibits imprisonment on ground of inability to fulfil a contractual obligation.[30] Other regimes involving deprivation of liberty must also be established by law and must be accompanied by procedures that prevent arbitrary detention. The grounds and procedures prescribed by law must not be destructive of the right to liberty of person.[31] The regime must not amount to an evasion of the limits on the criminal justice system by providing the equivalent of criminal punishment without the applicable protections.[32] Although conditions of detention are addressed primarily by articles 7 and 10, detention may be arbitrary if the manner in which the detainees are treated does not relate to the purpose for which they are ostensibly being detained.[33] The imposition of a draconian penalty of imprisonment for contempt of court without adequate explanation and without independent procedural safeguards is arbitrary.[34]

15.    To the extent that States parties impose security detention (sometimes known as administrative detention or internment) not in contemplation of prosecution on a criminal charge,[35] the Committee considers that such detention presents severe risks of arbitrary deprivation of liberty.[36] Such detention would normally amount to arbitrary detention as other effective measures addressing the threat, including the criminal justice system, would be available. If, under the most exceptional circumstances, a present, direct and imperative

---

[25]  1369/2005, *Kulov* v. *Kyrgyzstan*, para. 8.3. Pretrial detention in criminal cases is further discussed in section IV below.

[26]  1324/2004, *Shafiq* v. *Australia*, para. 7.2.

[27]  631/1995, *Spakmo* v. *Norway*, para. 6.3.

[28]  1460/2006, *Yklymova* v. *Turkmenistan*, paras. 7.2–7.3 (de facto house arrest); 1096/2002, *Kurbanova* v. *Tajikistan*, para. 7.2 (detention prior to arrest warrant).

[29]  635/1995, *Morrison* v. *Jamaica*, paras. 22.2–22.3; 1397/2005, *Engo* v. *Cameroon*, para. 7.3.

[30]  Detention for criminal offences such as fraud that are related to civil law debts does not violate article 11, and does not amount to arbitrary detention. 1342/2005, *Gavrilin* v. *Belarus*, para. 7.3.

[31]  1629/2007, *Fardon* v. *Australia*, para. 7.3.

[32]  Ibid., para. 7.4 (a)–7.4 (c); see concluding observations: United States of America (CCPR/C/USA/CO/3/Rev.1, 2006), para. 19; general comment No. 32, paras. 15 and 18.

[33]  1629/2007, *Fardon* v. *Australia*, para. 7.4 (a) (nominally civil detention under same prison regime as prior sentence); see concluding observations: Belgium (CCPR/CO/81/BEL, 2004), para. 18 (placement in prison psychiatric annexes), and United Kingdom (CCPR/CO/73/UK, 2001), para. 16 (detention of asylum seekers in prisons).

[34]  1189/2003, *Fernando* v. *Sri Lanka*, para. 9.2; 1373/2005, *Dissanakye* v. *Sri Lanka*, para. 8.3.

[35]  The present paragraph concerns security detention and not the forms of post-conviction preventive detention addressed in paragraph 21 below or detention for purposes of extradition or immigration control, see paragraph 18 below.

[36]  See concluding observations: Colombia (CCPR/C/COL/CO/6, 2010), para. 20, and Jordan (CCPR/C/JOR/CO/4, 2010), para. 11.

threat is invoked to justify the detention of persons considered to present such a threat, the burden of proof lies on States parties to show that the individual poses such a threat and that it cannot be addressed by alternative measures, and that burden increases with the length of the detention. States parties also need to show that detention does not last longer than absolutely necessary, that the overall length of possible detention is limited and that they fully respect the guarantees provided for by article 9 in all cases. Prompt and regular review by a court or other tribunal possessing the same attributes of independence and impartiality as the judiciary is a necessary guarantee for those conditions, as is access to independent legal advice, preferably selected by the detainee, and disclosure to the detainee of, at least, the essence of the evidence on which the decision is taken.[37]

16.     Egregious examples of arbitrary detention include detaining family members of an alleged criminal who are not themselves accused of any wrongdoing, the holding of hostages and arrests for the purpose of extorting bribes or other similar criminal purposes.

17.     Arrest or detention as punishment for the legitimate exercise of the rights as guaranteed by the Covenant is arbitrary, including freedom of opinion and expression (art. 19),[38] freedom of assembly (art. 21), freedom of association (art. 22), freedom of religion (art. 18) and the right to privacy (art. 17). Arrest or detention on discriminatory grounds in violation of article 2, paragraph 1, article 3 or article 26 is also in principle arbitrary.[39] Retroactive criminal punishment by detention in violation of article 15 amounts to arbitrary detention.[40] Enforced disappearances violate numerous substantive and procedural provisions of the Covenant and constitute a particularly aggravated form of arbitrary detention. Imprisonment after a manifestly unfair trial is arbitrary, but not every violation of the specific procedural guarantees for criminal defendants in article 14 results in arbitrary detention.[41]

18.     Detention in the course of proceedings for the control of immigration is not per se arbitrary, but the detention must be justified as reasonable, necessary and proportionate in the light of the circumstances and reassessed as it extends in time.[42] Asylum seekers who unlawfully enter a State party's territory may be detained for a brief initial period in order to document their entry, record their claims and determine their identity if it is in doubt.[43] To detain them further while their claims are being resolved would be arbitrary in the absence of particular reasons specific to the individual, such as an individualized likelihood of absconding, a danger of crimes against others or a risk of acts against national security.[44] The decision must consider relevant factors case by case and not be based on a mandatory rule for a broad category; must take into account less invasive means of achieving the same ends, such as reporting obligations, sureties or other conditions to prevent absconding; and

---

[37]    On the relationship of article 9 to article 4 of the Covenant and international humanitarian law, see paragraphs 64 to 67 below.

[38]    328/1988, *Zelaya Blanco* v. *Nicaragua*, para. 10.3.

[39]    1314/2004, *O'Neill and Quinn* v. *Ireland*, para. 8.5 (finding no violation); see concluding observations: Honduras (CCPR/C/HND/CO/1, 2006), para. 13 (detention on the basis of sexual orientation), and Cameroon (CCPR/C/CMR/CO/4, 2010), para. 12 (imprisonment for consensual same-sex activities of adults).

[40]    1629/2007, *Fardon* v. *Australia*, para. 7.4 (b).

[41]    1007/2001, *Sineiro Fernández* v. *Spain*, paras. 6.3 (absence of review of conviction by higher court violated paragraph 5 of article 14, but not paragraph 1 of article 9).

[42]    560/1993, *A.* v. *Australia*, paras. 9.3–9.4; 794/1998, *Jalloh* v. *Netherlands*, para. 8.2; 1557/2007, *Nystrom* v. *Australia*, paras. 7.2–7.3.

[43]    1069/2002, *Bakhtiyari* v. *Australia*, paras. 9.2–9.3.

