UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Court File No.: 0:26-cv-00190-KMM-DJF

STATE OF MINNESOTA, by and through its Attorney General Keith Ellison,

CITY OF MINNEAPOLIS, and CITY OF SAINT PAUL,

    Plaintiff

vs.

KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; JOHN CONDON, in his official capacity as Acting Executive Associate Director of Homeland Security Investigations; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; MARCOS CHARLES, in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION; GREGORY BOVINO, in his official capacity as Commander of the U.S. Border PATROL; U.S. BORDER PATROL; DAVID EASTERWOOD, in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement,

    Defendant

**AMICUS CURIE BRIEF (AMENDED) IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION FROM SUBURBAN CITES:
THE CITY OF BLOOMINGTON
THE CITY OF BROOKLYN CENTER
THE CITY OF EDINA
THE CITY OF FALCON HEIGHTS
THE CITY OF GOLDEN VALLEY
THE CITY OF LAUDERDALE
THE CITY OF MINNETONKA
THE CITY OF MOUNDS VIEW
THE CITY OF RICHFIELD
THE CITY OF SAINT LOUIS PARK**

1

INTRODUCTION

The Cities of Bloomington, Brooklyn Center, Edina, Falcon Heights, Golden Valley, Lauderdale, Minnetonka, Mounds View, Richfield, and Saint Louis Park ("Suburban Cities") submit this amicus brief in support of Plaintiffs' requested injunctive relief. These Cities are representative "first-ring" suburban communities adjacent to Minneapolis and Saint Paul. Residents, victims, witnesses, and defendants routinely cross municipal boundaries for work, school, commerce, and family. As a result, large-scale enforcement activity and resulting fear, disorder, and resource diversion within the Twin Cities core rapidly spill into neighboring cities.

Amici do not repeat the comprehensive equities and rule-of-law analysis already submitted by the Plaintiff, and the Minnesota State Bar Association and other bar associations (the "MSBA Amicus Brief"). Amici instead incorporate those arguments by reference and focus on distinct harms that Operation Metro Surge imposes on municipal prosecution functions: (1) degradation of victim/witness cooperation and case outcomes; (2) diversion of local police capacity essential to municipal charging decisions, evidence collection, and court processes; (3) increased risk of escalation and impersonation when armed officers conceal identity and operate without readily reviewable accountability mechanisms; and (4) predictable, region-wide public safety impacts when residents cannot utilize the Minnesota District Court system to dispense justice.

Municipal prosecution is a core local-government function: cities maintain public order by charging and litigating misdemeanors and gross misdemeanors, supporting victims, compelling witness attendance, and ensuring compliance with release conditions. When these systems are destabilized, community safety declines. The requested injunctive relief appropriately protects these local interests while preserving the federal government's ability to enforce immigration laws within constitutional and statutory limits.

2

IDENTITY OF AMICI CURIAE AND STATEMENT OF INTEREST

Each city supporting this amicus curiae brief provides law enforcement services through its municipal police department and/or the County Sheriff, and prosecutes misdemeanor and gross misdemeanor offenses occurring within its jurisdiction. These cities regularly rely on resident cooperation, local police resources, and Minnesota District Court processes to secure victim safety and community order. Offenses prosecuted by these Cities include victim-based crimes such as theft and assault, which are of critical importance to their communities.

The cities of Bloomington, Brooklyn Center, Edina, Falcon Heights, Golden Valley, Minnetonka, Richfield and Saint Louis Park are first-ring suburban cities in Hennepin County. Pretrial court proceedings for Brooklyn Center and Golden Valley are held at the suburban courthouse in Brooklyn Center. Pretrial court proceedings for Bloomington and Richfield occur at the Hennepin County Public Safety Facility in Minneapolis. Pretrial court proceedings for Edina, Minnetonka, and Saint Louis Park occur at the suburban courthouse in Minnetonka. Trials for these jurisdictions occur at the Hennepin County Government Center in Minneapolis.

The cities of Falcon Heights, Mounds View and Lauderdale are first-ring suburban cities in Ramsey County. Pretrial court proceedings are held at the suburban courthouse in Maplewood, with trials occurring at the Kellogg Courthouse in Saint Paul.

Other suburban cities have expressed strong support and interest in joining this amicus filing in support of Plaintiffs' lawsuit. Additional cities will be added to this amicus briefing as their City Councils approve participation.

All amici have a strong interest in ensuring that public safety, municipal policing, and municipal prosecution can proceed without the destabilizing fear, diversion, and uncertainty created by large-scale, militarized enforcement tactics in the region.

Amici submits this brief to provide the Court with the municipal prosecution perspective on how these practices affect charging decisions, victim and witness participation, evidence integrity, court attendance, and the region-wide ability to maintain public order.

