# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

STATE OF MINNESOTA, *by and through its Attorney General Keith Ellison*, CITY OF MINNEAPOLIS, and CITY OF ST. PAUL,

    Plaintiffs,

v.

KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; JOHN CONDON, *in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARCOS CHARLES, *in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;* U.S. Immigration and Customs Enforcement; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection;* U.S. Customs and Border Protection; GREGORY BOVINO, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; DAVID EASTERWOOD, *in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement*,

    Defendants.

Case No. 0:26-cv-00190-KMM-DJF

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY**

## INTRODUCTION

On January 12, 2026, Plaintiffs sought emergency relief to ameliorate ongoing, irreparable harm resulting from Defendants' unprecedented occupation of Minnesota, including Minneapolis and Saint Paul (the "Twin Cities") known as "Operation Metro Surge." Operation Metro Surge is not just unlawfully invasive; it is deadly. Two Minnesota residents were shot and killed by Defendants' agents. And Defendants have engaged in a sweeping pattern of militarized raids, racial profiling, and excessive force against the people of Minnesota. Defendants' unlawful conduct remains unchecked, impeding Plaintiffs' ability to protect the public health, safety, and welfare of their residents as well as support the local economy.

Given these urgent and unprecedented circumstances, Plaintiffs ask the Court to grant expedited discovery and require Defendants to respond to Plaintiffs' written discovery requests within seven days of service and permit Plaintiffs to depose Defendants' declarants within fourteen days of the Court's order. Plaintiffs also request expedited handling of this motion. As Plaintiffs have previewed to the Court, Plaintiffs anticipate filing a preliminary injunction motion promptly. Plaintiffs have established good cause for limited expedited discovery to assist them in preparing for a preliminary injunction motion and hearing. *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 457 (D.S.D. 2014) (citing *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings.")).

## FACTUAL AND PROCEDURAL BACKGROUND

**I.   DEFENDANTS ENGAGE IN A CAMPAIGN OF IMMIGRATION ENFORCEMENT CHARACTERIZED BY VIOLENCE AND INTIMIDATION.**

In December 2025, Defendants launched Operation Metro Surge, an unprecedented deployment of thousands of heavily armed and masked immigration enforcement agents in Minnesota. Defendants' agents blatantly disregard the rule of law. In support of Plaintiffs' motion for a Temporary Restraining Order, Plaintiffs submitted declarations detailing unlawful conduct by Defendants' officers, including the fatal shootings of observers Renee Good and Alex Pretti, the stops or detainments of Minnesotans because of the color of their skin or their accent, the targeting of bus routes and schools for enforcement, and the retaliation against protestors, observers, and journalists.[1]

While the number of federal immigration enforcement agents deployed to Minnesota is unprecedented,[2] their conduct is not. This is the same conduct Defendants' agents engaged in when they were deployed to other "blue cities" where the Trump Administration ramped up domestic immigration enforcement. For example, in Los Angeles, federal immigration agents "unleashed crowd control weapons indiscriminately and with surprising savagery." *L.A. Press Club v. Noem*, 799 F. Supp. 3d 1036, 1045 (C.D. Cal. 2025). Federal agents shot journalists with pepper balls, teargassed protesters, and

---

[1] ECF 86 (Middlecamp Decl. Exs. 1-3, 7 13, 34, 49-63); ECF 79 (First Boschee Decl. ¶¶ 6-14); ECF 76 (Cunningham Decl. ¶ 11); ECF 78 (Cienian Decl. ¶ 8); ECF 75 (Graff Decl. ¶ 19).

