UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

*State of Minnesota, et al.*
*vs.*
*Kristi Noem, et al.*
U.S. Dist. Ct. No. 26-cv-190

DECLARATION OF KATHERINE BIES

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| STATE OF MINNESOTA, *by and through its Attorney General Keith Ellison*, CITY OF MINNEAPOLIS, and CITY OF ST. PAUL,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; JOHN CONDON, *in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARCOS CHARLES, *in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;* U.S. Immigration and Customs Enforcement; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection;* U.S. Customs and Border Protection; GREGORY BOVINO, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; DAVID EASTERWOOD, *in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement*,<br><br>Defendants. | Civ. No. 26-cv-00190-KMM-DJF<br><br>**PLAINTIFF STATE OF MINNESOTA'S [PROPOSED] DISCOVERY REQUESTS** |

1

TO: DEFENDANTS, by and through attorney Andrew Warden, DOJ-Civ, 1100 L St., NW, Ste 1140, Washington, DC 20005.

Pursuant to Federal Rules of Civil Procedure 33 and 34, Plaintiff State of Minnesota ("Plaintiff"), hereby requests that Defendants serve answers to the following Interrogatories and to provide documents responsive to the following Document Requests upon the undersigned attorney.

## DEFINITIONS AND INSTRUCTIONS

When the following terms are used, Plaintiff intends the meanings described below to be associated with such terms.

1. The terms "Defendants," "You," and "Your" shall refer to Kristi Noem, John Condon, Todd Lyons, Marcos Charles, Rodney Scottt, Gregory Bovino, and David Easterwood, all in their individual capacities, and the Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and U.S. Border Patrol ("Border Patrol"), including all of their attorneys, officers, employees, representatives, and other agents.

2. "Operation Metro Surge" means any and all immigration enforcement activity and fraud investigations by DHS Personnel in Minnesota, Minneapolis, and St. Paul from November 1, 2025 to the present.

3. "DHS Personnel" means any personnel under the statutory authority of DHS or any of its components or subcomponents, including personnel from ICE, CBP, Border Patrol, or the Federal Protective Service, as well as any personnel from any agency who

have been designated as DHS personnel or designated to carry out DHS functions or has coordinated with or supported DHS functions from November 1, 2025 to the present.

4.   "ICE detainer" is a request from ICE that asks a federal, state or local law enforcement agency, including jails, prisons or other confinement facilities, to notify the requesting agency as early as possible before they release a removable alien and hold the alien for up to 48 hours beyond the time they would ordinarily release them so DHS has time to assume custody.

5.   Defined terms have the meaning given above whether capitalized or not.

6.   "Communication" means the transmittal in any form—electronic, written, typed, spoken, record, or otherwise—of information, as well as any note, memorandum, or other record or recording thereof.

7.   "Describe" means to provide a complete description and explanation of the facts, circumstances, analysis, and other information relating to the subject matter of a specific interrogatory.

8.   The terms "document" and "thing" have the meanings set forth in Rule 34 Federal Rules of Civil Procedure and shall include all documents or things which now are or ever were in the possession, custody, or control of Plaintiff.  Furthermore, the term "document" means any written or graphic material whether the original, a copy, or a reproduction, including all non-identical copies and copies in electronic form.  The term "document" includes, without limitation, correspondence, memoranda, notes, diaries, journals, calendars, e-mail messages, text messages, messages and chats on apps such as Signal and WhatsApp, messages and chats on any and all video meeting platforms,

3

including, but not limited to Teams, Zoom, and Webex, contracts, invoices, receipts, voicemail messages, drawings, photographs, telephone records (including cellular phones), and video recordings. A "Post-It" brand or other self-stick removable note is to be considered a document and should not be removed from any other document to which it might be attached, unless both must be copied separately to give the documents their full meaning.

