UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

STATE OF MINNESOTA, *by and through its Attorney General Keith Ellison*, CITY OF MINNEAPOLIS, and CITY OF ST. PAUL,

      Plaintiffs,

v.

KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; JOHN CONDON, *in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARCOS CHARLES, *in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;* U.S. Immigration and Customs Enforcement; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection;* U.S. Customs and Border Protection; GREGORY BOVINO, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; DAVID EASTERWOOD, *in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement*, *in their official capacities,*

      Defendants.

Case No. 0:26-cv-00190-KMM-DJF

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

_____

**INTRODUCTION**

Undaunted by the Court's recent conclusion that their Tenth Amendment and Equal Sovereignty claims are unlikely to succeed on the merits, Plaintiffs desire a second bite at the apple. To support this futile effort, Plaintiffs ask the Court to charter a fishing expedition and grant them leave to conduct expansive discovery on an expedited basis. Good cause is absent from Plaintiffs' request. Plaintiffs' claims suffer from insurmountable threshold issues, Plaintiffs fail to explain the relevance of their requested discovery, and Plaintiffs' overly broad requests are unduly burdensome. The unjustified nature of Plaintiffs' request becomes even more apparent in the light of today's announcement that Operation Metro Surge will conclude because of the significant progress that has been made in arresting public safety threats as well as the increased cooperation from state and local authorities. This significant development undercuts any need for this case to proceed on an expedited schedule at all, let alone jump ahead to expedited discovery in service of a second motion for preliminary injunction that is destined to fail. The Court should deny Plaintiffs' motion.

**BACKGROUND**

On January 12, Plaintiffs filed their complaint, which includes claims based in the First and Tenth Amendments and the doctrine of Equal Sovereignty, along with five APA claims. ECF No. 1. The same day, Plaintiffs, claiming "immediate" and "irreparable" harm, moved for a temporary restraining order, based only on their Tenth Amendment and Equal Sovereignty claims. ECF Nos. 5, 8. After the Court converted Plaintiffs' motion into a motion for a preliminary injunction and held oral argument, the Court denied

1

Plaintiffs' motion, concluding that Plaintiffs lack a sufficient likelihood of success on the merits.  ECF No. 135.

Plaintiffs now seek expedited discovery, claiming an intent to file a new motion for a preliminary injunction.  ECF Nos. 138, 140.  Although Plaintiffs do not indicate the claims on which they plan to move, they ask the Court to order sweeping discovery into all sorts of issues, most of which lack *any* apparent relevance to the issues in this case.  ECF No. 141-6.  The requests collectively seek every document, video, and internal communication relating to the federal government's immigration enforcement operations in Minnesota, in addition to information about a host of other overbroad categories relating to training practices, law enforcement techniques, and personnel policies.

## LEGAL STANDARD

Generally, a "party may not seek discovery from any source before the parties have conferred" as required by Federal Rule of Civil Procedure 26(f).  Fed. R. Civ. P. 26(d)(1).  Only "in limited circumstances and for limited rationales" can a party seek discovery despite this rule.  *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019).  "The party seeking discovery must typically show 'good cause'—*i.e.*, that the need for expedited discovery outweighs the prejudice to the responding party." *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 889 (D. Minn. 2021) (cleaned up); *see ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. CV 12-446, 2012 WL 13029504, at *2 (D. Minn. May 30, 2012) (listing additional factors, such as "the breadth of the discovery requests" and "the burden on the defendants to comply with the requests").

# ARGUMENT

The Court should deny Plaintiffs' motion. Given the threshold legal issues, no discovery–expedited or otherwise–is warranted until the Court adjudicates an eventual motion to dismiss. Also, Plaintiffs fail to explain the relevance of their requested discovery to any forthcoming preliminary injunction. And, to top it off, the requested discovery is incredibly overbroad and unduly burdensome.

## I. Any Discovery Should Come After a Ruling on an Eventual Motion to Dismiss.

Defendants anticipate moving to dismiss Plaintiffs' complaint. Because of the threshold legal issues the motion will raise, Plaintiffs' case will be disposed of in its entirety. Accordingly, no discovery is currently warranted, especially not on an expedited timeline.

