UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, *by and through its Attorney General Keith Ellison*; City of Minneapolis; and City of St. Paul,<br><br>    Plaintiffs,<br><br>v.<br><br>Kristi Noem, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; John Condon, *in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; Todd Lyons, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; Marcos Charles*, in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations*; U.S. Immigration and Customs Enforcement; Rodney Scott, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. Customs and Border Protection; Gregory Bovino, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; David Easterwood, *in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement,*<br><br>    Defendants. | Case No. 26-cv-00190 (KMM/DJF)<br><br><br>**ORDER** |

The State of Minnesota, the City of Minneapolis and the City of St. Paul brought this lawsuit to address the damage inflicted on Plaintiffs and their residents during the federal government's unprecedented deployment of thousands of immigration enforcement officers to Minnesota in recent months ("Operation Metro Surge"). Plaintiffs' Complaint requests an

1

injunction ending Operation Metro Surge and an order declaring it unconstitutional and unlawful.

This matter is before the Court on Plaintiffs' Motion for Expedited Discovery ("Motion") (ECF No. 138). Plaintiffs seek an order requiring Defendants to respond to written discovery requests and allowing Plaintiffs to depose Defendants' declarants. As grounds, Plaintiffs state that they anticipate filing a preliminary injunction motion and that "limited expedited discovery will address open factual questions related to that motion." (ECF No. 138 at 3.) The Court has carefully reviewed the parties' briefs and finds a hearing is not necessary to rule on the Motion. Though the Court is acutely aware of the far-reaching and deeply traumatizing effects Operation Metro Surge has had on residents of this community, for the reasons set forth below, Plaintiffs' Motion is, respectfully, denied.

I.   **Procedural History**

Plaintiffs filed the Complaint in this action on January 12, 2026, bringing First Amendment, Tenth Amendment, Equal Sovereignty, Administrative Procedure Act ("APA"), and Ultra Vires Executive Action claims against Defendants relating to Operation Metro Surge and its effects on Minnesota. (*See* ECF No. 1 at 53-71.) Plaintiffs also filed a Motion for a Temporary Restraining Order ("TRO Motion") that same day. (ECF No. 5.) Of the ten counts asserted in the Complaint, Plaintiffs' TRO Motion invoked only two: (1.) violation of the Tenth Amendment through (a) infringement on Plaintiffs' police power and (b) unlawful coercion and commandeering (Count I); and (2.) violation of equal sovereignty under the U.S. Constitution (Count II).

The presiding judge in this case, the Honorable Katherine M. Menendez, converted the

TRO Motion into a motion for a preliminary injunction at a status conference on January 14, 2026.[1] (*See* ECF No. 21.)  Following a hearing and expedited and supplemental briefing addressing, among other issues, the parties' conflicting claims regarding the motivations and objectives underlying Operation Metro Surge, Judge Menendez denied Plaintiffs' TRO Motion, concluding that Plaintiffs had not established the "likelihood of success required for preliminary injunctive relief."  (ECF No. 135 at 18; *see also id.* at 26.)

Plaintiffs now state that they plan to file a second motion for preliminary injunction and argue they have established good cause for limited expedited discovery "to assist them in preparing for a preliminary injunction motion and hearing."  (ECF No. 140 at 2.)  Plaintiffs assert that "limited" expedited discovery is necessary to inform factual questions raised in the order denying their TRO Motion.  (*Id.* at 8.)  They note that Judge Menendez expressed reluctance to grant a preliminary injunction "[b]ecause there is evidence supporting both sides' arguments as to motivation."  (*Id.*, citing ECF No. 135 at 21-22 and n.18.)  Plaintiffs therefore contend that discovery is needed to "fill in the gaps."  They further contend that Defendants' declarations, along with recently leaked memos from the Department of Homeland Security ("DHS") authorizing agents to enter homes without warrants, "raise factual questions about Defendants' policies, practices, training, or rules of engagement with Minnesota residents," which expedited discovery is necessary to answer. (ECF No. 140 at 8; *see also id.* at 4.)  Plaintiffs seek expedited discovery focused not only on the Tenth Amendment and equal sovereignty claims raised in their TRO motion, but also on the APA and First Amendment claims asserted in their Complaint.  (*Id*. at 11.)

---

[1] For simplicity, and to distinguish Plaintiffs' converted preliminary injunction motion from their anticipated preliminary injunction motion, the Court refers to their first motion as Plaintiffs' "TRO Motion."

3

## II.      Legal Standards

Litigants generally "may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). In deciding whether to grant a motion for discovery before the parties' Rule 26(f) conference, courts generally apply a "good cause" standard. *See Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 889 (D. Minn. 2021); *ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. 12-cv-446 (RHK/LIB), 2012 WL 13029504, at *2 (D. Minn. May 30, 2012); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008).

