UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

STATE OF MINNESOTA, *by and through its Attorney General Keith Ellison*,
CITY OF MINNEAPOLIS, and
CITY OF ST. PAUL,

      Plaintiffs,

v.

MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; JOHN CONDON, *in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARCOS CHARLES, *in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;* U.S. Immigration and Customs Enforcement; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection;* U.S. Customs and Border Protection; GREGORY BOVINO, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; DAVID EASTERWOOD, *in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement*, *in their official capacities,*

      Defendants.

Case No. 0:26-cv-00190-KMM-DJF

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS**

_____

## **INTRODUCTION**

Notwithstanding the facts that (i) the parties continue briefing on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint; and (ii) the Court's local rules bar discovery at this early juncture, Plaintiffs noticed their intent to proceed with discovery now and demanded Defendants participate in a Rule 26(f) conference on May 13th. Defendants refused to participate in that conference given the parties' dispute about the propriety of early discovery, and Plaintiffs nonetheless forged ahead and now take the position that discovery in this case has begun. By requests dated May 19, 2026, Plaintiffs seek sweeping discovery into all aspects of Defendants' immigration enforcement efforts in the State of Minnesota going back the better part of a decade. These requests are materially similar to the prior discovery requests that this tribunal properly declined to permit. Plaintiffs do not and cannot show why any different result should obtain now, before Defendants' motion to dismiss Plaintiffs' Amended Complaint has been fully briefed and decided. To the contrary, proceeding with such unduly burdensome and overbroad discovery at this stage will enmesh the parties and the Court in host of unnecessary discovery disputes before the Court even decides whether it has jurisdiction over this case and if any of claims in the Amended Complaint can proceed. Because resolution of Defendants' motion is likely to result in dismissal of the Amended Complaint or, at a minimum, in a reduction of the scope of claims at issue, the Court should stay all discovery and case management deadlines pending resolution of the dismissal motion.

## PROCEDURAL BACKGROUND

By Complaint filed on January 12, 2026, Plaintiffs initiated this action. *See* ECF No. 1. Plaintiffs also sought a temporary restraining order (TRO) against Defendants by motion filed contemporaneously with their original Complaint. *See* ECF No. 8. Following an emergency status conference on January 14, the District Court converted Plaintiffs' TRO motion to a motion for a preliminary injunction and set a briefing schedule. *See* ECF No. 21. After briefing and oral argument on Plaintiffs' preliminary injunction motion, the District Court denied Plaintiffs' request for emergency relief, finding that Plaintiffs had not shown a likelihood of success on the merits of the Tenth Amendment and Equal Sovereignty claims. *See Minnesota v. Noem*, 818 F. Supp. 3d 1030, 1035 (D. Minn. 2026).

Plaintiffs next filed a motion for expedited discovery, ECF No. 138, but the Court (Foster, M.J.) denied that motion as "insufficiently supported and overly broad." *See* ECF No. 147.

On March 17, 2026, Defendants moved to dismiss Plaintiffs' Complaint in its entirety. *See* ECF Nos. 157, 158. In that motion, Defendants explained the many ways this lawsuit fails on jurisdictional and merits grounds. *See id.* In response, Plaintiffs informed Defendants that they intended to file an Amended Complaint, which they did on April 20, 2026. *See* ECF No. 167. Plaintiffs' Amended Complaint—which includes 19 claims spanning 178 pages—challenges every aspect of the Department to Homeland Security's law enforcement response during Operation Metro Surge to the problem of illegal immigration in Minnesota.