[44]    1551/2007, *Tarlue* v. *Canada*, paras. 3.3 and 7.6; 1051/2002, *Ahani* v. *Canada*, para. 10.2.

must be subject to periodic re-evaluation and judicial review.[45] Decisions regarding the detention of migrants must also take into account the effect of the detention on their physical or mental health.[46] Any necessary detention should take place in appropriate, sanitary, non-punitive facilities and should not take place in prisons. The inability of a State party to carry out the expulsion of an individual because of statelessness or other obstacles does not justify indefinite detention.[47] Children should not be deprived of liberty, except as a measure of last resort and for the shortest appropriate period of time, taking into account their best interests as a primary consideration with regard to the duration and conditions of detention, and also taking into account the extreme vulnerability and need for care of unaccompanied minors.[48]

19.    States parties should revise outdated laws and practices in the field of mental health in order to avoid arbitrary detention. The Committee emphasizes the harm inherent in any deprivation of liberty and also the particular harms that may result in situations of involuntary hospitalization. States parties should make available adequate community-based or alternative social-care services for persons with psychosocial disabilities, in order to provide less restrictive alternatives to confinement.[49] The existence of a disability shall not in itself justify a deprivation of liberty but rather any deprivation of liberty must be necessary and proportionate, for the purpose of protecting the individual in question from serious harm or preventing injury to others.[50] It must be applied only as a measure of last resort and for the shortest appropriate period of time, and must be accompanied by adequate procedural and substantive safeguards established by law.[51] The procedures should ensure respect for the views of the individual and ensure that any representative genuinely represents and defends the wishes and interests of the individual.[52] States parties must offer to institutionalized persons programmes of treatment and rehabilitation that serve the purposes that are asserted to justify the detention.[53] Deprivation of liberty must be re-evaluated at appropriate intervals with regard to its continuing necessity.[54] The individuals must be assisted in obtaining access to effective remedies for the vindication of their rights, including initial and periodic judicial review of the lawfulness of the detention, and to prevent conditions of detention incompatible with the Covenant.[55]

20.    The Covenant is consistent with a variety of schemes for sentencing in criminal cases. Convicted prisoners are entitled to have the duration of their sentences administered

---

[45]  1014/2001, *Baban* v. *Australia*, para. 7.2; 1069/2002, *Bakhtiyari* v. *Australia*, paras. 9.2–9.3; see UNHCR, Guidelines on the Applicable Criteria and Standards relating to the Detention of Asylum-Seekers and Alternatives to Detention (2012), guideline 4.3 and annex A (describing alternatives to detention).

[46]  1324/2004, *Shafiq* v. *Australia*, para. 7.3; 900/1999, *C.* v. *Australia*, paras. 8.2 and 8.4.

[47]  2094/2011, *F.K.A.G.* v. *Australia*, para. 9.3.

[48]  1050/2002, *D. and E.* v. *Australia*, para. 7.2; 794/1998, *Jalloh* v. *Netherlands*, paras. 8.2–8.3; see also Convention on the Rights of the Child, arts. 3, para. 1, and 37 (b).

[49]  See concluding observations: Latvia (CCPR/C/LVA/CO/3, 2014), para. 16.

[50]  1061/2002, *Fijalkowska* v. *Poland*, para. 8.3; 1629/2007, *Fardon* v. *Australia*, para. 7.3; see concluding observations: Russian Federation (CCPR/C/RUS/CO/6, 2009), para. 19; Convention on the Rights of Persons with Disabilities, art. 14, para. 1 (b).

[51]  1061/2002, *Fijalkowska* v. *Poland*, para. 8.3.

[52]  See concluding observations: Czech Republic (CCPR/C/CZE/CO/2, 2007), para. 14; see also Committee on the Rights of the Child, general comment No. 9, para. 48.

[53]  See concluding observations: Bulgaria (CCPR/C/BGR/CO/3, 2011), para. 10.

[54]  754/1997, *A.* v. *New Zealand*, para. 7.2; see Committee on the Rights of the Child, general comment No. 9, para. 50.

[55]  1061/2002, *Fijalkowska v. Poland*, paras. 8.3–8.4; 754/1997, *A.* v. *New Zealand*, para. 7.3; general comment No. 31, para. 15.

in accordance with domestic law. Consideration for parole or other forms of early release must be in accordance with the law[56] and such release must not be denied on grounds that are arbitrary within the meaning of article 9. If such release is granted upon conditions and later the release is revoked because of an alleged breach of the conditions, then the revocation must also be carried out in accordance with law and must not be arbitrary and, in particular, not disproportionate to the seriousness of the breach. A prediction of the prisoner's future behaviour may be a relevant factor in deciding whether to grant early release.[57]

21.    When a criminal sentence includes a punitive period followed by a non-punitive period intended to protect the safety of other individuals,[58] then once the punitive term of imprisonment has been served, to avoid arbitrariness, the additional detention must be justified by compelling reasons arising from the gravity of the crimes committed and the likelihood of the detainee's committing similar crimes in the future. States should only use such detention as a last resort and regular periodic reviews by an independent body must be assured to decide whether continued detention is justified.[59] State parties must exercise caution and provide appropriate guarantees in evaluating future dangers.[60] The conditions in such detention must be distinct from the conditions for convicted prisoners serving a punitive sentence and must be aimed at the detainee's rehabilitation and reintegration into society.[61] If a prisoner has fully served the sentence imposed at the time of conviction, articles 9 and 15 prohibit a retroactive increase in sentence and a State party may not circumvent that prohibition by imposing a detention that is equivalent to penal imprisonment under the label of civil detention.[62]

22.    The third sentence of paragraph 1 of article 9 provides that no one shall be deprived of liberty except on such grounds and in accordance with such procedure as are established by law. Any substantive grounds for arrest or detention must be prescribed by law and should be defined with sufficient precision to avoid overly broad or arbitrary interpretation or application.[63] Deprivation of liberty without such legal authorization is unlawful.[64] Continued detention despite an operative (*exécutoire*) judicial order of release or a valid amnesty is also unlawful.[65]

23.    Article 9 requires that procedures for carrying out legally authorized deprivation of liberty should also be established by law and States parties should ensure compliance with their legally prescribed procedures. Article 9 further requires compliance with domestic rules that define the procedure for arrest by identifying the officials authorized to arrest[66] or

---

[56]  1388/2005, *De Léon Castro* v. *Spain*, para. 9.3.

[57]  1492/2006, *Van der Plaat v. New Zealand*, para. 6.3.

[58]  In different legal systems, such detention may be known as "rétention de sûreté", "Sicherungsverwahrung" or, in English, "preventive detention"; see 1090/2002, *Rameka* v. *New Zealand*.

[59]  Ibid., para. 7.3.

[60]  See concluding observations: Germany (CCPR/C/DEU/CO/6, 2012), para. 14.

[61]  1512/2006, *Dean* v. *New Zealand*, para. 7.5.

[62]  1629/2007, *Fardon* v. *Australia*, para. 7.4.

[63]  See concluding observations: Philippines (CCPR/CO/79/PHL, 2003), para. 14 (vagrancy law vague), Mauritius (CCPR/CO/83/MUS, 2005), para. 12 (terrorism law), Russian Federation (CCPR/C/RUS/CO/6, 2009), para. 24 ("extremist activity"), and Honduras (CCPR/C/HND/CO/1, 2006), para. 13 ("unlawful association").

[64]  702/1996, *McLawrence* v. *Jamaica*, para. 5.5: "the principle of legality is violated if an individual is arrested or detained on grounds which are not clearly established in domestic legislation".

[65]  856/1999, *Chambala* v. *Zambia*, para. 7.3; 138/1981, *Mpandanjila et al.* v. *Zaire*, para. 10.