INTEREST OF AMICI

Suburban Cities file this focused amicus to address practical court-system and prosecution impacts arising from the enforcement activities at issue. Amici operate high-volume municipal prosecution dockets, dependent on the regular, voluntary appearance of defendants, victims, and civilian witnesses. Amici expressly do not repeat Plaintiffs' constitutional theories. Instead, we support the targeted, process-protective relief already framed in the Amended [Proposed] Temporary Restraining Order [Docket No. 92] ("Proposed TRO")—particularly provisions that preserve access to Minnesota courts, avoid custody conflicts that derail municipal prosecutions, and clarify identification to maintain public trust.

Amici also incorporate, as context, the record evidence in the Plaintiffs' Memorandum Of Law In Support For Temporary Restraining Order [Docket No. 8] ("TRO memorandum") showing diversion of local public-safety resources, delays in 911 response, and widespread confusion caused by masked agents bearing "POLICE" insignia; facts that directly impair court operations in the metro area's municipal courts.

SUMMARY OF POSITION

Amici supports these concepts in the Proposed TRO:

- Sensitive-location protections for courthouses (¶ 1(a));
- Limits on arrests/detentions absent warrants or established cause (¶¶ 1(b)–(d));
- Masking/identification and vehicle-marking requirements (¶¶ 1(h, j), 3(a)–(c));

4

- Anti-retaliation/anti-surveillance provisions protecting observers (¶ 2); and

- Reporting/accounting requirements (¶ 3(a)–(f)).

For each, we provide municipal-prosecution-specific reasons why preserving the text as proposed—without weakening—will prevent immediate and irreparable court-process harms in suburban dockets.

ARGUMENT

I. Courthouses as "Sensitive Locations" Protect the Integrity of Municipal Dockets.

(Supports Proposed TRO ¶ 1(a))

The Proposed TRO's inclusion of courthouses (and public buildings serving governmental purposes) within "sensitive locations" is central to preserving the orderly administration of Minnesota's courts. Municipal dockets, particularly misdemeanor and gross-misdemeanor calendars, depend on the voluntary, punctual appearance of defendants and civilian witnesses. Even limited immigration enforcement in courthouse curtilage causes failures to appear, witness attrition, and cascading continuances/warrants, degrading public safety by preventing adjudication on the merits. And as it relates to in-custody municipal defendants, their pretrial removal to ICE custody deprives justice to crime victims.

The TRO memorandum documents the broader environment of diversion and confusion (e.g., large-scale overtime and pending 911 calls while police manage DHS-related incidents). Those same dynamics correlate with attendance failures and docket disruptions in municipal courts. The courthouse sensitive-location designation is a narrow, content-neutral means to stabilize attendance and keep state-court proceedings on track during the preliminary-injunction.

II. Limits on Arrests and Detentions Prevent Custody Conflicts That Override State-Court Authority.

(Supports Proposed TRO ¶¶ 1(b)–(d))

The Proposed TRO rightly limits arrests to valid administrative or judicial warrants or clearly defined exigency, and bars detentions without reasonable, articulable suspicion of a federal crime. For municipal prosecutions, these limits are more than civil-liberties safeguards; they prevent inadvertent preemption of court calendars. When defendants or witnesses are unexpectedly removed to civil immigration custody near hearing times, courts face forced dismissals, bench warrants, or process delays that undermine both defense and prosecution. Similarly, removal of charged defendants from local custody to ICE custody deprives local crime victims of the justice they deserve. The TRO memorandum describes the system-level strain (e.g., triaged 911 queues and mass diversion of officers) that makes unplanned custody conflicts particularly disruptive to municipal courts that rely on tight, high-volume calendars.

By preserving the Proposed TRO's arrest/detention standards intact, the Court ensures that state-court subpoenas, summonses, and release conditions are not functionally nullified by last-minute civil custody, absent genuine exigency, or a lawful warrant.

III. Masking and Identification Requirements Restore Necessary Accountability and Public Trust in Court Settings.

(Supports Proposed TRO ¶¶ 1(h, j), 3(a)–(c))

The Proposed TRO's masking prohibition (outside of use during true undercover police work), unique alphanumeric identifiers on uniforms, marked vehicles, and audible identification before entering property are modest, operationally feasible measures that directly affect witness cooperation in municipal prosecutions. The TRO memorandum documents the public confusion

6

created when masked agents in generic "POLICE" vests operate in public—confusion that residents frequently attribute to local police and prosecutors, chilling cooperation and deterring subpoena compliance in routine cases. These identification measures, particularly in/around courts, separate local and federal roles in the public eye and preserve the legitimacy of municipal proceedings.