[2] Defendants have not provided the specific number of agents detailed to Minnesota, *see, e.g.*, ECF 35-2 (Olson Decl. ¶ 15), but they have repeatedly stated publicly that "[t]he largest DHS operation is happening right now in Minnesota." DHS (@DHSgov), X, (Jan. 6, 2026 at 3:21 PM CT), https://perma.cc/8YCQ-8824.

used rubber bullets, smoke bombs, and other weapons "on family members of detained farm workers" and "concerned public officials." *Id.* This misconduct was "not isolated," as dozens of journalists, legal observers and protesters documented. *Id.* The *New York Times* recently reported on a video of Defendant Border Patrol commander Gregory Bovino, in which he told a group of federal agents dressed in tactical gear: "Arrest as many people that touch you as you want to. Those are the general orders, all the way to the top."[3] He also told the agents that they were "going to look at shipping tractor-trailer loads" of less-lethal weapons.[4]

The same was true in Chicago. There, video evidence showed federal agents throwing "flashbang grenades, tear gas, and pepper balls" at a group of quiet protesters, yelling "fuck yea!" while they did so. *Chicago Headline Club v. Noem*, No. 25C12173, 2025 WL 3240782, at *4 (N.D. Ill. Nov. 20, 2025). In other incidents, federal agents pushed protesters to the ground and used less-lethal munitions without justification. *Id.* *4-5. Federal agents' explanations for these incidents were not credible. *Id.* One high-ranking federal official, Defendant Bovino, even "admitted in his deposition that he lied multiple times about the events . . . that prompted him to throw tear gas at protesters." *Id.* at *6.

More recently, since this lawsuit was filed, internal U.S. Department of Homeland Security ("DHS") memos have leaked authorizing Defendants' agents to act unlawfully, including asserting sweeping authority to forcibly enter people's homes without a judicial

---

[3] Jesus Jiménez, '*It's All About Us Now*': *Video Shows Bovino's Orders to Agents in L.A. Raids*, The New York Times (Jan. 29, 2026), https://www.nytimes.com/2026/01/29/us/bovino-orders-video.html.
[4] *Id.*

4

warrant[5] and to make warrantless arrests of people they believe are undocumented immigrants if they are "likely to escape" before an arrest warrant can be obtained.[6]

Despite overwhelming evidence that Defendants' aggressive and violent tactics are harming Minnesotans, Defendants claim that "Minnesota is safer because of this project." ECF 33 at 5. Defendants also claim that U.S. Immigration and Customs Enforcement ("ICE") officers are trained to only use necessary and reasonable force, including training on how to use weapons, "scenario-based simulations," and an "overview of de-escalation techniques." ECF 35-2 (Olson Decl. ¶¶ 31-35). Additionally, Defendants claim that any limitations on U.S. Customs and Border Protection ("CBP") agents' ability to use less lethal devices "may cause them to hesitate to use appropriate measures that they are trained to use and place the officers/agents and the public at greater risk of harm." ECF No. 35-1 (Harvick Decl. ¶ 22).

## II.  PROCEDURAL HISTORY.

On January 12, 2026, Plaintiffs filed a Complaint and moved for a temporary restraining order ("TRO"). The Complaint asserted ten causes of action, including several constitutional claims that Defendants are violating the Tenth Amendment, principles of Equal Sovereignty, and the First Amendment. ECF 1. The Complaint also brought five

---

[5] Rebecca Santana, *Immigration officers assert sweeping power to enter homes without a judge's warrant, memo says*, AP News (Jan. 21, 2026), https://apnews.com/article/ice-arrests-warrants-minneapolis-trump-00d0ab0338e82341fd91b160758aeb2d.

[6] Hamed Aleaziz and Charlie Savage, *ICE Expands Power of Agents to Arrest People Without Warrants*, The New York Times (Jan. 30, 2026), https://www.nytimes.com/2026/01/30/us/politics/ice-expands-power-agents-warrants.html.

Administrative Procedure Act claims, including alleging that Defendants are engaging in an unlawful policy and practice of violating state and local laws, using excessive force, and racially profiling Plaintiffs' residents. *Id.* Plaintiffs also alleged that Defendants' CBP agents are unlawfully engaging in immigration enforcement in the Twin Cities and alleged that Defendants' revocation of their 2021 Sensitive Locations policy is arbitrary and capricious. *Id.* Plaintiffs also brought an ultra vires claim. *Id.* Plaintiffs only raised Tenth Amendment and Equal Sovereignty claims in their TRO motion. ECF 8.