9. The term "identify" means as follows:

   a. When applied to a natural person, requires that the following information be provided as to such person:

      i. His or her full name;
      ii. His or her present or last known occupation, business affiliation and position;
      iii. His or her employment and position at the time in question; and
      iv. His or her present or last known address and telephone number.

   b. When applied to an entity other than a natural person, means to state:

      i. Its full name;
      ii. The type of entity it is or was (e.g., corporation, partnership, political subdivision, etc.); and
      iii. The address of its principal place of business.

   c. When applied to a document, regardless of whether a claim of privilege is asserted or whether the document is not in your possession or control, means to state:

      i. sufficient information about the general character of the document (e.g., letter, memorandum, report, etc.) to enable it to be identified for purposes of a subpoena duces tecum;

      ii. the date it bears or, if undated, the date on which it was written or otherwise created;

      iii. the identity of the individual(s) who wrote or otherwise created the document;

4

    iv. the identity of the individuals or entities to whom it was directed;

    v. a summary of the subject matter of the document; and

    vi. the name, address, and representative capacity, if any, of each person in whose custody the document is not being kept or to whose control it is subject.

  d. When applied to an oral communication, means to state:

    i. the identity of all individuals participating or present;
    ii. the date and time of the communication;
    iii. where the communication took place;
    iv. the type of communication (e.g. in person, telephone, etc.); and
    v. the substance of the communication.

10. "Include[s]" or "including" means "include[s] but is not limited to" or "including but not limited to," unless otherwise specified.

11. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory or document request any documents or information that may otherwise be construed to be outside its scope. The term "each" includes "every," and vice versa. The terms "a," "an," and "any" include "all," and vice versa.

12. All references to the plural include the singular, and all references to the singular include the plural. All references to the masculine gender include the feminine and neutral genders and vice versa.

13. Plaintiff requests that Defendants bates-label all documents produced in response to these discovery request.

5

14. Each paragraph of the Requests shall be construed independently and not by reference to any other paragraph herein for purposes of limitation.

## PRIVILEGED OR PROPRIETARY MATTER

If any interrogatory, request for admission, request for production of documents and things or request for production of statements herein is deemed to call for privileged information or materials and such privilege is asserted, fully identify in writing the information or document so withheld and provide the reasons for withholding the information or document and a statement of the basis for the claim of privilege or other ground of nondisclosure. If a request is otherwise not answered in full after the exercise of Defendants' due diligence to secure complete information, state the specific grounds for not answering in full, and answer the request to the extent to which no privilege is claimed.

## LOST OR DESTROYED DOCUMENTS

If any document or thing requested herein was at one time in existence, but has been lost, discarded, or destroyed, identify such documents as completely as possible, providing as much information about the document as possible, including the identity, title, or type of document or thing, its date, a description of its contents, the reason, circumstances, or manner why the document was lost, discarded, or destroyed, and/or why it is not available to be produced, and the identity of all persons having knowledge of the contents thereof.

## DOCUMENTS NOT IN YOUR CUSTODY OR CONTROL

If any document or thing requested herein was never in your possession, custody, or subject to your control, or was at one time in your possession, custody, or subject to your control but no longer is, identify such documents or things as completely as possible,

6

including the identity, title, or type of document or thing; its date; a description of its contents; the reason, circumstances, or manner when or why the document or thing left your possession, custody, or control; and the identity of all persons having knowledge of the contents thereof.

Objection will be made to any attempt to introduce evidence which is directly sought by this request and to which no disclosure has been made.

## CONTINUING REQUESTS

These Requests are continuing in nature and subject to the duty to supplement under Rule 26(e)(1) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1.**    State the number of DHS personnel deployed to Minnesota as part of Operation Metro Surge, including the number of DHS personnel deployed each day by each DHS component or subcomponent from December 1, 2025 to present. In your response, please specify the number of DHS personnel within Operation Metro Surge who have been hired and trained since January 2025.

**INTERROGATORY NO. 2.**    Identify all documents that define the scope of, provide the justifications for, or describe the objectives of Operation Metro Surge, including any memoranda, deployment communications, command staff newsletters, or training materials.

**INTERROGATORY NO. 3.**    Describe with specificity all facts, conditions, laws, and/or policies in Minnesota that led to the launch of Operation Metro Surge and the

deployment of thousands of DHS agents to the State, and identify all documents containing information relating to those facts and conditions.

**INTERROGATORY NO. 4.** For each identified law or policy in Interrogatory No. 3, describe when DHS, the White House, and/or any other federal agency became aware of the law or policy and any information or data about the impact of the law or policy on federal immigration enforcement efforts and identify all documents containing information or data relating to these laws or policies and their impacts.

**INTERROGATORY NO. 5.** ICE provides government data in response to a FOIA request to the Deportation Data Project, including data on arrests, detainers, and detentions.[1] Provide an updated dataset that covers ICE enforcement actions in Minnesota from December 1, 2025 through January 31, 2026.