When a motion to dismiss is on solid legal footing and will "dispose of all or substantially all of the case," courts in this District have put discovery on pause. *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. MDL172795MJDKMM, 2018 WL 2122869, at *1 (D. Minn. May 8, 2018); *see, e.g.*, *Maxim Def. Indus., LLC v. Kunsky*, No. 19-CV-1225 (PAM/LIB), 2019 WL 5893141, at *6 (D. Minn. Sept. 25, 2019). Although a motion to dismiss is not yet pending, a "peek at the merits," *Kunsky*, 2019 WL 5893141, at *6 (quotation omitted)), shows that an eventual motion will dispose of the entirety of the litigation. The Court "has already determined that Plaintiff[s] [are] unlikely to be

successful" on their Tenth Amendment and Equal Sovereignty Claims. *Id.*; *see* ECF No. 135 at 26-27.[1] And none of Plaintiffs' other claims fare any better.

### A. All of Plaintiffs' APA Claims Fail at the Threshold.

Plaintiffs' APA claims fail due to a combination of a lack of standing, a lack of final agency action, and a lack of reviewability.

Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To have standing, a plaintiff "must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). Throughout their complaint, Plaintiffs come nowhere close to meeting this burden. For example, with respect to two claims—the ones involving the Border Patrol agents and revocation of the 2021 Sensitive Locations Policy—Plaintiffs provide only conclusory allegations of harm. Compl. ¶¶ 256, 267. Such allegations are insufficient. *See Ark. Right to Life State Pol. Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998) ("Vague and conclusory allegations of harm are insufficient to create standing.").

For other claims, Plaintiffs allege a little more detail as their theory of standing, but their allegations remain insufficient. For example, with respect to alleged warrantless arrest policy, Plaintiffs allege harm based on harm to their residents. Compl. ¶ 249. But

---

[1] The Court's reasoning also demonstrates the legal insufficiency of Plaintiffs' ultra vires claim in Count XI, which relies on the same Tenth Amendment theories. Compl. ¶¶ 284-88.

4

"a State does not have standing as *parens patriae* to bring an action against the Federal Government." *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (alteration adopted) (quotation omitted). Otherwise, Plaintiffs allege harm because "Defendants' actions undermine public trust in state and local law enforcement." Compl. ¶ 249. But it is doubtful that such an injury is sufficiently concrete. *See TransUnion LLC*, 594 U.S. at 424 (explaining "the Article III requirement that the plaintiff's injury in fact be concrete—that is, real, and not abstract" (quotation omitted)). Plaintiffs run into similar problems with respect to their excessive force claim, which relies on the same "public trust" theory as well as an allegation that Defendants' alleged policy has required a diversion of resources. Compl. ¶ 241. This latter theory likely fails under *United States v. Texas*, 599 U.S. 670 (2023), as well as recent decisions rejecting standing based on the expenditure of funds in opposition to federal action, *see, e.g.*, *Food and Drug Administration v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024); *see also Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022) (rejecting the position that "all peripheral costs imposed on States by actions of the President create a cognizable Article III injury").

In the light of these clear jurisdictional flaws, this Court should not allow Plaintiffs to take any discovery before Defendants have even responded to the Complaint. The Court must first address whether it has jurisdiction before this matter may proceed at all. *See Tincher v. Noem*, No. 25-cv-4669 (KMM/DTS) (ECF No. 135) (denying motion for expedited discovery related to class certification and limiting any potential discovery solely to Plaintiffs' Article III standing after Defendants' file their motion to dismiss).

In addition to standing issues, Plaintiffs' APA claims suffer from a lack of final agency action. *See Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Eng'rs*, 888 F.3d 906, 914-15 (8th Cir. 2018) ("Under the APA, a 'final agency action' is subject to judicial review."); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) ("An agency action must be final in order to be judicially reviewable."). For agency action to be final, it must mark the "consummation of the agency's decisionmaking process," and it must be a decision from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). In several of their claims, Plaintiffs fail to plausibly allege that this test has been met.