To show "good cause," the party seeking expedited discovery must establish that the need for expedited discovery outweighs any prejudice to the responding party. *Let Them Play MN*, 517 F. Supp. 3d at 889; *see also Council on Am.-Islamic Rels.—Minnesota v. Atlas Aegis, LLC* ("*CAIR*"), 497 F. Supp. 3d 371, 380 (D. Minn. 2020). Courts weigh a variety of factors in evaluating whether a requesting party has made such a showing, including: "(1) whether a preliminary injunction is pending; (2) the breadth of discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Let Them Play MN*, 517 F. Supp. 3d at 889; *CAIR*, 497 F. Supp. 3d at 380.

As these cases suggest, in appropriate circumstances a pending motion for preliminary junction may constitute grounds for expedited discovery when "[f]urther development of the record before the preliminary injunction hearing will better enable the court to judge the parties' interests and respective chances for success on the merits." *Edudata Corp. v. Sci. Computs., Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) (granting temporary restraining order and finding further development of the record necessary to resolve claims); *see also Nilfisk, Inc. v. Liss*, No. 17-cv-

1902 (WMW/FLN), 2017 WL 7370059, at *7 (D. Minn. June 15, 2017) (granting temporary restraining order and permitting limited expedited discovery to address fact dispute prior to motion for preliminary injunction). Expedited discovery also may be warranted when the identities of unknown defendants must be discovered to advance a plaintiff's preliminary injunction claims. *See 3M Co. v. Individuals, Partnerships, & Unincorporated Associations identified in Schedule "A"*, No. 20-cv-2348 (SRN/TNL), 2020 WL 6817650, at *4-5 (D. Minn. Nov. 20, 2020 (granting temporary restraining order and permitting expedited discovery to identify John Doe defendants); *CAIR*, 497 F. Supp. 3d at 380 (granting preliminary injunction and permitting expedited discovery into "available names, telephone numbers, email and mailing addresses of John Does").

A party cannot gain permission to obtain early discovery simply by asserting a vague intent to bring a motion for preliminary injunction, however. To hold otherwise would undermine Rule 26(d) and encourage a flood of meritless lawsuits focused on acquiring documents and testimony before respondents even could begin to advance a defense. *See ALARIS Grp., Inc.*, 2012 WL 13029504, at *3 ("[R]equiring the Defendant to participate in discovery when the Complaint may yet be dismissed pursuant to pending Rule 12 motions would waste the resources of both parties, especially considering that no motion for preliminary injunctive relief has in fact yet been filed."). Moreover, an anticipated preliminary injunction motion is not an appropriate ground for launching unfettered discovery under Rule 26(b). *See Powerlift Door Consultants, Inc. v. Shepard*, No. 21-cv-1316 (WMW/ECW), 2021 WL 2911177, at *9 (D. Minn. July 12, 2021) ("The purpose of expedited discovery is not to begin discovery ahead of schedule."). "The purpose of expedited discovery is to allow a party to obtain *specific, limited, and identifiable pieces of information*, particularly when there is some risk of spoliation or when the suit cannot reasonably proceed without the information." *Let Them Play MN*, 517 F. Supp. 3d at 889 (emphasis added); *Powerlift*

*Door Consultants, Inc.*, 2021 WL 2911177, at *9 (granting expedited discovery only as to certain ephemeral communications at risk of destruction); *BCBSM, Inc. v. Vazquez*, No. 14-cv-1901 (JNE/TNL), 2014 WL 12778827, at *5 (D. Minn. July 25, 2014) (finding discovery requests overly broad and "more appropriately flushed out later during the course of ordinary discovery."). Based on these cases, the Court is compelled to conclude that Plaintiffs' demand is both insufficiently supported and overly broad.

### III. Analysis

Operation Metro Surge has had a devastating impact on Minnesota residents, and public accountability for any unlawful conduct committed during its execution is still in its infancy. The Court understands and fully appreciates the public's profound desire for disclosure of the policies, motivations and facts underlying the operation. "Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, *Other People's Money* 62 (National Home Library Foundation ed. 1933). But Plaintiffs simply have not advanced a persuasive legal basis for obtaining the discovery they seek at this early stage in this case.

Plaintiffs' motion suffers fatally from a lack of focus. They have not yet actually filed their anticipated motion for a preliminary injunction, nor have they identified with any degree of clarity the grounds on which they believe preliminary injunctive relief may be warranted. This failure is particularly problematic given that Judge Menedez rejected their first attempt. Plaintiffs state that their second motion will rely not solely on the grounds asserted in their TRO Motion, but also on new grounds not previously argued. They do not explain in any detail what those arguments will be, however. Even more problematically, they do not even attempt to explain how any particular discovery request might support any given argument. *See Let Them Play MN*, 517 F. Supp. 3d at 889 (denying expedited discovery because, "although Plaintiffs combined their request for

6

expedited discovery with their request for a preliminary injunction, they have not shown that the two are related."). Because Plaintiffs have made no effort to identify the arguments they intend to make or explain how the information they seek supports those arguments, they have not established that the requested discovery is not only relevant, but *necessary* to advance their claims for preliminary relief. Though the Court can imagine how some of the information Plaintiffs request might relate to claims asserted in the Complaint, it is not the Court's role to speculate about how the information they seek is essential to supporting their anticipated motion for preliminary relief. Plaintiffs' failure to carry this burden compels a decision to deny the Motion.