By Minute Order dated April 21, the District Court ordered that Plaintiffs' filing of an Amended Complaint mooted Defendants' pending Motion to Dismiss, but held that "[t]his determination does not prevent Defendants from filing a motion to dismiss directed at Plaintiffs' Amended Complaint."  ECF No. 168.  The District Court ordered that "Defendants shall answer or otherwise respond to the Amended Complaint on or before May 20, 2026."  *See id.*

A week later, prior to Defendants' response to Plaintiffs' Amended Complaint, Plaintiffs noticed a Rule 26(f) conference for May 13, 2026.  The parties met and conferred on May 7, 2026, and did not agree whether discovery is necessary or appropriate at this time in view of Local Civil Rule 26.1(d)(2), which precludes Rule 26(f) conferences unless and until the request for a 26(f) conference is made "at least 30 days after each defendant has answered, pleaded, or otherwise responded in the action."  On May 7, Defendants informed Plaintiffs that they would seek a stay of discovery pending the Court's disposition of Defendants' then-forthcoming Motion to Dismiss.  Plaintiffs indicated that they opposed a stay of discovery.  At the direction of Judge Foster's chambers in response to Defendants' request for a hearing date on the proposed motion, Defendants delayed filing their motion to stay discovery until after the filing of their motion to dismiss Plaintiffs' Amended Complaint, which Defendants filed on May 20.  *See* ECF Nos. 174, 175.

In the interim, Plaintiffs noticed a Rule 26(f) conference. Defendants refused to participate in that conference given that neither Rule 26 nor Local Rule 26.2 required the start of discovery in this case.  Even though no such conference occurred within the meaning of Rule 26(f) or Rule 26(d), Plaintiffs nonetheless take the position that discovery

3

in this case has begun.   To that end, Plaintiffs propounded sixteen (16) requests for production (including subparts) on May 19, 2026.   The overbroad requests largely mirror the same requests that the Court rejected in response to Plaintiffs' motion for expedited discovery.   Among other requests, Plaintiffs seek:

- "All documents that provide the justifications for or describe the objectives of Operation Metro Surge, including any memoranda, communications, including deployment communications, or training materials";

- "All documents and communications that provide or set forth the legal, statutory, regulatory, and constitutional authority to execute Operation Metro Surge"; and

- For the time period December 1, 2018, until the present, "[a]ll documents and communications regarding the [eleven] final agency actions alleged in the First Amended Complaint."

*See* Exhibit 1 ("Plaintiffs' First Set of Requests for Documents").

By Minute Order dated May 21, 2026, the Magistrate Judge stated that "[d]ue to the pending Motion to Dismiss [174], the Court finds there is good cause to delay the entry of a pretrial scheduling order. The Court will schedule a pretrial conference, if needed, promptly after a decision is issued on the pending motion."   ECF No. 180.

## LEGAL STANDARD

The Court may stay discovery under its inherent power to control the disposition of causes on its docket with economy of time and effort for itself, litigants, and attorneys.  *See Air Line Pilots Ass'n v. Miller,* 523 U.S. 866, 879 (1998).  Federal Rule of Civil Procedure 26(c) also provides that a district court may stay discovery upon a showing of good cause. When a motion to dismiss is on solid legal footing and will "dispose of all or substantially

all of the case," courts in this district have put discovery on pause. *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. MDL172795MJDKMM, 2018 WL 2122869, at *1 (D. Minn. May 8, 2018); *see, e.g.*, *Maxim Def. Indus., LLC v. Kunsky*, No. 19-CV-1225 (PAM/LIB), 2019 WL 5893141, at *6 (D. Minn. Sept. 25, 2019). "[C]ourts typically consider a variety of practical factors when determining whether a stay is appropriate, including: (1) whether the movant has shown it is reasonably likely to succeed on the merits of its dispositive motion; (2) whether the movant has demonstrated it will suffer hardship or inequity if the matter is not stayed; (3) whether there will be prejudice to the non-moving party if the matter is stayed; and (4) what outcome is best for the conservation of judicial resources." *Huff v. Canterbury Park Holding Corp.*, No. 22-CV-1922 (WMW/ECW), 2023 WL 5403472, at *4 (D. Minn. Aug. 22, 2023).

## ARGUMENT

Each of the factors favors a stay of discovery in this case.