[66]  1461/2006, 1462/2006, 1476/2006, 1477/2006, *Maksudov et al.* v. *Kyrgyzstan*, para. 12.2.

specifying when a warrant is required.[67] It also requires compliance with domestic rules that define when authorization to continue detention must be obtained from a judge or other officer,[68] where individuals may be detained,[69] when the detained person must be brought to court[70] and legal limits on the duration of detention.[71] It also requires compliance with domestic rules providing important safeguards for detained persons, such as making a record of an arrest[72] and permitting access to counsel.[73] Violations of domestic procedural rules not related to such issues may not necessarily raise an issue under article 9.[74]

## III.    Notice of reasons for arrest and any criminal charges

24.    Paragraph 2 of article 9 imposes two requirements for the benefit of persons who are deprived of liberty. First, they shall be informed, at the time of arrest, of the reasons for the arrest. Second, they shall be promptly informed of any charges against them. The first requirement applies broadly to the reasons for any deprivation of liberty. Because "arrest" means the commencement of a deprivation of liberty, that requirement applies regardless of the formality or informality with which the arrest is conducted and regardless of the legitimate or improper reason on which it is based.[75] The second, additional requirement applies only to information regarding criminal charges.[76] If a person already detained on one criminal charge is also ordered detained to face an unrelated criminal charge, prompt information must be provided regarding the unrelated charge.[77]

25.    One major purpose of requiring that all arrested persons be informed of the reasons for the arrest is to enable them to seek release if they believe that the reasons given are invalid or unfounded.[78] The reasons must include not only the general legal basis of the arrest, but also enough factual specifics to indicate the substance of the complaint, such as the wrongful act and the identity of an alleged victim.[79] The "reasons" concern the official basis for the arrest, not the subjective motivations of the arresting officer.[80]

26.    Oral notification of reasons for arrest satisfies the requirement. The reasons must be given in a language that the arrested person understands.[81]

27.    That information must be provided immediately upon arrest. However, in exceptional circumstances, such immediate communication may not be possible. For example, a delay may be required before an interpreter can be present, but any such delay must be kept to the absolute minimum necessary.[82]

---

[67]  1110/2002, *Rolando* v. *the Philippines*, para. 5.5.
[68]  770/1997, *Gridin* v. *Russian Federation*, para. 8.1.
[69]  1449/2006, *Umarov* v. *Uzbekistan*, para. 8.4.
[70]  981/2001, *Gómez Casafranca* v. *Peru*, para. 7.2.
[71]  2024/2011, *Israil* v. *Kazakhstan*, para. 9.2.
[72]  1208/2003, *Kurbonov* v. *Tajikistan*, para. 6.5.
[73]  1412/2005, *Butovenko* v. *Ukraine*, para. 7.6.
[74]  1425/2005, *Marz* v. *Russian Federation*, para. 5.3.
[75]  1460/2006, *Yklymova* v. *Turkmenistan*, para. 7.2 (de facto house arrest); 414/1990, *Mika Miha* v. *Equatorial Guinea*, para. 6.5 (presidential fiat).
[76]  See, e.g., *Case concerning Ahmadou Sadio Diallo (Republic of Guinea* v. *Democratic Republic of the Congo)*, I.C.J. Reports 2010, p. 639, para. 77 (citing the Committee's general comment No. 8).
[77]  635/1995, *Morrison* v. *Jamaica*, paras. 22.2–22.3; 1397/2005, *Engo* v. *Cameroon*, para. 7.3.
[78]  248/1987, *Campbell* v. *Jamaica*, para. 6.3.
[79]  1177/2003, *Ilombe and Shandwe* v. *Democratic Republic of the Congo*, para. 6.2.
[80]  1812/2008, *Levinov* v. *Belarus*, para. 7.5.
[81]  868/1999, *Wilson* v. *Philippines*, paras. 3.3 and 7.5.
[82]  526/1993, *Hill and Hill* v. *Spain*, para. 12.2.

28.    For some categories of vulnerable persons, directly informing the person arrested is required but not sufficient. When children are arrested, notice of the arrest and the reasons for it should also be provided directly to their parents, guardians, or legal representatives.[83] For certain persons with mental disabilities, notice of the arrest and the reasons should also be provided directly to persons they have designated or appropriate family members. Additional time may be required to identify and contact the relevant third persons, but notice should be given as soon as possible.

29.    The second requirement of paragraph 2 concerns notice of criminal charges. Persons arrested for the purpose of investigating crimes that they may have committed or for the purpose of holding them for criminal trial must be promptly informed of the crimes of which they are suspected or accused. That right applies in connection with ordinary criminal prosecutions and also in connection with military prosecutions or other special regimes directed at criminal punishment.[84]

30.    Paragraph 2 requires that the arrested person be informed "promptly" of any charges, not necessarily "at the time of arrest". If particular charges are already contemplated, the arresting officer may inform the person of both the reasons for the arrest and the charges, or the authorities may explain the legal basis of the detention some hours later. The reasons must be given in a language that the arrested person understands.[85] The requirement to give notice of charges under paragraph 2 serves to facilitate the determination of whether the provisional detention is appropriate or not, and therefore paragraph 2 does not require that the arrested person is given as much detail regarding the charges as would be needed later to prepare for trial.[86] If the authorities have already informed an individual of the charges being investigated prior to making the arrest, then paragraph 2 does not require prompt repetition of the formal charges so long as they communicate the reasons for the arrest.[87] The same considerations as mentioned in paragraph 28 above apply to prompt information concerning any criminal charges when minors or other vulnerable persons are arrested.

## IV.    Judicial control of detention in connection with criminal charges

31.    The first sentence of paragraph 3 applies to persons "arrested or detained on a criminal charge", while the second sentence concerns persons "awaiting trial" on a criminal charge. Paragraph 3 applies in connection with ordinary criminal prosecutions, military prosecutions and other special regimes directed at criminal punishment.[88]

---

[83]  1402/2005, *Krasnov* v. *Kyrgyzstan*, para. 8.5; general comment No. 32, para. 42; see Committee on the Rights of the Child, general comment No. 10, para. 48.

[84]  1782/2008, *Aboufaied* v. *Libya*, para. 7.6. The requirement of being informed about any charges applies to detention for possible military prosecution, regardless of whether the trial of the detainee by a military court would be prohibited by article 14 of the Covenant. 1640/2007, *El Abani* v. *Algeria*, paras. 7.6 and 7.8.

[85]  493/1992, *Griffin* v. *Spain*, para. 9.2.

[86]  General comment No. 32, para. 31; 702/1996, *McLawrence* v. *Jamaica*, para. 5.9.

[87]  712/1996, *Smirnova* v. *Russian Federation*, para. 10.3.

[88]  1782/2008, *Aboufaied* v. *Libya*, para. 7.6. Paragraph 3 applies to detention for possible military prosecution, regardless of whether the trial of the detainee by a military court would be prohibited by article 14 of the Covenant. 1813/2008, *Akwanga* v. *Cameroon*, paras. 7.4–7.5. In international armed conflict, detailed rules of international humanitarian law regarding the conduct of military prosecutions are also relevant to the interpretation of article 9, paragraph 3, which continues to apply. See paragraph 64 below.