IV. Anti-Retaliation/Anti-Surveillance Provisions Protect Court Attendance by Parties and Support Persons.

(Supports Proposed TRO ¶ 2)

The Proposed TRO bars retaliatory drives-by, surveillance, referrals, or information-collection targeting citizens who lawfully observe or follow federal agents from a safe distance and do not obstruct. In municipal courts, parties often arrive with family, advocates, or community observers who provide transportation, childcare, language support, and emotional stability. Retaliatory tactics aimed at observers not only chill protest activity; they also discourage attendance by those same support networks from attending court—indirectly emptying courtrooms and degrading fact-finding in everyday prosecutions. The record reflects retaliatory patterns and intimidation that are plausibly perceived by court users as linked to "police," reinforcing the need for these limited, process-protective prohibitions.

V. Reporting and Accounting Requirements Enable Courts to Preserve Cases, Not Dismiss Them for Process Failures.

(Supports Proposed TRO ¶¶ 3(a)–(f))

The Proposed TRO requires sealable lists of U.S. citizens whose data was collected and searchable accounting of persons detained or arrested, including basis and custodial status, and narrative reports for warrantless civil arrests in the metro area. For municipal prosecutors and

7

courts, this is critical coordination infrastructure, not mere oversight. With timely custodial information, prosecutors can seek continuances or request temporary production rather than watching cases collapse into dismissals or unjust bench warrants when a defendant or key witness is unexpectedly taken into ICE custody. The TRO memorandum's documentation of diversion, pending 911 calls, and operational disruption shows why courts now need reliable status visibility to avoid preventable process failures.

REQUEST

Amici respectfully urges the Court to enter the Proposed TRO with its municipal court-related and prosecution-related provisions intact, specifically ¶¶ 1(a), 1(c)–(d), 1(h, j), 2, and 3(a)–(f). These are narrow, content-neutral measures that preserve access to Minnesota courts and stabilize municipal prosecutions while the broader constitutional issues are litigated.

CONCLUSION

The Proposed TRO already contains the targeted tools necessary to protect the functioning of Minnesota's courts without impeding legitimate federal objectives. From a municipal prosecutor's perspective, preserving these provisions as drafted will prevent concrete, irreparable process harms—missed appearances, lost witness cooperation, and cascading calendar failures—and thereby advance public safety through the consistent operation of the rule of law.

Respectfully submitted this day, January 24, 2026,

By: _____/signature/_____
      Kurt B. Glaser (MN 228886)
      Prosecuting Attorney
      Cities of Golden Valley & Brooklyn Center
      Prosecution services provided by
      Berglund, Baumgartner & Glaser, LLC
      333 Washington Avenue North
      405 Union Plaza Building
      Minneapolis, Minnesota 55401
      612-333-6513

      *Attorneys for the City of Golden Valley & Brooklyn Center*
      *Lead Counsel for Amici*


By: ___*/s/ Katrina E. Joseph*_____
      Katrina E. Joseph (MN 328959)
      Prosecuting Attorney
      Cities of Mounds View, Lauderdale & Richfield
      Prosecution services provided by
      H|J Law
      1400 Van Buren Street Northeast
      Suite 200
      Minneapolis, Minnesota 55413
      612-787-7698

      *Attorneys for the Cities of Mounds View, Lauderdale & Richfield*


By: ___*/s/ Jared Shepherd*_____
      Jared Shepherd (MN 389521)
      City Attorney
      City of Falcon Heights & Saint Louis Park
      Legal services provided by
      Campbell Knutson
      Grand Oak Office Center
      860 Blue Gentian Road
      Suite #290
      Eagan, MN 55121
      651-234-6218

      *Attorneys for the City of Falcon Heights & Saint Louis Park*

By: __/s/ David S. Kendall__
      David S. Kendall (MN 303859)
      City Attorney
      City of Edina
      Legal services provided by
      Campbell Knutson
      Grand Oak Office Center
      860 Blue Gentian Road
      Suite #290
      Eagan, MN 55121
      651-234-6218

      *Attorneys for the City of Edina*


By: __/s/ Amir Malik__
      Amir Malik (MN 327426)
      Compliance Manager
      Melissa Manderschied
      City Attorney
      City of Bloomington
      1800 West Old Shakopee Road
      Bloomington, MN 55431
      952-563-8753

      *Attorneys for the City of Bloomington*


By: __/s/ Erik Nilsson__
      Erik Nilsson (MN 304785)
      City Attorney
      City of Minnetonka
      14600 Minnetonka Boulevard
      Minnetonka, Minnesota 55345
      952-939-8262

      *Attorneys for the City of Minnetonka*