During a status conference on January 14, 2026, the Court decided to treat the TRO as an expedited Motion for a Preliminary Injunction. ECF 21. On January 16, 2026, Plaintiffs submitted a letter to the Court asking for reconsideration of the decision to convert the TRO to a preliminary injunction motion. ECF 31. In that letter, Plaintiffs explained that they needed immediate relief from Operation Metro Surge and that they planned to seek preliminary injunctive relief on additional claims in a preliminary injunction motion. *Id.*

During the January 14th status conference, Plaintiffs also advised the Court that they may seek expedited discovery regarding some of the matters at issue in the proceeding. ECF 21. The Court advised the parties to meet and confer to discuss expedited discovery following the submission of Defendants' opposition to the TRO motion. *Id.* Plaintiff State of Minnesota submitted its First Requests to Defendants on January 21, 2026, which included requests related to the scope, objectives of, and justifications for the surge. Bies Decl., Ex. 1. On January 22, 2026, Defendants responded with a letter objecting to any expedited discovery. Bies Decl., Ex. 2. On January 23, 2026, the parties met and conferred,

and Defendants reiterated their opposition to any expedited discovery on Plaintiffs' constitutional or APA claims. Bies Decl., Ex. 4. On January 28, 2026, Plaintiffs asked Defendants if they would consent to limited expedited discovery, extra-record discovery regarding the APA claims, and the immediate opening of ordinary discovery pursuant to Federal Rule of Civil Procedure 26(d)(1). Bies Decl., Ex. 3. Defendants responded that they opposed the proposed discovery. *Id.*

The Court held oral argument on Plaintiffs' motion on January 26, 2026, and denied Plaintiffs' preliminary injunction motion on January 31, 2026, finding that Plaintiffs had not demonstrated a "fair chance" of prevailing on their Tenth Amendment and Equal Sovereignty claims. ECF 135 at 15-27. Plaintiffs argued that the true purposes of Operation Metro Surge are unlawful, including to punish Plaintiffs for adopting laws and policies that prohibit their participation in federal immigration enforcement and to compel Plaintiffs to change their policies in order to assist federal immigration agents in their immigration enforcement agenda. *See, e.g.*, ECF 60 at 9-19. While the Court acknowledged that "[u]sing a surge of executive force against a 'sanctuary' jurisdiction" to coerce them to change their laws or carry out the Executive Branch's immigration priorities is "arguably no less coercive than withholding funds" on this basis,[7] the Court noted that statements in briefing and in the record suggest there were lawful motivations behind Operation Metro Surge.

---

[7] The Court further noted that several courts had found plaintiffs were likely to succeed on their Tenth Amendment challenges to executive orders directing the federal government to withhold funds from so-called sanctuary jurisdictions. *See, e.g.*, *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1195 (N.D. Cal. 2025); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 534 (N.D. Cal. 2017).

ECF 135 at 21. For example, the Court cited statements by Executive Branch officials about how Operation Metro Surge was necessary to respond to allegations of widespread fraud in Minnesota programs and to increase arrests of noncitizens with criminal convictions in the Twin Cities. *Id.* at 21-22. The Court stated that it was "reluctant" to grant a preliminary injunction "[b]ecause there is evidence supporting both sides' arguments as to motivation." *Id.* & n.18.

To address the factual questions raised by the Court's order, Defendants' declarations, and recently leaked DHS internal memos, Plaintiffs move for limited expedited discovery to bolster the record. The Court has raised factual questions about the motivations underlying Operation Metro Surge and Defendants' declarations and the leaked DHS memos raise factual questions about Defendants' policies, practices, training, or rules of engagement with Minnesota residents. To fill these gaps, Plaintiffs have attached proposed interrogatories and requests for production to this motion.[8] Bies Decl., Ex. 5. Plaintiffs' requested discovery will "better enable the court to judge the parties' interests and respective chances for success on the merits" at a preliminary injunction hearing on a subsequent motion for a preliminary injunction. *Oglala Sioux Tribe*, 298 F.R.D. at 457 (quoting *Edudata*, 599 F. Supp. at 1088).