**INTERROGATORY NO. 6.** Identify the name and date of birth of all U.S. citizens arrested, detained, held, screened or questioned by DHS personnel in Minnesota since December 1, 2025, and describe with specificity all facts and circumstances related to the arrest, detention, or questioning, including the exact date, reason for arrest, detention or stop, and outcome.

**INTERROGATORY NO. 7.** State the number of arrests, detentions, or custodial stops of persons made pursuant to DHS Forms I-200, I-205, or I-213, or otherwise made under color of authority granted by 8 U.S.C. 1357(a)(2), 8 U.S.C. §1226, or 8 C.F.R. §236.1(b)(1), by DHS in Minnesota from January 1, 2025 to the present, broken out by

---

[1] https://deportationdata.org/data/ice.html

month and statutory basis category. In your response, specify the number of arrested or detained persons who were taken into DHS custody upon release or transfer from another custodial setting, and the number of arrested or detained persons who had been subject to an Order of Supervision previously issued by DHS.

**INTERROGATORY NO. 8.** Identify and describe all technological surveillance capabilities that have been or are being used by DHS or any of its agents in Minnesota since December 1, 2025. Technological surveillance capabilities include, but are not limited to, facial capture and facial recognition technologies, surveillance of social media or other internet communications, use of unmanned aerial vehicles or other aircraft for purposes of imaging, and other surveillance using artificial intelligence.

**INTERROGATORY NO. 9.** Identify all DHS personnel who have requested assistance from state and local law enforcement in conjunction with Operation Metro Surge, identify all such communications, and identify all documents containing information relating to such communications.

**INTERROGATORY NO. 10.** On January 25, 2026, it was reported that Defendant Noem told *Fox News* that Defendants' agents that shot and killed Alex Pretti "used their training" and "followed their protocols."[2] Identify all training and protocols referenced in this statement and all documents containing this training and these protocols.

---

[2] Cheyanne M. Daniels and Jacob Wendler, *A battle over the truth erupts after deadly Minneapolis shooting*, Politico (Jan. 25, 2026), https://www.politico.com/news/2026/01/25/democrats-trump-administration-dueling-accounts-minneapolis-shooting-00745811?utm_campaign=mb&utm_medium=newsletter&utm_source=morning_brew

## DOCUMENT REQUESTS

**REQUEST NO. 1.** Provide copies of any and all documents identified, described, or referred to in Defendants' answers to any and all of Plaintiff State of Minnesota's Interrogatories to Defendants, used in preparing Defendants' answers to any and all of Plaintiff State of Minnesota's Interrogatories to Defendants, or supporting Defendants' answers to Plaintiff State of Minnesota's Interrogatories to Defendants.

**REQUEST NO. 2.** Provide copies of any and all documents referred to or displayed during any press conference or public statements regarding Operation Metro Surge given by Defendants or President Trump, including but not limited to the documents referred to and displayed by Defendant Bovino during his January 20, 2026 press conference, and the documents referred to and displayed by President Trump on January 20, 2026 during his remarks to the press regarding the accomplishments of Operation Metro Surge.

**REQUEST NO. 3.** All documents relating to Operation Metro Surge, including any operational plans, briefing decks, after-action reports, situational reports, presentations, memoranda, summaries, immigration warrants such as Forms I-200, I-205, or I-213, or policies and procedures applying to the Operation.

**REQUEST NO. 4.** All documents and communications related to requests, approvals, and funding allocations for Operation Metro Surge DHS personnel, including the deployment of special operations teams.

**REQUEST NO. 5.** All organizational charts sufficient to show the chain of command for Operation Metro Surge and the DHS personnel sent to Minnesota since

December 1, 2025, including assigned components of the individuals involved in the operation. Such chart should reflect any changes in command or supervisory personnel since the beginning of the operation.

**REQUEST NO. 6.** All documents and communications, including between or among any of DHS, the White House, and/or any other federal agency, relating to Operation Metro Surge or describing Minnesota as a focus area for DHS immigration enforcement activities.

**REQUEST NO. 7.** All documents and communications, including but not limited to formal and informal memos, e-mails, policies, and academy training materials, which relate to or tend to reflect policies and procedures applying to DHS personnel participating in or supporting Operation Metro Surge, including related to entry into homes and businesses without a judicial warrant, interactions with individuals in vehicles, pedestrian stops, checkpoints/blockades, questioning of individuals not in custody, collecting biometric information, activity in and around sensitive locations like schools, health care facilities, places of worship, or courthouses, and arrests related to any DHS personnel activity that are collateral.