For example, based only on "information and belief" and "Defendants' assertion that they and their agents are absolutely immune from legal consequences," Plaintiffs allege that Defendants have enacted a policy to "utilize tactics and conduct that violate DHS policy and state and federal laws." Compl. ¶ 217. And the allegations only get more conclusory from there. With respect to their excessive force claim, Plaintiffs do not plead any facts supporting the proposition that final agency action exists. *Id.* ¶ 232. And the same is true regarding the alleged warrantless arrest policy. *Id.* ¶ 245. For good reason, Plaintiffs are concerned about a lack of final agency action. Jan. 26 Hrg. Tr. 46:6-7 (recognizing "the biggest hurdle" as "establishing a final agency action"). Such barebones allegations are insufficient to state APA claims.

"[A]gency actions" reviewable under the APA must be "discrete" in nature. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) ("SUWA"). This requirement exists "to protect agencies from undue judicial interference with their lawful discretion, and to

6

avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Cobell v. Norton*, 392 F.3d 461, 472 (D.C. Cir. 2004) (quoting *SUWA*, 542 U.S. at 66). Plaintiffs have failed to identify an actual, discrete decision by the agency, let alone a cognizable final agency action, that may be challenged under the APA. Simply characterizing various disparate law enforcement encounters that occurred during Operation Metro Surge over the past several months as a "policy and practice" cannot evade the APA's requirements. *See, e.g.*, *Mary Ferrell Found., Inc. v. Biden*, 2023 WL 4551066, at *6 (N.D. Cal. July 14, 2023) ("averring a pattern and practice is generally insufficient to state a claim under the APA").

There exists yet another insurmountable hurdle. When "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), judicial review is unavailable. Although this provision is construed "quite narrowly," *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. 9, 23 (2018), one of the few places it does apply is in the area of enforcement discretion, *see DHS v. Regents of the U. of Cal.*, 591 U.S. 1, 17-18 (2020). And the Supreme Court has strongly suggested that the recission of a non-enforcement policy comes within § 701(a)(2)'s exception. *See id.* at 19 ("Because the DACA program is more than a non-enforcement policy, its rescission is subject to review under the APA."). On this reasoning, at the least, the revocation of 2021 Sensitive Locations Policy–which involved the balancing of factors "peculiarly within [DHS's] expertise," *id.* at 18—is not judicially reviewable. *See* Compl. ¶ 262.

In sum, given the above peek at the merits, all of Plaintiffs' APA claims will eventually be dismissed. In these circumstances, where Plaintiffs contemplate

7

burdensome, intrusive discovery on an unreasonable expedited schedule, the Court should not allow discovery to proceed before resolving Defendants' motion to dismiss. In *In re United States*, 583 U.S. 29 (2017), the Supreme Court was confronted with a lower court order requiring the Government to disclose numerous documents in an APA case, entered prior to the lower court's resolution of the Government's threshold defenses. The Supreme Court held that the district court should have "first resolved the Government's threshold arguments" before ordering disclosure, because "those [threshold] arguments, if accepted, likely would eliminate the need for" such disclosure. *In re United States*, 583 U.S. at 31-32. That holding is directly applicable here: this Court should not allow discovery to proceed before resolving Defendants' threshold arguments, which, if accepted, would eliminate the need for discovery. *See id.*

Moreover, there exists no basis for any discovery regarding Plaintiffs' APA claims given the "well-established [rule] that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). The Eighth Circuit has explained that discovery beyond the administrative record in an APA case may be appropriate only if, after the production of the record, a plaintiff could demonstrate "extraordinary circumstances" based on a "strong showing" of "bad faith or improper behavior." *Id.* (quotation omitted). Plaintiffs have not even attempted to make that showing here, nor could they, since production an administrative record would only be appropriate after the Court resolves Defendants' forthcoming motion to dismiss.

## B. Plaintiffs Fail to State First Amendment Claims.

Plaintiffs also raise two First Amendment claims. Neither one is meritorious. Plaintiffs first allege that Defendants have unconstitutionally retaliated against them because of political differences. Compl. ¶ 273. Plaintiffs next allege that Defendants are engaging in viewpoint discrimination because they are targeting Minnesota, Minneapolis, and St. Paul due to the political viewpoints of their leaders. *Id.* ¶ 280. As a threshold matter, the First Amendment provides no protection to state or local governments in their relationship with the federal government. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 206 (2014) ("The whole point of the First Amendment is to afford individuals protection against [laws that restrict free speech]. The First Amendment does not protect the government . . . .' " (citations omitted)); *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 139 (1973) (Stewart, J., concurring.) ("The First Amendment protects the press from governmental interference; it confers no analogous protection on the Government.").