Furthermore, Plaintiffs' discovery requests do not come close to meeting the requirement that such requests must target "specific, limited, and identifiable pieces of information." *Id.* Plaintiffs pay lip service to that standard (*see* ECF No. 140 at 13), but their characterization of the requests as "limited" is disingenuous. Plaintiffs seek answers to ten interrogatories and responses to twenty document requests, including one request, Request Number 9, which itself has ten different subparts. (*See* ECF No. 141-6.) The majority of these requests seek "all documents and communications" concerning broad categories of information, which they define to include everything from spoken communications to handwritten notes, typed messages, calendar entries, email messages, text messages and video recordings. (*Id.* at 4-5.) To note just two illustrative examples, Plaintiffs seek "[a]ll documents and communications relating to uses of force, protest activities, or other significant events involving DHS personnel in Minnesota from December 1, 2025 to present." (*Id.* at 13-14.) This request appears to demand every communication, including both written and spoken statements, among the approximately 3,000 DHS agents[2] deployed in

---

[2] *See Response to Court's Question Regarding Size of Operation Metro Surge* (ECF No. 120 at 2), stating that DHS estimated approximately 3,000 CBP and ICE agents were conducting enforcement actions in the greater Minneapolis area as of January 26, 2026.

Minnesota about "significant events" during the relevant period. Plaintiffs also seek, "all documents relating to Operation Metro Surge, including any operational plans, briefing decks, after-action reports, situational reports, presentations, memoranda, summaries, immigration warrants such as Forms I-200, I-205, or I-213, or policies and procedures applying to the Operation." (*Id.* at 11.) Read literally, this request is a wholly unlimited demand for each and every document generated in connection with Operation Metro Surge. Plaintiffs additionally seek to depose "Defendants' declarants."[3] (*See* ECF No. 140 at 12.) Though Plaintiffs describe the general topics of information they believe the declarants possess, they do not explain why the declarants' testimony is a necessary predicate to Plaintiffs bringing their anticipated preliminary injunction motion. (*Id.*) Instead of using a surgical scalpel to obtain only that information which may be necessary to support specific arguments they intend to raise, they ask for permission to cast a wide fishing net.

Finally, to the extent Plaintiffs argue they need expedited discovery to develop the record regarding the motivations underlying Operation Metro Surge, the Court is unconvinced that the information they seek will appreciably move the needle. Plaintiffs' request for "all documents that define the scope of, provide the justifications for, or describe the objectives of Operation Metro Surge" (ECF No. 40-1 at 7) bears directly on the issues Judge Menendez grappled with in rejecting the "improper influence" theory Plaintiffs advanced in their TRO Motion. (*See* ECF No. 135, "Because there is evidence supporting both sides' arguments as to motivation and the relative merits of each side's competing positions are unclear, the Court is reluctant to find that the likelihood-of-success factor weighs sufficiently in favor of granting a preliminary injunction.").

---

[3] Plaintiffs' deposition request focuses on Enforcement and Removal Operations Field Officer Sam Olson and Patrol Agent in Charge Kyle Havrick. (ECF No. 40 at 12.)

However, both sides have already produced substantial information on this issue, and it is not apparent how the discovery Plaintiffs are now seeking would materially add to the discussion. Even less apparent is how any additional discovery Plaintiffs might obtain on this topic would address the fundamental line-drawing problem Judge Menendez identified in rejecting Plaintiffs' improper influence theory as a basis for preliminary injunctive relief. (*See id*., stating that "the caselaw does not describe a way by which the Court could draw the line between constitutionally permissible 'pressure' and impermissible 'compulsion'" and that "[t]he absence of doctrinal instruction on how to draw the necessary line, compounded by the challenges in drawing such a line in the context of Operation Metro Surge, means that issuing the requested injunctive relief—halting the operation entirely—could overstep the judicial role".)

Though the Court recognizes that the circumstances presented at this moment in history are unprecedented and the need for a public accounting of what has happened is great, the Court must uphold the rule of law fairly and impartially. The law dictates that expedited discovery must be narrowly targeted to support specific and necessary ends. Because Plaintiffs' Motion does not satisfy that requirement, the Motion is denied.[4]

---

[4] This decision should not be construed as a commentary on the potential merits of the Complaint or any forthcoming preliminary injunction motion, which the Court declines to reach. The Court does not exclude the possibility that relevant, appropriately tailored discovery may be warranted at some point. Nor does the Court find compelling Defendants' suggestion that injunctive relief is unwarranted in light of their announced intention to end Operation Metro Surge. (*See* ECF No. 146 at 2.) As of the date of this Order, Operation Metro Surge is still ongoing, and the Court cannot take Defendants' stated intention into account unless and until Respondents' withdrawal of its officers is complete.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Expedited Discovery (ECF No. 138) is **DENIED**.

Dated: February 16, 2026                         *s/ Dulce J. Foster*
                                                 DULCE J. FOSTER
                                                 United States Magistrate Judge