First, staying discovery is particularly appropriate because Defendants have raised numerous well-founded jurisdictional and merits arguments that will likely result in dismissal of this case or, at a minimum, substantially narrow the scope of the issues. Indeed, the Court "has already determined that Plaintiff[s] [are] unlikely to be successful" on their Tenth Amendment and Equal Sovereignty claims—the only claims Plaintiffs chose to raise in their preliminary-injunction motion. *Kunsky*, 2019 WL 5893141, at *6; *see Minnesota*, 818 F. Supp. 3d at 1047-48. And as set forth in Defendants' renewed Motion to Dismiss, none of Plaintiffs' other claims fares any better based on well-established Supreme Court precedent. *See* ECF No. 175.

To start, Plaintiffs lack standing for a variety of reasons. *See, e.g.*, *United States v. Texas*, 599 U.S. 670 (2023) (concluding that two states lacked Article III standing to challenge DHS's immigration enforcement policies because their alleged injuries were not legally and judicially cognizable); *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (holding that "a State does not have standing as *parens patriae* to bring an action against the Federal Government"); *Food and Drug Administration v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (rejecting standing based on diversion of resources in response to federal policy). This lack of standing is especially evident given that Operation Metro Surge concluded before Plaintiffs filed their Amended Complaint. *See Tincher v. Noem*, 25-cv-4669 (D. Minn. Mar. 5, 2026) (ECF No. 246 at 6) (concluding that preliminary injunction "is now moot because [Operation Metro Surge] has ended"); *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) ("When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." (alteration adopted) (quotation omitted)).

On the merits, Plaintiffs' novel First Amendment theories fail as Plaintiffs do not cite any case where a court has ever recognized that a State or municipal government has First Amendment rights vis a vis the federal government. And the weight of authority suggests it does not. *See, e.g.*, *NAACP v. Hunt*, 891 F.2d 1555, 1565 (11th Cir. 1990) ("[G]overnment speech itself is not protected by the First Amendment."); *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1038 n.12 (5th Cir. 1982) (en banc) ("Government expression, being unprotected by the First Amendment, may be subject to legislative limitation which would be impermissible if sought to be applied to private

6

expression."); *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1208 (D.N.M. 2020) (holding that the First Amendment "protects people and private entities, not governments). Plaintiffs' Administrative Procedure Act (APA) claims conflict with well-established prohibitions on the reviewability of programmatic attacks on agency policies. *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990); *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 62-64 (2004). Finally, Plaintiffs' *ultra vires* claims are "essentially a Hail Mary pass-and in court as in football, the attempt rarely succeeds." *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025).

Thus, even a cursory "peek" at the merits of Defendants' motion to dismiss shows that it has more than "a mere possibility" of success. *Danger v. Nextep Funding, LLC*, No. 18-CV-567 (SRN/LIB), 2019 WL 4917181, at *3 (D. Minn. Jan. 22, 2019) ("A party who must demonstrate a likelihood of success on the merits in support of a requested stay is not required to demonstrate a greater than fifty percent probability that the motion for which it is seeking the stay will result in a determination in its favor."). Accordingly, this factor weighs strongly in favor of granting the requested stay.

Second, Defendants would likely suffer substantial burdens and costs in responding to Plaintiffs' discovery requests, which may ultimately prove to be unnecessary in the event the motion to dismiss is granted. As reflected in Plaintiffs' proposed expedited discovery requests, which the Court rejected, Plaintiffs sought sweeping discovery of every document, video, and email in the federal government's possession related to immigration enforcement in Minnesota over the past several months. *See* ECF No. 147 (order denying expedited discovery). "Read literally, [Plaintiffs'] request is a wholly unlimited demand

for each and every document generated in connection with Operation Metro Surge." *Id.* at 8. Plaintiffs' recently-propounded discovery is as equally overbroad and unduly burdensome as their prior requests. *See* Exhibit 1. Given the breadth of Plaintiffs' Amended Complaint, the discovery they seek is tantamount to any and all materials related to Defendants' immigration enforcement efforts in the State of Minnesota for more than the last seven years. Such overbroad discovery is unduly burdensome and completely disproportionate to the needs of this case. *See* Fed. R. Civ. P. 26; ECF No. 147 at 7-8 (summarizing Plaintiffs' discovery request as asking "for permission to cast a wide fishing net").