32.     Paragraph 3 requires, firstly, that any person arrested or detained on a criminal charge shall be brought promptly before a judge or other officer authorized by law to exercise judicial power. That requirement applies in all cases without exception and does not depend on the choice or ability of the detainee to assert it.[89] The requirement applies even before formal charges have been asserted, so long as the person is arrested or detained on suspicion of criminal activity.[90] The right is intended to bring the detention of a person in a criminal investigation or prosecution under judicial control.[91] If a person already detained on one criminal charge is also ordered to be detained to face an unrelated criminal charge, the person must be promptly brought before a judge for control of the second detention.[92] It is inherent to the proper exercise of judicial power that it be exercised by an authority which is independent, objective and impartial in relation to the issues dealt with.[93] Accordingly, a public prosecutor cannot be considered as an officer exercising judicial power under paragraph 3.[94]

33.     While the exact meaning of "promptly" may vary depending on objective circumstances,[95] delays should not exceed a few days from the time of arrest.[96] In the view of the Committee, 48 hours is ordinarily sufficient to transport the individual and to prepare for the judicial hearing;[97] any delay longer than 48 hours must remain absolutely exceptional and be justified under the circumstances.[98] Longer detention in the custody of law enforcement officials without judicial control unnecessarily increases the risk of ill-treatment.[99] Laws in most States parties fix precise time limits, sometimes shorter than 48 hours, and those limits should also not be exceeded. An especially strict standard of promptness, such as 24 hours, should apply in the case of juveniles.[100]

34.     The individual must be brought to appear physically before the judge or other officer authorized by law to exercise judicial power.[101] The physical presence of detainees at the hearing gives the opportunity for inquiry into the treatment that they received in custody[102] and facilitates immediate transfer to a remand detention centre if continued detention is ordered. It thus serves as a safeguard for the right to security of person and the prohibition against torture and cruel, inhuman or degrading treatment. In the hearing that ensues, and in subsequent hearings at which the judge assesses the legality or necessity of the detention,

[89]   1787/2008, *Kovsh* v. *Belarus*, paras. 7.3–7.5.

[90]   1128/2002, *Marques de Morais* v. *Angola*, paras. 6.3–6.4; 1096/2002, *Kurbanova* v. *Tajikistan*, para. 7.2.

[91]   1914–1916/2009, *Musaev* v. *Uzbekistan*, para. 9.3.

[92]   635/1995, *Morrison* v. *Jamaica*, paras. 22.2–22.3; 762/1997, *Jensen* v. *Australia*, para. 6.3.

[93]   521/1992, *Kulomin* v. *Hungary*, para. 11.3.

[94]   See ibid.; 1547/2007, *Torobekov* v. *Kyrgyzstan*, para. 6.2; 1278/2004, *Reshetnikov* v. *Russian Federation*, para. 8.2; concluding observations: Tajikistan (CCPR/CO/84/TJK, 2005), para. 12.

[95]   702/1996, *McLawrence* v. *Jamaica*, para. 5.6; 2120/2011, *Kovalev* v. *Belarus*, para. 11.3.

[96]   1128/2002, *Marques de Morais* v. *Angola*, para. 6.3; 277/1988, *Terán Jijón* v. *Ecuador*, para. 5.3 (five days not prompt); 625/1995, *Freemantle* v. *Jamaica*, para. 7.4 (four days not prompt).

[97]   1787/2008, *Kovsh* v. *Belarus*, paras. 7.3–7.5.

[98]   Ibid.; see also 336/1988, *Fillastre and Bizouarn* v. *Bolivia*, para. 6.4 (budgetary constraints did not justify 10-day delay).

[99]   See concluding observations: Hungary (CCPR/CO/74/HUN, 2002), para. 8.

[100]  Committee on the Rights of the Child, general comment No. 10, para. 83.

[101]  289/1988, *Wolf* v. *Panama*, para. 6.2; 613/1995, *Leehong* v. *Jamaica*, para. 9.5. Regarding the phrase "other officer authorized by law to exercise judicial power," see paragraph 32 above.

[102]  See Body of Principles for the Protection of All Persons under Any Form of Detention or Imprisonment, approved by the General Assembly in its resolution 43/173, principle 37.

the individual is entitled to legal assistance, which should in principle be by counsel of choice.[103]

35.    Incommunicado detention that prevents prompt presentation before a judge inherently violates paragraph 3.[104] Depending on its duration and other facts, incommunicado detention may also violate other rights under the Covenant, including articles 6, 7, 10 and 14.[105] States parties should permit and facilitate access to counsel for detainees in criminal cases from the outset of their detention.[106]

36.    Once the individual has been brought before the judge, the judge must decide whether the individual should be released or remanded in custody for additional investigation or to await trial. If there is no lawful basis for continuing the detention, the judge must order release.[107] If additional investigation or trial is justified, the judge must decide whether the individual should be released (with or without conditions) pending further proceedings because detention is not necessary, an issue addressed more fully by the second sentence of paragraph 3. In the view of the Committee, detention on remand should not involve a return to police custody, but rather to a separate facility under different authority, where risks to the rights of the detainee can be more easily mitigated.

37.    The second requirement expressed in the first sentence of paragraph 3 is that the person detained is entitled to trial within a reasonable time or to release. That requirement applies specifically to periods of pretrial detention, that is, detention between the time of arrest and the time of judgment at first instance.[108] Extremely prolonged pretrial detention may also jeopardize the presumption of innocence under article 14, paragraph 2.[109] Persons who are not released pending trial must be tried as expeditiously as possible, to the extent consistent with their rights of defence.[110] The reasonableness of any delay in bringing the case to trial has to be assessed in the circumstances of each case, taking into account the complexity of the case, the conduct of the accused during the proceeding and the manner in which the matter was dealt with by the executive and judicial authorities.[111] Impediments to the completion of the investigation may justify additional time,[112] but general conditions of understaffing or budgetary constraint do not.[113] When delays become necessary, the judge must reconsider alternatives to pretrial detention.[114] Pretrial detention of juveniles should be

---

[103]  See concluding observations: Kenya (CCPR/C/KEN/CO/3, 2012), para. 19; see also article 14, paragraph 3 (d); Body of Principles (note 102 above), principle 11.

[104]  1297/2004, *Medjnoune* v. *Algeria*, para. 8.7.

[105]  1781/2008, *Berzig* v. *Algeria*, paras. 8.4, 8.5 and 8.8; 176/1984, *Lafuente Peñarrieta* v. *Bolivia*, para. 16.

[106]  General comment No. 32, paras. 32, 34 and 38; concluding observations: Togo (CCPR/C/TGO/CO/4, 2011), para. 19; paragraph 58 below.

[107]  See concluding observations: Tajikistan (CCPR/CO/84/TJK, 2005), para. 12; 647/1995, *Pennant* v. *Jamaica*, para. 8.2.

[108]  1397/2005, *Engo* v. *Cameroon*, para. 7.2. On the relationship between article 9, paragraph 3, and article 14, paragraph 3 (c), in that respect, see general comment No. 32, para. 61.

[109]  788/1997, *Cagas* v. *Philippines*, para. 7.3.

[110]  General comment No. 32, para. 35; 818/1998, *Sextus* v. *Trinidad and Tobago*, para. 7.2.

[111]  1085/2002, *Taright* v. *Algeria*, paras. 8.2–8.4; 386/1989, *Koné* v. *Senegal*, para. 8.6; see also 677/1996, *Teesdale* v. *Trinidad and Tobago*, para. 9.3 (delay of seventeen months violated paragraph 3); 614/1995, *Thomas* v. *Jamaica*, para. 9.6 (delay of nearly fourteen months did not violate paragraph 3); general comment No. 32, para. 35 (discussing factors relevant to reasonableness of delay in criminal proceedings).