## STANDARD OF REVIEW

A federal district court has broad discretion with regard to discovery motions. *See Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)) ("Rule 26 vests the trial judge with

---

[8] The proposed interrogatories and requests for production attached to this motion include the First Requests sent to Defendants on January 21, 2026.

broad discretion . . . to dictate the sequence of discovery."); *United States v. Washington*, 318 F.3d 845, 857 (8th Cir. 2003). Federal Rule of Civil Procedure 26(d) permits courts to allow for discovery before the required Rule 26(f) conference when authorized by court order. *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 889 (D. Minn. 2021) ("[E]xpedited discovery is 'appropriate in limited circumstances and for limited rationales.'" (quoting *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019)). "A common reason to grant expedited discovery is to ensure that the record is adequately developed in advance of a preliminary-injunction hearing." *Id.*; *Oglala Sioux Tribe*, 298 F.R.D. at 456 (collecting cases).

In the Eighth Circuit, courts typically apply the "good cause" standard to requests for expedited discovery. The party seeking discovery must show that "the need for expedited discovery . . . outweighs [the] prejudice to the responding party." *Let Them Play MN*, 517 F. Supp. 3d at 889 (quoting *Nilfisk, Inc. v. Liss*, 2017 WL 7370059, at *7 (D. Minn. June 15, 2017)) (omission and alteration in original).  Common factors that courts consider include: "(1) whether a preliminary injunction is pending; (2) the breadth of discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (quoting *ALARIS Grp., Inc. v. Disability Mgmt. Network, Inc.*, 2012 WL 13029504, at *2 (D. Minn. May 30, 2012)).

Additionally, since "APA review of agency action is normally confined to the agency's administrative record," *Newton Cnty. Wildlife Ass'n v. Rogers*, 141 F.3d 803, 807 (8th Cir. 1998), courts possess authority to compel production of administrative records,

9

augment existing administrative records, and set appropriate timelines for production, *see New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 548 (S.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded*, 588 U.S. 752 (2019). Plaintiffs have alleged that Defendants are engaged in a series of unlawful policies and practices. Defendants, however, have disputed the existence of such policies. For instance, Defendants have claimed that ICE agents are trained to only use necessary and reasonable force despite the many examples to the contrary cited in Plaintiffs' declarations. *Compare* ECF 35-2 (Olson Decl. ¶¶ 31-35) *with* ECF 86 (Middlecamp Decl., Exs. 4-8, 10, 14-48). In a case like this one where there is a dispute as to the "contours" or even the existence of a policy, the court also has the authority to grant expedited discovery to "fill[] in gaps" and to "determine what the agency actually did." *See AFL-CIO v. Dep't of Labor*, 349 F.R.D. 243, 249 (D.D.C. 2025) (internal quotations omitted); *cf. Oglala Sioux Tribe*, 298 F.R.D. at 456 (finding expedited discovery necessary where plaintiffs asserted it was "the only practical way" to show the challenged "policies, practices and customs exist"). Alternatively, if the Court declines to grant expedited extra-record discovery on the APA claims, Plaintiffs request that the Court compel expedited production of the administrative record. *See Shokri Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 161410, at *1 (N.D. Cal. Jan. 21, 2026) (granting expedited production of administrative record); *League v. Ross*, No. 20-CV-05799-LHK, 2020 WL 5441356, at *12-13 (N.D. Cal. Sept. 10, 2020) (granting immediate production of a partial administrative record for the preliminary injunction motion); *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 178 & n.4 (E.D.N.Y. 2019) (adopting

magistrate judge's recommendation on a "motion to compel expedited production of the administrative record" requiring production within two weeks).

## ARGUMENT

I. **PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY IS SUPPORTED BY GOOD CAUSE.**

   A. **Plaintiffs' Requested Discovery Will Support Any Forthcoming Motion For A Preliminary Injunction.**

Plaintiffs anticipate filing a preliminary injunction motion promptly, as previewed in their January 16th letter to the Court and at the January 26th preliminary injunction hearing. "Expedited discovery in this case will 'better enable the court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing." *Oglala Sioux Tribe*, 298 F.R.D. at 457 (quoting *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984)).