**REQUEST NO. 8.** All documents and communications, including but not limited to formal and informal memos, e-mails, policies, and academy training materials, which relate to or tend to reflect training received by DHS personnel participating in or supporting Operation Metro Surge, including but not limited to training received on use of force, the First, Second, Fourth, Fifth, and/or Sixth Amendments, searches and seizures, destruction of vehicle windows, boxing-in techniques for vehicular stops, crowd control,

de-escalation, operations within urban environments, and interactions with the general public and protests.

**REQUEST NO. 9.** All documents and communications relating to uses of force, protest activities, or other significant events involving DHS personnel in Minnesota from December 1, 2025 to present, including but not limited to:

a. any incident reports submitted to the Enforcement Action Statistical Analysis and Reporting System (E-STAR);

b. any after-action reports;

c. any complaints received by, or reports or records of investigations generated by, the CBP Office of Professional Responsibility;

d. any complaints received by, or reports or records of investigations generated by, the ICE Office of Professional Responsibility;

e. records of any proceedings before a CBP Use of Force Review Board or an ICE Use of Force Review Board;

f. any after-action reports from the CBP Office of Field Operations;

g. entries in the ICE Significant Event Notification system (SEN), including SIR and SPOT reports;

h. ERO LEAD reports entered into the SEN system relating to protest activity or any individuals that DHS has characterized as "violent groups," "rioters," or "domestic terrorists;"

i. any reports made to the DHS, ICE or CBP Joint Intake Center or ICE Integrity Coordination Center;

  j. all recordings, including audio and/or video recordings, regardless of the source.

**REQUEST NO. 10.** Any documents or communications regarding deviations from standard use of force policies specific to DHS personnel participating in or supporting Operation Metro Surge.

**REQUEST NO. 11.** Any documents or communications regarding policies, procedures, guidance, or trainings instructing DHS personnel participating in or supporting Operation Metro Surge to enter homes without a judicial warrant or consent.

**REQUEST NO. 12.** All recordings, including body-worn camera footage, by DHS personnel in Minnesota since December 1, 2025.

**REQUEST NO. 13.** All documents and communications related to coordination with the U.S. Department of Justice, including the U.S. Attorney's Office, regarding policies, procedures, or guidance for prosecuting criminal charges against protestors, demonstrators, observers, or others for interfering with or obstructing enforcement activity.

**REQUEST NO. 14.** All documents and communications related to guidance and training related to racial profiling, including stops based on accent, language, or appearance, and how to handle claims of citizenship.

**REQUEST NO. 15.** All documents and communications related to policies on uniforms and insignia, masks, badge display, vehicle marks, and license plate usage.

**REQUEST NO. 16.** All records of license plate changes, temporary plates, or mismatched plates during Operation Metro Surge.

**REQUEST NO. 17.** Any documents or communications related to initiating I-9 audits during Operation Metro Surge or in Minnesota after January 1, 2026.

**REQUEST NO. 18.** Any documents or communications related to press guidance, talking points, communications guidance, briefing books, and social media coordination for Operation Metro Surge.

**REQUEST NO. 19.** All documents or reports generated by the CBP Office of Intelligence or HIS Office of Intelligence relating to Operation Metro Surge.

**REQUEST NO. 20.** All documents, communications, and recordings produced to the Court in *Tincher et al. v. Noem et al.*, currently pending in the District of Minnesota, 25-cv-4669.

Dated: February 4, 2026

KEITH ELLISON
Attorney General
State of Minnesota

*s/ Katherine Bies*
LIZ KRAMER (#0325089)
Solicitor General
PETER J. FARRELL (#0393071)
Deputy Solicitor General
KATHERINE BIES (#0401675)
BRIAN S. CARTER (#0390613)
LINDSEY MIDDLECAMP (#0392589)
JOSEPH RICHIE (#0400615)
Special Counsel

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1010 (Voice)
(651) 282-5832 (Fax)

14

liz.kramer@ag.state.mn.us
peter.farrell@ag.state.mn.us
brian.carter@ag.state.mn.us
katherine.bies@ag.state.mn.us
joseph.richie@ag.state.mn.us
lindsey.middlecamp@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*