Moreover, much like their Tenth Amendment claims, Plaintiffs point to no authority that suggests a state or locality can use the Constitution as both a sword and shield. In other words, Plaintiffs fail to substantiate the proposition that a state or locality can claim a right under the Tenth Amendment to decline to assist the federal government and then claim a right under the First Amendment to limit the resulting response. *Cf. Houston Community College System v. Wilson*, 595 U.S. 468, 477 (2022) ("[W]hen it comes to disagreements of this sort, history suggests a different understanding of the First Amendment."). Also, with respect to the retaliation claim specifically, Plaintiffs fail to

9

plausibly allege that "the government took an adverse action in response to [their] speech that would not have been taken absent the retaliatory motive." *Id.* (quotation omitted). The facially legitimate law enforcement justification for Operation Metro Surge squarely refutes such an argument. *Cf.* ECF No. 135 at 20-22.

* * *

For these reasons, Defendants' eventual motion to dismiss will "dispose of all or substantially all of the case." *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2018 WL 2122869, at *1. Discovery, especially on an expedited basis, is therefore unwarranted. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014) (recognizing the inequity of forcing defendants to produce expedited discovery where "plaintiffs did not have a viable cause of action").

## II.    Plaintiffs Fail to Demonstrate the Relevance of Their Requests.

In the context of a motion for preliminary injunction, the justification for expedited discovery is that development of the record "will better enable the court to judge the parties' interests and respective chances for success on the merits." *Edudata Corp. v. Sci. Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984). Although Plaintiffs claim that this justification applies here, their requests tell a different story.

Because Plaintiffs have not yet filed another motion for preliminary injunction, Defendants (and the Court) are left to guess as to the potential relevance of each demand. For example, it is not obvious how Defendants "[i]dentify[ing] the name and date of birth of all U.S. citizens arrested, detained, held, screened or questioned by DHS personnel in Minnesota since December 1, 2025 and describ[ing] with specificity all facts and

circumstances related to the arrest, detention, or questioning, including the exact date, reason for arrest, detention or stop, and outcome" will better enable the Court to adjudicate any forthcoming motion. ECF 141-6 at 9. The same is true about information concerning "all technological surveillance capabilities that have been or are being used by DHS or any of its agents in Minnesota since December 1, 2025"; "documents or communications related to initiating I-9 audits during Operation Metro Surge or in Minnesota after January 1, 2026"; and "documents or communications related to press guidance, talking points, communications guidance, briefing books, and social media coordination for Operation Metro Surge." *Id.* at 10, 15. Even if there is possible relevance, it is Plaintiffs' obligation to show it. But, in their memorandum, Plaintiffs offer only a boilerplate explanation about how the requested discovery will support their claims. ECF 141-6 at 11-12. Plaintiffs therefore have failed to carry their burden of justifying the extraordinary level of discovery they seek.

Also complicating the relevance inquiry is the ill-defined nature of Plaintiffs' primary claims. At oral argument on the first motion for a preliminary injunction, Plaintiffs struggled to explain how their Tenth Amendment theory operated. *See, e.g.*, Jan 26, 2026 Hr. Trg. at 30:19-31:23 (arguing only that the Court "need not worry" about drawing a line); *see* ECF No. 135 at 23. But to justify expedited discovery, Plaintiffs need to show how more facts will better enable the Court to adjudicate their claims. *See Let Them Play MN*, 517 F. Supp. 3d at 889. And given all of the evidence Plaintiffs put in the record before the first hearing, Plaintiffs cannot make such a showing here. This is especially the case because the Court concluded Plaintiffs lacked even a "fair chance" of success on the

11

merits. ECF NO. 135 at 14 n.12. Given the Court's ruling, Plaintiffs have the burden of showing how the expedited discovery will make up the difference. They fail to do so. *Cf. U.S. Airline Pilots Ass'n v. Pension Benefit Guar. Corp.*, No. 09-cv-1675, 2011 WL 13273132, at *2 n.1, *7 (D.D.C. Mar. 14, 2011) (denying second motion for preliminary injunction after observing "law-of-the-case doctrine . . . places a heavy thumb on the scales in favor of denying the [plaintiff's] motion").