In these circumstances where Plaintiffs contemplate extensive and intrusive discovery, the Court should not allow discovery to proceed before resolving Defendants' motion to dismiss. In *In re United States*, 583 U.S. 29 (2017) (per curiam), the Supreme Court was confronted with a lower court order requiring the Government to disclose numerous documents in an APA case, entered prior to the lower court's resolution of the Government's threshold APA and jurisdictional dismissal arguments. The Supreme Court held that the district court should have "first resolved the Government's threshold arguments" before ordering disclosure, because "those [threshold] arguments, if accepted, likely would eliminate the need for" such disclosure. *In re United States*, 583 U.S. at 31-32. That holding is directly applicable here: this Court should not allow discovery to proceed before resolving Defendants' threshold arguments, any of which, if accepted, would eliminate or significantly narrow the need for discovery. *See id.* Allowing such discovery to proceed before resolution of the motion dismiss would encourage "abusive

8

discovery and . . . waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997). There is no reason that the parties and this Court should become mired in disputes over the scope and extent of discovery, motions to compel, and the terms and scope of protective order— all of which are likely to happen if a stay of discovery does not issue. *Dickinson v. Trump*, No. 26-1609, 2026 WL 1133353, at *13 (9th Cir. Apr. 27, 2026) (holding that "discovery need not continue in the district court pending appeal" where "the merits of the First Amendment retaliation claim are unlikely to succeed" and the court contemplated "extensive discovery"); *Reach Cmty. Dev. v. Department of Homeland Security*, No. 26-1575, 2026 WL 1133351, at *1 (9th Cir. Apr. 27, 2026) (granting stay of district court proceedings because "[d]iscovery on a meritless claim would serve no other purpose than to cause parties and the court to expend resources unnecessarily").

These collateral disputes are particularly unnecessary in this case. Assuming *arguendo* that the Court will reach the merits Plaintiffs' Amended Complaint, most of the claims would be decided on the basis of an administrative record compiled by Defendants, not discovery. In addition to the jurisdictional obstacles noted above, Plaintiffs do not and cannot explain how the sweeping discovery they seek adheres to hornbook principles of administrative law that make clear that discovery is inappropriate. The bulk of Plaintiffs' claims in their Amended Complaint arise under the APA; in that circumstance, discovery is "rarely proper." *Grp. Loan Servs. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996). Instead,

"judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971)) (remaining citations omitted). "That record, 'not some new record made initially in the reviewing court,' becomes the 'focal point' for judicial review." *Id.* at 766 (citing *Camp v. Pitts,* 411 U.S. 138, 142) (1973) & *Corning Savings & Loan Assoc. v. Fed. Home Loan Bank Bd.,* 736 F.2d 479, 480–81 (8th Cir. 1984)); *see also* Fed. R. Civ. P. 26(a)(1)(B)(i) (exempting actions based on an administrative record from initial disclosure requirement).

To overcome the presumption against extra-record discovery, Plaintiffs must make a "strong showing that [Defendants] acted with bad faith or improper behavior." *Maxey v. Kadrovach,* 890 F.2d 73, 77 (8th Cir. 1989); *see also Voyageurs Nat. Park Ass'n*, 381 F.3d at 766 (exceptions which allow discovery in actions challenging agency review must not be casually invoked). Plaintiffs make no attempt to explain why this is the exceptional case in which extra-record discovery is proper—let alone at this procedural juncture.