[112]  721/1997, *Boodoo* v. *Trinidad and Tobago*, para. 6.2.

[113]  336/1988, *Fillastre and Bizouarn* v. *Bolivia*, para. 6.5; 818/1998, *Sextus* v. *Trinidad and Tobago*, para. 4.2 and 7.2.

[114]  1085/2002, *Taright* v. *Algeria*, para. 8.3.

avoided, but when it occurs they are entitled to be brought to trial in especially speedy fashion under article 10, paragraph 2 (b).[115]

38.    The second sentence of paragraph 3 of article 9 requires that detention in custody of persons awaiting trial shall be the exception rather than the rule. It also specifies that release from such custody may be subject to guarantees of appearance, including appearance for trial, appearance at any other stage of the judicial proceedings and (should occasion arise) appearance for execution of the judgment. That sentence applies to persons awaiting trial on criminal charges, that is, after the defendant has been charged, but a similar requirement prior to charging results from the prohibition of arbitrary detention in paragraph 1.[116] It should not be the general practice to subject defendants to pretrial detention. Detention pending trial must be based on an individualized determination that it is reasonable and necessary taking into account all the circumstances, for such purposes as to prevent flight, interference with evidence or the recurrence of crime.[117] The relevant factors should be specified in law and should not include vague and expansive standards such as "public security".[118] Pretrial detention should not be mandatory for all defendants charged with a particular crime, without regard to individual circumstances.[119] Neither should pretrial detention be ordered for a period based on the potential sentence for the crime charged, rather than on a determination of necessity. Courts must examine whether alternatives to pretrial detention, such as bail, electronic bracelets or other conditions, would render detention unnecessary in the particular case.[120] If the defendant is a foreigner, that fact must not be treated as sufficient to establish that the defendant may flee the jurisdiction.[121] After an initial determination has been made that pretrial detention is necessary, there should be periodic re-examination of whether it continues to be reasonable and necessary in the light of possible alternatives.[122] If the length of time that the defendant has been detained reaches the length of the longest sentence that could be imposed for the crimes charged, the defendant should be released. Pretrial detention of juveniles should be avoided to the fullest extent possible.[123]

## V.    The right to take proceedings for release from unlawful or arbitrary detention

39.    Paragraph 4 of article 9 entitles anyone who is deprived of liberty by arrest or detention to take proceedings before a court, in order that the court may decide without delay on the lawfulness of the detention and order release if the detention is not lawful. It enshrines the principle of habeas corpus.[124] Review of the factual basis of the detention

---

[115]  General comment No. 21, para. 13; see also general comment No. 32, para. 42; Committee on the Rights of the Child, general comment No. 10, para. 83.
[116]  1128/2002, *Marques de Morais* v. *Angola*, paras. 6.1 and 6.4.
[117]  1502/2006, *Marinich* v. *Belarus*, para. 10.4; 1940/2010, *Cedeño* v. *Bolivarian Republic of Venezuela*, para. 7.10; 1547/2007, *Torobekov* v. *Kyrgyzstan*, para. 6.3.
[118]  See concluding observations: Bosnia and Herzegovina (CCPR/C/BIH/CO/1, 2006), para. 18.
[119]  See concluding observations: Argentina (CCPR/CO/70/ARG, 2000), para. 10; Sri Lanka (CCPR/CO/79/LKA, 2003), para. 13.
[120]  1178/2003, *Smantser* v. *Belarus*, para. 10.3.
[121]  526/1993, *Hill and Hill* v. *Spain*, para. 12.3.
[122]  1085/2002, *Taright* v. *Algeria*, paras. 8.3–8.4.
[123]  General comment No. 32, para. 42; see Committee on the Rights of the Child, general comment No. 10, para. 80.
[124]  1342/2005, *Gavrilin* v. *Belarus*, para. 7.4.

may, in appropriate circumstances, be limited to review of the reasonableness of a prior determination.[125]

40.    The right applies to all detention by official action or pursuant to official authorization, including detention in connection with criminal proceedings, military detention, security detention, counter-terrorism detention, involuntary hospitalization, immigration detention, detention for extradition and wholly groundless arrests.[126] It also applies to detention for vagrancy or drug addiction, detention for educational purposes of children in conflict with the law[127] and other forms of administrative detention.[128] Detention within the meaning of paragraph 4 also includes house arrest and solitary confinement.[129] When a prisoner is serving the minimum duration of a prison sentence as decided by a court of law after a conviction, either as a sentence for a fixed period of time or as the fixed portion of a potentially longer sentence, paragraph 4 does not require subsequent review of the detention.[130]

41.    The object of the right is release (either unconditional or conditional)[131] from ongoing unlawful detention; compensation for unlawful detention that has already ended is addressed in paragraph 5. Paragraph 4 requires that the reviewing court must have the power to order release from the unlawful detention.[132] When a judicial order of release under paragraph 4 becomes operative (*exécutoire*), it must be complied with immediately, and continued detention would be arbitrary in violation of article 9, paragraph 1.[133]

42.    The right to bring proceedings applies in principle from the moment of arrest and any substantial waiting period before a detainee can bring a first challenge to detention is impermissible.[134] In general, the detainee has the right to appear in person before the court, especially where such presence would serve the inquiry into the lawfulness of detention or where questions regarding ill-treatment of the detainee arise.[135] The court must have the power to order the detainee brought before it, regardless of whether the detainee has asked to appear.

43.    Unlawful detention includes detention that was lawful at its inception but has become unlawful because the individual has completed serving a sentence of imprisonment or the circumstances that justify the detention have changed.[136] After a court has held that the circumstances justify the detention, an appropriate period of time may pass, depending

---

[125]    1051/2002, *Ahani* v. *Canada*, para. 10.2; 754/1997, *A.* v. *New Zealand*, para. 7.3.

[126]    248/1987, *Campbell* v. *Jamaica*, para. 6.4; 962/2001, *Mulezi* v. *Democratic Republic of the Congo*, para. 5.2; 1051/2002, *Ahani* v. *Canada*, para. 10.2; 1061/2002, *Fijalkowska* v. *Poland*, para. 8.4; 291/1988, *Torres* v. *Finland*, para. 7.4; 414/1990, *Mika Miha* v. *Equatorial Guinea*, para. 6.5.

[127]    265/1987, *Vuolanne* v. *Finland*, para. 9.5; see concluding observations: Rwanda (CCPR/C/RWA/CO/3, 2009), para. 16 (recommending abolition of detention for vagrancy).

[128]    See concluding observations: Republic of Moldova (CCPR/CO/75/MDA, 2002), para. 11.

[129]    1172/2003, *Madani* v. *Algeria*, para. 8.5; 265/1987, *Vuolanne* v. *Finland*, para. 9.5.

[130]    954/2000, *Minogue* v. *Australia*, para. 6.4; 1342/2005, *Gavrilin* v. *Belarus*, para. 7.4. Article 14, paragraph 5, however, guarantees criminal defendants the right to a single appeal from an initial conviction to a higher court (general comment No. 32, para. 45).

[131]    473/1991, *Barroso* v. *Panama*, paras. 2.4 and 8.2 (habeas corpus for bail).