Plaintiffs seek to conduct limited discovery that will bear on whether Defendants' agents are engaged in unlawful policies and practices, including excessive force, racial profiling, stops and detentions without the requisite authority, warrantless entries into homes, and violating state laws and local ordinances, and whether the justifications for or objectives of Operation Metro Surge violate the Tenth Amendment, Equal Sovereignty principles, or the First Amendment. First, Plaintiffs seek documents related to the decision to launch Operation Metro Surge and deploy thousands of Defendants' agents to Minnesota as well as documents related to Defendants' policies, practices, training, or rules of

11

engagement with Minnesota residents.[9] Discovery may also include written reports or summaries of enforcement actions, incident reports, body camera footage, or conduct complaints received by the CBP and ICE Offices of Professional Responsibility. Second, Plaintiffs seek tailored written discovery regarding the justifications for and objectives of Operation Metro Surge, including information about Minnesota residents targeted and arrested during the surge and ICE's ability to carry out arrests and deportations of individuals with ICE detainers, among other things. Third, Plaintiffs will also seek to depose Defendants' declarants. For example, ICE Enforcement and Removal Operations Field Officer Sam Olson has operational visibility into Operation Metro Surge. ECF No. 35-2, Olson Decl. ¶¶ 14-18. Olson also has visibility and knowledge of training and guidance provided to ICE officers. *Id.* ¶¶ 31-36. Patrol Agent in Charge Kyle Harvick is the Deputy Incident Commander for Operation Metro Surge. ECF No. 35-1, Harvick Decl. ¶ 4. Harvick has operational oversight over the surge and visibility into CBP's use of force policy and tactical information gathering. *Id.* ¶¶ 4, 6-9, 22.

Plaintiffs believe that expedited discovery is necessary and are moving quickly to build the record and clarify matters outside of Plaintiffs' knowledge to provide additional support for its forthcoming motion for a preliminary injunction. *See, e.g.*, *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008) (granting expedited discovery to "clarify matters that were outside of [Plaintiff's] knowledge and may

---

[9] To the extent that there is concern related to safety of federal agents engaging in future operations, Plaintiffs would of course work with Defendants to craft an appropriate protective order.

ultimately lead to the prompt and efficient disposition of this litigation and the parties' underlying dispute"). Plaintiffs respectfully ask the Court to allow the Parties to develop this factual record in a timely manner commensurate with the urgency of the situation. *See, e.g., Newsom v. Trump*, No. 25-cv-04870-CRB, 2025 WL 2250569, at *6 (N.D. Cal. June 25, 2025) (granting expedited discovery "to supplement the record to assist the Court in resolving this important and developing matter"). Although Plaintiffs make their discovery request in advance of the typical discovery process, expedited discovery is necessary to limit the irreparable harm that Plaintiffs continue to suffer because of Operation Metro Surge. ECF 60 at 25-26; *see also AT & T Mobility LLC v. Miranda Holdings Corp.*, No. 08-20637-Civ., 2008 WL 2139519, at *2 (S.D. Fla. May 7, 2008) (granting expedited discovery to "get the case in a dispositive posture sooner" to "afford the injured party relief promptly, thus minimizing its injuries").

  **B. The Breadth Of The Proposed Discovery Requests Is Appropriate, And The Proposed Requests Do Not Pose An Excessive Burden On Defendants.**

Courts also look at the burden on Defendants to comply with the requests. *Let Them Play MN*, 517 F. Supp. 3d at 889. "Where the scope of discovery sweeps too broadly, that discovery can unduly burden defendants." *AFL-CIO*, 349 F.R.D. at 252.

As discussed *supra*, Plaintiffs' expedited requests seek "to obtain specific, limited, and identifiable pieces of information." *Let Them Play MN*, 517 F. Supp. 3d at 889. With respect to their constitutional claims, Plaintiffs seek information about the nature, purpose, justifications for, and necessity of Operation Metro Surge. With respect to their APA claims, Plaintiffs seek information relating to whether Defendants' agents are engaged in

13

unlawful policies and practices, including excessive force, racial profiling, warrantless entries into homes, and violating state laws and local ordinances as part of Operation Metro Surge.