For these reasons, Plaintiffs fail to justify the immediate need for their discovery requests.

### III. Plaintiffs' Discovery Requests are Unduly Burdensome.

Even assuming limited relevance, Plaintiffs' discovery requests would greatly prejudice Defendants. "The purpose of expedited discovery is to allow a party to obtain specific, limited, and identifiable pieces of information." *Let Them Play MN*, 517 F. Supp. 3d at 889. Despite claiming that their requests are in line with this purpose, ECF No. 140 at 13, Plaintiffs' "discovery requests are extremely broad," *Let Them Play MN*, 517 F. Supp. 3d at 889, and their motion should be denied.

Plaintiffs essentially seek every document in the federal government's possession related to immigration enforcement in Minnesota over the past several months. *See* ECF No. 141-6. For example, Plaintiffs ask Defendants to produce "[a]ll documents and communications, including between or among any of DHS, the White House, and/or any other federal agency, relating to Operation Metro Surge or describing Minnesota as a focus area for DHS immigration enforcement activities." ECF No. 141-6 at 12. Plaintiffs also ask Defendants to produce "[a]ll documents and communications relating to uses of force,

12

protest activities, or other significant events involving DHS personnel in Minnesota from December 1, 2025 to present." *Id.* at 13. And Plaintiffs demand "[a]ll documents and communications related to coordination with the U.S. Department of Justice, including the U.S. Attorney's Office, regarding policies, procedures, or guidance for prosecuting criminal charges against protestors, demonstrators, observers, or others for interfering with or obstructing enforcement activity." *Id.* at 13. These are only three of *thirty demands*, but these three alone demonstrate that Plaintiffs' requests are facially objectionable as overbroad. These requests would require extensive and time-consuming searches for documents across a host of custodians and data repositories. Even if the information could be collected, significant time would be required to review the documents for responsiveness and privilege. In other words, this would not be a targeted search for a discrete set of documents. Rather, Plaintiffs' "broad and open-ended" requests are transparent attempt "to start discovery ahead of schedule," but "that's not what expedited discovery is for." *Let Them Play MN*, 517 F. Supp. 3d at 890.

As Plaintiffs recognize, "[w]here the scope of discovery sweeps too broadly, that discovery can unduly burden defendants." ECF No. 140 at 13 (quoting *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 349 F.R.D. 243, 252 (D.D.C. 2025)). Such is the case here. The labor demanded, especially when compared to the incredibly limited relevance of the requested information, would be unduly prejudicial to Defendants, and the Court should not order it. *See Guttenberg*, 26 F. Supp. 3d at 98 (denying a request for expedited discovery when plaintiffs' "discovery requests [were] not narrowly tailored to reveal information related to the preliminary injunction"); *cf. Rowles v. Curators of*

13

*Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020) (criticizing a plaintiff's "kitchen sink" approach to discovery).[2]

## CONCLUSION

The Court should deny the motion for expedited discovery.

Dated: February 12, 2026          Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

*/s/ Brantley T. Mayers*
BRANTLEY T. MAYERS (FL #1039996)
Counsel to the Assistant Attorney General

ANDREW WARDEN
Assistant Director
LEE REEVES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-5084
Fax: (202) 616-8470
Andrew.Warden@usdoj.gov

*Counsel for Defendants*

---

[2] Defendants object to Plaintiffs' deposition requests for the same reasons. Defendants also reserve the right to assert any and all appropriate objections and privileges should a further response be required.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on February 12, 2026.

*/s/ Brantley T. Mayers*

## **CERTIFICATE OF COMPLIANCE**

I certify that this memorandum complies with the Local Rules. Specifically, the memorandum complies with the limits in LR 7.1(f) because it contains 3,675 words, as counted by Microsoft Word for Microsoft 365 MSO (Version 2512), which counts all text, including headings, footnotes, and quotations. It also complies with LR 7.1(h) because it is written in Times New Roman in size 13 and double spaced (except as allowed by LR 7.1(h)(1)).

*/s/ Brantley T. Mayers*