Third, a limited stay would not prejudice Plaintiffs or present a clear tactical disadvantage to Plaintiffs such that any theoretical harm of a stay would outweigh the benefits of a stay. *See Huff*, 2023 WL 5403472, at *2 (considering "whether there will be prejudice to the non-moving party if the matter is stayed" in balancing the harm of a stay of discovery against the benefit). At Plaintiffs' request, the parties will complete briefing on Defendants' Motion to Dismiss in July, with a motion hearing date in early September. *See* ECF Nos. 184, 185. Assuming the Court decides the motion soon after that date, the

10

stay would delay the start of discovery for a reasonably short period of time. Further, Plaintiffs will have adequate time to attempt to seek discovery on any claims that may remain following resolution of Defendants' motions to dismiss, such that they will not be prejudiced by a stay. *See Nextep Funding, LLC*, 2019 WL 4917181 at *4 (granting defendant's motion to stay discovery and recognizing that the Court can extend the period for discovery to account for any time lost due to a limited stay). The benefits to a limited stay of discovery in this matter until the Court rules on the motion to dismiss outweigh any theoretical harm claimed by Plaintiffs.

Fourth, a stay of discovery would further judicial economy. "A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." 8 Charles Alan Wright & Richard L. Marcus, Federal Practice & Procedure § 2040, at 521 (2d ed. 1994)). "In determining whether a stay of discovery until the resolution of a pending dispositive motion would conserve judicial resources, a court examines the breadth of any pending discovery and whether the pending dispositive motion has the potential to resolve the litigation." *Dufrene v. ConAgra Foods, Inc.*, No. 15-CV-3796 (WMW/LIB), 2016 WL 10651947, at *4 (D. Minn. Apr. 7, 2016). Here, both considerations favor a stay. If discovery begins before the motion to dismiss is resolved, and as Plaintiffs' recently propounded, sweeping discovery requests confirm, Plaintiffs seek burdensome and intrusive discovery that far exceeds the bounds of reasonable proportionality. Such requests will undoubtedly enmesh the Court in complex discovery disputes, motions to compel and to quash, and resolution of privilege claims. Given that

11

the Court has already concluded that Plaintiffs have not demonstrated a likelihood of success on the merits of their Tenth Amendment and Equal Sovereignty claims and the fact that the other arguments in Defendants' well-founded motion have the potential to result in dismissal of the entire case on both jurisdictional and merits grounds, judicial economy weighs heavily in favor of granting the requested stay. In particular, because of the many jurisdictional obstacles to this lawsuit proceeding, Defendants would assert those same jurisdictional objections to all of Plaintiffs' discovery requests before resolution of the motion to dismiss. Those objections would require the Court addressing the discovery disputes to address the same jurisdictional issues pending before the Court in Defendants' motion to dismiss. Proceeding down such an inefficient path would be a wasteful enterprise that would undermine party and judicial economy. *See Nextep Funding, LLC*, 2019 WL 4917181 at *4 (finding judicial economy favored stay where defendants moved to dismiss for lack of standing because any resulting discovery dispute would require the court to address that same jurisdictional issue and therefore "lead to a waste of judicial resources because the issue of whether or not Plaintiff possess the requisite Article III standing is already pending"); s*ee Dufrene*, 2016 WL 10651947, at *4 (concluding that "in particular the conservation of resources" weighed in favor of stay pending the resolution of the motion to dismiss).

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Court stay all discovery and case management obligations pending resolution of Defendants' motion to

dismiss.[1]


Dated: May 27, 2026                    Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General
                                       Civil Division

                                       BRANTLEY T. MAYERS
                                       Counsel to the Assistant Attorney
                                            General


                                        */s/ Andrew I. Warden*
                                       ANDREW WARDEN (IN #23840-49)
                                       Assistant Branch Director
                                       LEE REEVES
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W.
                                       Washington, D.C. 20005
                                       Telephone: (202) 616-5084
                                       Fax: (202) 616-8470
                                       Andrew.Warden@usdoj.gov

                                       *Counsel for Defendants*

---

[1] Defendants' responses to Plaintiffs' discovery requests are due on June 20, 2026, prior to the hearing dates that this tribunal indicated that it had available to hear argument on this motion.  Although Defendants have noticed a hearing date in compliance with this Court's local rules, they do not object to this Court deciding the matter without a hearing. Absent a decision by the date that Defendants' responses are due, and consistent with the arguments noted herein, Defendants anticipate lodging various objections to Plaintiffs' discovery requests, including but not limited to the lack of jurisdiction, relevance, overbreadth, and undue burden.