[132]    1324/2004, *Shafiq* v. *Australia*, para. 7.4.

[133]    856/1999, *Chambala* v. *Zambia*, para. 7.2.

[134]    291/1988, *Torres* v. *Finland*, para. 7.2 (seven days).

[135]    See Body of Principles (note 102 above), principle 32, para. 2; general comment No. 29, para. 16.

[136]    1090/2002, *Rameka* v. *New Zealand*, paras. 7.3–7.4.

on the nature of the relevant circumstances, before the individual is entitled to take proceedings again on similar grounds.[137]

44.     "Unlawful" detention includes both detention that violates domestic law and detention that is incompatible with the requirements of article 9, paragraph 1, or with any other relevant provision of the Covenant.[138] While domestic legal systems may establish differing methods for ensuring court review of detention, paragraph 4 requires that there be a judicial remedy for any detention that is unlawful on one of those grounds.[139] For example, the power of a family court to order release of a child from detention that is not in the child's best interests may satisfy the requirements of paragraph 4 in relevant cases.[140]

45.     Paragraph 4 entitles the individual to take proceedings before "a court," which should ordinarily be a court within the judiciary. Exceptionally, for some forms of detention, legislation may provide for proceedings before a specialized tribunal, which must be established by law and must either be independent of the executive and legislative branches or enjoy judicial independence in deciding legal matters in proceedings that are judicial in nature.[141]

46.     Paragraph 4 leaves the option of taking proceedings to the persons being detained or those acting on their behalf; unlike paragraph 3, it does not require automatic initiation of review by the authorities detaining an individual.[142] Laws that exclude a particular category of detainees from the review required by paragraph 4 violate the Covenant.[143] Practices that render such review effectively unavailable to an individual, including incommunicado detention, also amount to a violation.[144] To facilitate effective review, detainees should be afforded prompt and regular access to counsel. Detainees should be informed, in a language they understand, of their right to take proceedings for a decision on the lawfulness of their detention.[145]

47.     Persons deprived of liberty are entitled not merely to take proceedings, but to receive a decision, and without delay. The refusal by a competent court to take a decision on a petition for the release of a detained person violates paragraph 4.[146] The adjudication of the case should take place as expeditiously as possible.[147] Delays attributable to the petitioner do not count as judicial delay.[148]

48.     The Covenant does not require that a court decision upholding the lawfulness of detention be subject to appeal. If a State party does provide for appeal or further instances,

---

[137]  Ibid. (annual review of post-conviction preventive detention); 754/1997, *A.* v. *New Zealand*, para. 7.3 (regular review of hospitalization); 291/1988, *Torres v. Finland*, para. 7.4 (review every two weeks of detention for extradition).

[138]  1255,1256,1259,1260,1266,1268,1270,1288/2004, *Shams et al.* v. *Australia*, para. 7.3.

[139]  Ibid.

[140]  1069/2002, *Bakhtiyari* v. *Australia*, para. 9.5.

[141]  1090/2002, *Rameka* v. *New Zealand*, para. 7.4 (discussing ability of Parole Board to act in judicial fashion as a court); 291/1988, *Torres* v. *Finland*, para. 7.2 (finding review by the Minister of the Interior insufficient); 265/1987, *Vuolanne* v. *Finland*, para. 9.6 (finding review by a superior military officer insufficient); general comment No. 32, paras. 18–22.

[142]  373/1989, *Stephens* v. *Jamaica*, para. 9.7.

[143]  R.1/4, *Torres Ramírez* v. *Uruguay*, para. 18; 1449/2006, *Umarov* v. *Uzbekistan*, para. 8.6.

[144]  R.1/5, *Hernández Valentini de Bazzano et al.* v. *Uruguay*, para. 10; 1751/2008, *Aboussedra* v. *Libyan Arab Jamahiriya*, para. 7.6; 1061/2002, *Fijalkowska* v. *Poland*, para. 8.4 (State's failures frustrated the ability of a patient to challenge involuntary committal).

[145]  See Body of Principles (note 102 above), principles 13–14.

[146]  1128/2002, *Marques de Morais* v. *Angola*, para. 6.5.

[147]  291/1988, *Torres* v. *Finland*, para. 7.3.

[148]  1051/2002, *Ahani* v. *Canada*, para. 10.3.

the delay may reflect the changing nature of the proceeding and in any event must not be excessive.[149]

# VI. The right to compensation for unlawful or arbitrary arrest or detention

49.    Paragraph 5 of article 9 of the Covenant provides that anyone who has been the victim of unlawful arrest or detention shall have an enforceable right to compensation. Like paragraph 4, paragraph 5 articulates a specific example of an effective remedy for human rights violations, which States parties are required to afford. Those specific remedies do not replace, but are included alongside, the other remedies that may be required in a particular situation for a victim of unlawful or arbitrary arrest or detention by article 2, paragraph 3, of the Covenant.[150] Whereas paragraph 4 provides a swift remedy for release from ongoing unlawful detention, paragraph 5 clarifies that victims of unlawful arrest or detention are also entitled to financial compensation.

50.    Paragraph 5 obliges States parties to establish the legal framework within which compensation can be afforded to victims, as a matter of enforceable right and not as a matter of grace or discretion. The remedy must not exist merely in theory, but must operate effectively and payment must be made within a reasonable period of time. Paragraph 5 does not specify the precise form of procedure, which may include remedies against the State itself or against individual State officials responsible for the violation, so long as they are effective.[151] Paragraph 5 does not require that a single procedure be established providing compensation for all forms of unlawful arrest, but only that an effective system of procedures exist that provides compensation in all the cases covered by paragraph 5. Paragraph 5 does not oblige States parties to compensate victims *sua sponte*, but rather permits them to leave commencement of proceedings for compensation to the initiative of the victim.[152]

51.    Unlawful arrest and detention within the meaning of paragraph 5 include such arrest and detention arising within either criminal or non-criminal proceedings, or in the absence of any proceedings at all.[153] The "unlawful" character of the arrest or detention may result from violation of domestic law or violation of the Covenant itself, such as substantively arbitrary detention and detention that violates procedural requirements of other paragraphs of article 9.[154] However, the fact that a criminal defendant was ultimately acquitted, at first

---

[149]    1752/2008, *J.S.* v. *New Zealand*, paras. 6.3–6.4 (finding periods of eight days at first instance, three weeks at second instance, and two months at third instance satisfactory in context).

[150]    General comment No. 31, paras. 16 and 18; 238/1987, *Bolaños* v. *Ecuador*, para. 10; 962/2001, *Mulezi* v. *Democratic Republic of the Congo*, para. 7.

[151]    See concluding observations: Cameroon (CCPR/C/CMR/CO/4, 2010), para. 19; Guyana (CCPR/C/79/Add.121, 2000), para. 15; United States of America (A/50/40, 1995), para. 299; Argentina (A/50/40, 1995), para. 153; 1885/2009, *Horvath* v. *Australia*, para. 8.7 (discussing effectiveness of remedy); 1432/2005, *Gunaratna* v. *Sri Lanka*, para. 7.4; general comment No. 32, para. 52 (requirement of compensation for wrongful convictions).

[152]    414/1990, *Mika Miha* v. *Equatorial Guinea*, para. 6.5; 962/2001, *Mulezi* v. *Democratic Republic of the Congo*, para. 5.2.