It is well within Defendants' capabilities to produce documents and provide written discovery related to this discrete, two-month immigration enforcement effort in Minnesota. *See, e.g., Newsom*, 2025 WL 2250569, at *5 ("The Court has a difficult time imagining how limited written discovery on less than a month's worth of enforcement actions could be excessive.") Moreover, since Plaintiffs seek information related to Defendants' own declarations, *see, e.g.*, ECF 35-1 (Harvick Decl. ¶ 22); ECF 35-2 (Olson Decl. ¶¶ 31, 35), Defendants have presumably already gathered much of the information that Plaintiffs now seek, in order to draft the declarations in the first instance.

For these reasons, Plaintiffs' expedited discovery requests are appropriate and do not impose an excessive burden on Defendants.

## CONCLUSION

For the reasons stated above, Plaintiffs request that this Court grant Plaintiffs' motion for expedited discovery, grant Plaintiffs leave to serve the attached proposed written discovery requests upon Defendants, order Defendants to respond to Plaintiffs' written discovery requests within seven days of service, and grant Plaintiffs' request to depose Defendants' declarants within fourteen days of the Court's order.

*(signatures on next pages)*

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KEITH ELLISON<br>Attorney General<br>State of Minnesota |
| Dated: February 5, 2026 | *By: s/ Katherine Bies*<br>KATHERINE BIES (0401675)<br>Special Counsel |
|  | LIZ KRAMER (0325089)<br>Solicitor General<br>PETER J. FARRELL (0393071)<br>Deputy Solicitor General<br>BRIAN S. CARTER (#0390613)<br>LINDSEY MIDDLECAMP (0392589)<br>JOSEPH RICHIE (0400615)<br>Special Counsel<br>445 Minnesota Street, Suite 600<br>St. Paul, Minnesota 55101-2125<br>(651) 757-1010 (Voice)<br>(651) 282-5832 (Fax)<br>liz.kramer@ag.state.mn.us<br>peter.farrell@ag.state.mn.us<br>brian.carter@ag.state.mn.us<br>katherine.bies@ag.state.mn.us<br>joseph.richie@ag.state.mn.us<br>lindsey.middlecamp@ag.state.mn.us |
|  | *Attorneys for Plaintiff State of Minnesota* |
| Dated: February 5, 2026 | KRISTYN ANDERSON<br>City Attorney<br>*s/ Kristyn Anderson*<br>KRISTYN ANDERSON (0267752) |
|  | HEATHER P. ROBERTSON (0390470)<br>Assistant City Attorney<br>SARA J. LATHROP (0310232)<br>Assistant City Attorney<br>KIRSTEN H. PAGEL (0399114)<br>Assistant City Attorney |

15

                                                        ADAM E. SZYMANSKI (0397704)
Assistant City Attorney
MICHAEL A. BREY (0398620)
Assistant City Attorney
350 South Fifth Street
Minneapolis, Minnesota 55415
Tel: 612-673-3000
kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov
heather.robertson@minneapolismn.gov
kirsten.pagel@minneapolismn.gov
adam.szymanski@minnneapolismn.gov
michael.brey@minneapolismn.gov

*Attorneys for Plaintiff City of Minneapolis*

Dated: February 5, 2026        IRENE KAO
City Attorney
By: *s/ Kelsey McElveen*
KELSEY MCELVEEN (0396744)
Assistant City Attorney

IRENE KAO (0392282)
City Attorney
PORTIA HAMPTON-FLOWERS (0210869)
Deputy City Attorney
KELSEY MCELVEEN (0396744)
Assistant City Attorney
ALEXANDER HSU (0399275)
Assistant City Attorney
15 W. Kellogg Blvd., #400
Saint Paul, Minnesota 55102
Tel: 651-266-8710
Irene.kao@ci.stpaul.mn.us
Portia.flowers@ci.stpaul.mn.us
Kelsey.mcelveen@ci.stpaul.mn.us
Alexander.hsu@ci.stpaul.mn.us

*Attorneys for Plaintiff City of Saint Paul*

|#6288398-v1