[153]    754/1997, *A.* v. *New Zealand*, paras. 6.7 and 7.4; 188/1984, *Martínez Portorreal* v. *Dominican Republic*, para. 11; 962/2001, *Mulezi* v. *Democratic Republic of the Congo*, para. 5.2.

[154]    1128/2002, *Marques de Morais* v. *Angola*, para. 6.6; see also 328/1988, *Zelaya Blanco* v. *Nicaragua*, para. 10.3 (arbitrary detention); 728/1996, *Sahadeo* v. *Guyana*, para. 11 (violation of article 9, para. 3); R.2/9, *Santullo Valcada* v. *Uruguay*, para. 12 (violation of art. 9, para. 4).

instance or on appeal, does not in and of itself render any preceding detention "unlawful".[155]

52.    The financial compensation required by paragraph 5 relates specifically to the pecuniary and non-pecuniary harm resulting from the unlawful arrest or detention.[156] When the unlawfulness of the arrest arises from the violation of other human rights, such as freedom of expression, the State party may have further obligations to provide compensation or other reparation in relation to those other violations, as required by article 2, paragraph 3, of the Covenant.[157]

# VII.    Relationship of article 9 with other articles of the Covenant

53.    The procedural and substantive guarantees of article 9 both overlap and interact with other guarantees of the Covenant. Some forms of conduct amount independently to a violation of article 9 and another article, such as delays in bringing a detained criminal defendant to trial, which may violate both paragraph 3 of article 9 and paragraph 3 (c) of article 14. At times the content of article 9, paragraph 1, is informed by the content of other articles; for example, detention may be arbitrary by virtue of the fact that it represents punishment for freedom of expression, in violation of article 19.[158]

54.    Article 9 also reinforces the obligations of States parties under the Covenant and the Optional Protocol to protect individuals against reprisals for having cooperated or communicated with the Committee, such as physical intimidation or threats to personal liberty.[159]

55.    The right to life guaranteed by article 6 of the Covenant, including the right to protection of life under article 6, paragraph 1, may overlap with the right to security of person guaranteed by article 9, paragraph 1. The right to personal security may be considered broader to the extent that it also addresses injuries that are not life-threatening. Extreme forms of arbitrary detention that are themselves life-threatening violate the rights to personal liberty and personal security as well as the right to protection of life, in particular enforced disappearances.[160]

56.    Arbitrary detention creates risks of torture and ill-treatment, and several of the procedural guarantees in article 9 serve to reduce the likelihood of such risks. Prolonged incommunicado detention violates article 9 and would generally be regarded as a violation of article 7.[161] The right to personal security protects interests in bodily and mental integrity that are also protected by article 7.[162]

57.    Returning an individual to a country where there are substantial grounds for believing that the individual faces a real risk of a severe violation of liberty or security of

---

[155]    432/1990, *W.B.E.* v. *Netherlands*, para. 6.5; 963/2001, *Uebergang* v. *Australia*, para. 4.4.

[156]    1157/2003, *Coleman* v. *Australia*, para. 6.3.

[157]    Ibid., para. 9; 1128/2002, *Marques de Morais* v. *Angola*, para. 8; general comment No. 31, para. 16.

[158]    See also paragraph 17 above.

[159]    General comment No. 33, para. 4; 241 and 242/1987, *Birindwa ci Birhashwirwa and Tshisekedi wa Mulumba* v. *Zaire*, para. 12.5; see concluding observations: Maldives (CCPR/C/MDV/CO/1, 2012), para. 26.

[160]    449/1991, *Mojica* v. *Dominican Republic*, para. 5.4; 1753/2008, *Guezout et al.* v. *Algeria*, paras. 8.4 and 8.7.

[161]    1782/2008, *Aboufaied* v. *Libya*, paras. 7.4 and 7.6; 440/1990, *El-Megreisi* v. *Libyan Arab Jamahiriya*, para. 5.4.

[162]    General comment No. 20, para. 2.

person such as prolonged arbitrary detention may amount to inhuman treatment prohibited by article 7 of the Covenant.[163]

58.    Several safeguards that are essential for the prevention of torture are also necessary for the protection of persons in any form of detention against arbitrary detention and infringement of personal security.[164] The following examples are non-exhaustive. Detainees should be held only in facilities officially acknowledged as places of detention. A centralized official register should be kept of the names and places of detention, and times of arrival and departure, as well as of the names of persons responsible for their detention, and made readily available and accessible to those concerned, including relatives.[165] Prompt and regular access should be given to independent medical personnel and lawyers and, under appropriate supervision when the legitimate purpose of the detention so requires, to family members.[166] Detainees should be promptly informed of their rights, in a language they understand;[167] providing information leaflets in the appropriate language, including in Braille, may often assist the detainee in retaining the information. Detained foreign nationals should be informed of their right to communicate with their consular authorities, or, in the case of asylum seekers, with the Office of the United Nations High Commissioner for Refugees.[168] Independent and impartial mechanisms should be established for visiting and inspecting all places of detention, including mental-health institutions.

59.    Article 10 of the Covenant, which addresses conditions of detention for persons deprived of liberty, complements article 9, which primarily addresses the fact of detention. At the same time, the right to personal security in article 9, paragraph 1, is relevant to the treatment of both detained and non-detained persons. The appropriateness of the conditions prevailing in detention to the purpose of detention is sometimes a factor in determining whether detention is arbitrary within the meaning of article 9.[169] Certain conditions of detention (such as denial of access to counsel and family) may result in procedural violations of paragraphs 3 and 4 of article 9. Article 10, paragraph 2 (b), reinforces for juveniles the requirement in article 9, paragraph 3, that pretrial detainees be brought to trial expeditiously.

60.    The liberty of movement protected by article 12 of the Covenant and the liberty of person protected by article 9 complement each other. Detention is a particularly severe form of restriction of liberty of movement, but in some circumstances both articles may come into play together.[170] Detention in the course of transporting a migrant involuntarily, is often used as a means of enforcing restrictions on freedom of movement. Article 9 addresses such uses of detention in the implementation of expulsion, deportation or extradition.

61.    The relationship between article 9 and article 14 of the Covenant, regarding civil and criminal trials, has already been illustrated.[171] Article 9 addresses deprivation of liberty,

---

[163]    General comment No. 31, para. 12.

[164]    General comment No. 20, para. 11; Committee against Torture, general comment No. 2, para. 13.

[165]    See concluding observations: Algeria (CCPR/C/DZA/CO/3, 2007), para. 11.

[166]    See Body of Principles (note 102 above), principles 17–19 and 24; Committee on the Rights of the Child, general comment No. 10, para. 87.

[167]    See Body of Principles (note 102 above), principles 13–14; United Nations Rules for the Protection of Juveniles Deprived of their Liberty, paras. 24–25, adopted by the General Assembly in its resolution 45/113 (regarding explanation of rights to detained juveniles).

[168]    See Body of Principles (note 102 above), principle 16, para. 2.

[169]    See paragraphs 14, 18 and 21 above.

[170]    General comment No. 27, para. 7; 1134/2002, *Gorji-Dinka* v. *Cameroon*, para. 5.4–5.5 (house arrest); 138/1983, *Mpandanjila et al.* v. *Zaire*, paras. 8 and 10.

[171]    See paragraphs 38 and 53 above.

only some instances of which take place in connection with civil or criminal proceedings within the scope of article 14. The procedural requirements of paragraphs 2 to 5 of article 9 apply in connection with proceedings falling within the scope of article 14 only when actual arrest or detention occurs.[172]

62.     Article 24, paragraph 1, of the Covenant entitles every child "to such measures of protection as are required by his status as a minor, on the part of his family, society and the State". That article entails the adoption of special measures to protect the personal liberty and security of every child, in addition to the measures generally required by article 9 for everyone.[173] A child may be deprived of liberty only as a last resort and for the shortest appropriate period of time.[174] In addition to the other requirements applicable to each category of deprivation of liberty, the best interests of the child must be a primary consideration in every decision to initiate or continue the deprivation.[175] The Committee acknowledges that sometimes a particular deprivation of liberty would itself be in the best interests of the child. Placement of a child in institutional care amounts to a deprivation of liberty within the meaning of article 9.[176] A decision to deprive a child of liberty must be subject to periodic review of its continuing necessity and appropriateness.[177] The child has a right to be heard, directly or through legal or other appropriate assistance, in relation to any decision regarding a deprivation of liberty, and the procedures employed should be child-appropriate.[178] The right to release from unlawful detention may result in return to the child's family or placement in an alternative form of care that accords with the child's best interests, rather than simple release into the child's own custody.[179]

63.     In the light of article 2, paragraph 1, of the Covenant, States parties have an obligation to respect and to ensure the rights under article 9 to all persons who may be within their territory and to all persons subject to their jurisdiction.[180] Given that arrest and detention bring a person within a State's effective control, States parties must not arbitrarily or unlawfully arrest or detain individuals outside their territory.[181] States parties must not subject persons outside their territory to, inter alia, prolonged incommunicado detention or

---

[172]  263/1987, *González del Río* v. *Peru*, para. 5.1; 1758/2008, *Jessop* v. *New Zealand*, paras. 7.9–7.10.

[173]  See general comments No. 17, para. 1, and No. 32, paras. 42–44.

[174]  See concluding observations: Czech Republic (CCPR/C/CZE/CO/3, 2013), para. 17; Convention on the Rights of the Child, art. 37 (b).

[175]  1069/2002, *Bakhtiyari* v. *Australia*, para. 9.7; see Convention on the Rights of the Child, art. 3, para. 1.

[176]  See Committee on the Rights of the Child, general comment No. 10, para. 11; United Nations Rules for the Protection of Juveniles Deprived of their Liberty, para. 11 (b). In contrast, normal supervision of children by parents or family may involve a degree of control over movement, especially of younger children, that would be inappropriate for adults, but that does not constitute a deprivation of liberty; neither do the ordinary requirements of daily school attendance constitute a deprivation of liberty.

[177]  See paragraph 12 above; Convention on the Rights of the Child, arts. 37 (d) and 25.

[178]  General comment No. 32, paras. 42–44; Committee on the Rights of the Child, general comment No. 12, paras. 32–37.

[179]  UNHCR, Detention Guidelines (note 45 above), para. 54 ("Where possible [unaccompanied or separated children] should be released into the care of family members who already have residency within the asylum country. Where this is not possible, alternative care arrangements, such as foster placement or residential homes, should be made by the competent child care authorities, ensuring that the child receives appropriate supervision").

[180]  General comment No. 31, para. 10.

[181]  See ibid.; 52/1979, *Saldías de López* v. *Uruguay*, paras. 12.1–13; R.13/56, *Celiberti de Casariego* v. *Uruguay*, para. 10.1–11; 623,624,626,627/1995, *Domukovsky et al.* v. *Georgia*, para. 18.2.

deprive them of review of the lawfulness of their detention.[182] The extraterritorial location of an arrest may be a circumstance relevant to an evaluation of promptness under paragraph 3.

64.     With regard to article 4 of the Covenant, the Committee first observes that, like the rest of the Covenant, article 9 applies also in situations of armed conflict to which the rules of international humanitarian law are applicable.[183] While rules of international humanitarian law may be relevant for the purposes of the interpretation of article 9, both spheres of law are complementary, not mutually exclusive.[184] Security detention authorized and regulated by and complying with international humanitarian law in principle is not arbitrary. In conflict situations, access by the International Committee of the Red Cross to all places of detention becomes an essential additional safeguard for the rights to liberty and security of person.

65.     Article 9 is not included in the list of non-derogable rights of article 4, paragraph 2, of the Covenant, but there are limits on States parties' power to derogate. States parties derogating from normal procedures required under article 9 in circumstances of armed conflict or other public emergency must ensure that such derogations do not exceed those strictly required by the exigencies of the actual situation.[185] Derogating measures must also be consistent with a State party's other obligations under international law, including provisions of international humanitarian law relating to deprivation of liberty, and non-discriminatory.[186] The prohibitions against taking of hostages, abductions or unacknowledged detention are therefore not subject to derogation.[187]

66.     There are other elements in article 9 that in the Committee's opinion cannot be made subject to lawful derogation under article 4. The fundamental guarantee against arbitrary detention is non-derogable, insofar as even situations covered by article 4 cannot justify a deprivation of liberty that is unreasonable or unnecessary under the circumstances.[188] The existence and nature of a public emergency which threatens the life of the nation may, however, be relevant to a determination of whether a particular arrest or detention is arbitrary. Valid derogations from other derogable rights may also be relevant when a deprivation of liberty is characterized as arbitrary because of its interference with another right protected by the Covenant. During international armed conflict, substantive and procedural rules of international humanitarian law remain applicable and limit the ability to derogate, thereby helping to mitigate the risk of arbitrary detention.[189] Outside that context, the requirements of strict necessity and proportionality constrain any derogating measures involving security detention, which must be limited in duration and accompanied by procedures to prevent arbitrary application, as explained in paragraph 15 above,[190] including review by a court  within the meaning of paragraph 45 above.[191]

---

[182]  See concluding observations: United States of America (CCPR/C/USA/CO/3, 2006), paras. 12 and 18.

[183]  General comments No. 31, para. 11, and No. 29, para. 3.

[184]  General comments No. 31, para. 11, and No. 29, paras. 3, 12 and 16.

[185]  General comment No. 29, paras. 4–5. When the emergency justifying measures of derogation arises from the participation of State party's armed forces in a peacekeeping mission abroad, the geographic and material scope of the derogating measures must be limited to the exigencies of the peacekeeping mission.

[186]  General comment No. 29, paras. 8–9.

[187]  Ibid., para. 13 (b).

[188]  Ibid., paras. 4 and 11.

[189]  Ibid., para. 3.

[190]  Ibid., paras. 4, 11 and 15.

[191]  Ibid., para. 16; paragraph 67 below.

67.    The procedural guarantees protecting liberty of person may never be made subject to measures of derogation that would circumvent the protection of non-derogable rights.[192] In order to protect non-derogable rights, including those in articles 6 and 7, the right to take proceedings before a court to enable the court to decide without delay on the lawfulness of detention must not be diminished by measures of derogation.[193]

68.    While reservations to certain clauses of article 9 may be acceptable, it would be incompatible with the object and purpose of the Covenant for a State party to reserve the right to engage in arbitrary arrest and detention of persons.[194]

———————————

---

[192]  General comment No. 32, para. 6.
[193]  General comment No. 29, para. 16.
[194]  General comment No. 24, para. 8.