UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

STATE OF MINNESOTA, *by and
through its Attorney General Keith Ellison*,
CITY OF MINNEAPOLIS, and
CITY OF ST. PAUL,

      Plaintiffs,

v.

MARKWAYNE MULLIN, *in his official capacity as
Secretary of the U.S. Department of
Homeland Security*; JOHN CONDON, *in his
official capacity as Acting Executive Associate
Director of Homeland Security Investigations*;
U.S. Department of Homeland Security;
TODD LYONS, *in his official capacity as Acting
Director of U.S. Immigration and Customs
Enforcement*; MARCOS CHARLES, *in his
official capacity as Acting Executive Associate
Director, Enforcement and Removal Operations;*
U.S. Immigration and Customs Enforcement;
RODNEY SCOTT, *in his official capacity as
Commissioner of U.S. Customs and Border
Protection;* U.S. Customs and Border Protection;
GREGORY BOVINO, *in his official capacity
as Commander of the U.S. Border Patrol*; U.S. Border
Patrol; DAVID EASTERWOOD, *in his official
capacity as Acting Director, Saint Paul Field Office,
U.S. Immigration and Customs Enforcement*,
*in their official capacities,*

      Defendants.

Case No. 0:26-cv-00190-KMM-DJF

**JOINT STATUS REPORT
REGARDING EARLY
DISCOVERY**

---

By Minute Order dated June 22, 2026, the Court ordered the parties to meet and

confer before June 6, 2026 "to develop a plan for limited discovery before the Motion to

Dismiss (ECF No. 174) is resolved," and to file a "joint report identifying areas of agreement and disagreement by July 13, 2026" regarding Plaintiffs' early discovery requests. ECF No. 198 (June 22, 2026 Minute Order). The parties' respective positions are set forth below.

**Plaintiffs' Position:**

On June 26, 2026, the parties met and conferred pursuant to the Court's June 22, 2026, which, inter alia, directed the parties to develop an "Early Discovery Plan" that would "identify, as to each request, a reasonable time scope and a narrowly targeted range of custodians from whom such discovery is sought." Plaintiffs proposed that their May 19, 2026, discovery requests be narrowed in this fashion and asked defense counsel which custodians and what time scope would be acceptable to Defendants. Defense counsel did not take a position as to either narrowing parameter during the meet and confer, and thus Defendants did not make any specific proposal to narrow the pending discovery requests by either custodian or time scope. Plaintiffs then indicated that, after they had a chance to consider the issues further, they would propose a narrowed time scope and a set of custodians themselves.

On July 13, 2026, Plaintiffs proposed specific time scope narrowing and identified a short list of custodians. Generally speaking, the time scope for the discovery requests are narrowed to either June 1, 2025, to the present, or to January 20, 2025, to the present. Plaintiffs have further identified fifteen custodians for discovery Requests Nos. 1-4. Additionally, Plaintiffs have, consistent with the Court's direction, asked that initial discovery be focused, in large part, on materials with a high risk of dissipation, such as

electronic communications like emails, Signal chats, and text messages.[1] Because these were remitted to Defendants on July 13, 2026, Defendants are still considering Plaintiffs' proposal to narrow, initially, the pending discovery requests by time and custodian.

The pending discovery requests are shown in ***bold italics*** below and Plaintiffs' specific narrowing criteria are shown in *italics* below:

***REQUEST NO. 1. All documents that define the scope of or outline the parameters of Operation Metro Surge, including but not limited to any memoranda, communications, including deployment communications, or training materials that relate to Operation Metro Surge's goals, benchmarks, methods, tactics, quotas, or duration.***

*Plaintiffs propose that this request initially be narrowed to responsive documents and communications, especially from sources that have a high risk of dissipation, including emails, texts, Signal messages, WhatsApp messages, Microsoft Teams chats, as well as any other text-messaging or chat-messaging communications that are or were possessed by or sent or received by the following individuals:*

1. *Markwayne Mullin*
2. *Kristi Noem*
3. *Corey Lewandowski*
4. *Greg Bovino*

---

[1] Defendants assert, supra, that their litigation holds and existing records retention policies negate this concern. Unfortunately, additional reporting since the Court considered Defendants' motion to stay, shows otherwise. *Kristi Noem's aide deletes nearly 30 secret Signal chats involving Corey Lewandowski, but the timeline raises questions*, Priyakshi Sharma, msn.com (July 13, 2026) (available at https://www.msn.com/en-us/news/us/kristi-noem-s-aide-deletes-nearly-30-secret-signal-chats-involving-corey-lewandowski-but-the-timeline-raises-questions/ar-AA27PrVk?ocid=BingNewsSerp).

1. *Marcos Charles, and any others who have held the role of ICE Executive Associate Director, Enforcement and Removal Operations between June 1, 2026 and present)*
5. *Michael Banks*
6. *Todd Lyons*
7. *Field Office Director for Saint Paul Field Office ERO (David Easterwood, Sam Olson, and any others who have held that role between June 1, 2025, and present)*
8. *Office of Field Operations (OFO) Director of Field Operations responsible for the Minneapolis area*
9. *Deputy Secretary of DHS Troy Edgar*
10. *Chief of Staff to*
11. *Charles Wall*
12. *U.S. Customs and Border Protection Commissioner*
13. *Joseph Mazzara*
14. *James Percival*
15. *Assistant Secretary, Office of Public Affairs*

*Where we have identified a position rather than an individual, all individuals who held the position from June 1, 2025, to the present should be included.*

**REQUEST NO. 2.   All documents that provide the justifications for or describe the objectives of Operation Metro Surge, including any memoranda, communications, including deployment communications, or training materials. This request includes but is not limited to documents regarding or forming a basis for Defendants' statements that:**

> a. **Defendants sought to combat fraud with Operation Metro Surge, e.g., including Defendant Noem's post on X, which stated: "The largest DHS operation is happening right now in Minnesota. @POTUS Trump and @Sec_Noem have rallied DHS law enforcement personnel to keep Americans safe and ERADICATE fraud. We're not leaving until the problem is solved"; and White House's post on X that "President Donald J. Trump and his Administration are UNLEASHING a relentless assault to dismantle the massive fraud empires built in Minnesota under the watch of incompetent Democrats like Tim Walz and his Radical Left enablers."**

> b. **Defendants sought to coerce or punish so-called sanctuary jurisdictions with Operation Metro Surge, e.g., including but not limited to: Bondi's January 24, 2026, letter demanding that Plaintiffs: (1) share all of Plaintiffs' records on Medicaid and Food and Nutrition Services programs; (2) repeal "sanctuary policies"; and (3) allow the Department of Justice access to Plaintiffs' voter**

4

*rolls. Attorney General Bondi indicated that acquiescing to her requests would "help bring back law and order to Minnesota"; Defendant Lyon's statement, which was posted by DHS on January 6, 2026, a day after news reports that an additional 2,000 ICE agents would be sent to Minnesota, describing ICE's operation in Minnesota as "the largest immigration operation ever taking place right now" and that Defendants were "taking the fight to these sanctuary jurisdictions; and Defendant Homan's statement that Defendants would end Operation Metro Surge "real quick" if Plaintiffs would "Let us in the jail. Stop being a sanctuary jurisdiction, sanctuary state, sanctuary city. Give us access to your jail so we can arrest these criminals in the safety and security of the jail. That way, we don't have to go into the neighborhood and find them."*

*Plaintiffs propose that this request initially be narrowed to responsive documents and communications, especially from sources that have a high risk of dissipation, including emails, texts, Signal messages, WhatsApp messages, Microsoft Teams chats, as well as any other text-messaging or chat-messaging communications that are or were possessed by or sent or received by the following individuals:*

1. *Markwayne Mullin*
2. *Kristi Noem*
3. *Corey Lewandowski*
4. *Greg Bovino*
2. *Marcos Charles, and any others who have held the role of ICE Executive Associate Director, Enforcement and Removal Operations between June 1, 2026 and present)*
5. *Michael Banks*
6. *Todd Lyons*
7. *Field Office Director for Saint Paul Field Office ERO (David Easterwood, Sam Olson, and any others who have held that role between June 1, 2025, and present)*
8. *Office of Field Operations (OFO) Director of Field Operations responsible for the Minneapolis area*
9. *Deputy Secretary of DHS Troy Edgar*
10. *Chief of Staff to*
11. *Charles Wall*
12. *U.S. Customs and Border Protection Commissioner*
13. *Joseph Mazzara*
14. *James Percival*
15. *Assistant Secretary, Office of Public Affairs*

*Where we have identified a position rather than an individual, all individuals who held the position from June 1, 2025, to the present should be included. Plaintiffs also note that responsive documents and communications include those related to punishing, sanctioning, or dispensing retribution against Plaintiffs or Minnesota politicians.*

*REQUEST NO. 3. All documents and communications that provide or set forth the legal, statutory, regulatory, and constitutional authority to execute Operation Metro Surge.*

*Plaintiffs propose that this request initially be narrowed to responsive documents and communications, especially from sources that have a high risk of dissipation, including emails, texts, Signal messages, WhatsApp messages, Microsoft Teams chats, as well as any other text-messaging or chat-messaging communications that are or were possessed by or sent or received by the following individuals:*

1. *Markwayne Mullin*
2. *Kristi Noem*
3. *Corey Lewandowski*
4. *Greg Bovino*
3. *Marcos Charles, and any others who have held the role of ICE Executive Associate Director, Enforcement and Removal Operations between June 1, 2026 and present)*
5. *Michael Banks*
6. *Todd Lyons*
7. *Field Office Director for Saint Paul Field Office ERO (David Easterwood, Sam Olson, and any others who have held that role between June 1, 2025, and present)*
8. *Office of Field Operations (OFO) Director of Field Operations responsible for the Minneapolis area*
9. *Deputy Secretary of DHS Troy Edgar*
10. *Chief of Staff to*
11. *Charles Wall*
12. *U.S. Customs and Border Protection Commissioner*
13. *Joseph Mazzara*
14. *James Percival*
15. *Assistant Secretary, Office of Public Affairs*

*Where we have identified a position rather than an individual, all individuals who held the position from June 1, 2025, to the present should be included.*

**REQUEST NO. 4.   All documents and communications regarding or otherwise relating to the possible, anticipated, intended, or actual effects of Operation Metro Surge on economic activity in Minnesota; on Plaintiffs' provision of public safety services by law enforcement to Plaintiffs' residents; and on the provision of other governmental health and public welfare services, such as education and medical care, to Plaintiffs' residents.**

*Plaintiffs propose that this request initially be narrowed to responsive documents and communications, especially from sources that have a high risk of dissipation, including emails, texts, Signal messages, WhatsApp messages, Microsoft Teams chats, as well as any other text-messaging or chat-messaging communications that are or were possessed by or sent or received by the following individuals:*

1. *Markwayne Mullin*
2. *Kristi Noem*
3. *Corey Lewandowski*
4. *Greg Bovino*
4. *Marcos Charles, and any others who have held the role of ICE Executive Associate Director, Enforcement and Removal Operations between June 1, 2026, and present*
5. *Michael Banks*
6. *Todd Lyons*
7. *Field Office Director for Saint Paul Field Office ERO (David Easterwood, Sam Olson, and any others who have held that role between June 1, 2025, and present)*
8. *Office of Field Operations (OFO) Director of Field Operations responsible for the Minneapolis area*
9. *Deputy Secretary of DHS Troy Edgar*
10. *Chief of Staff to*
11. *Charles Wall*
12. *U.S. Customs and Border Protection Commissioner*

13. *Joseph Mazzara*
14. *James Percival*
15. *Assistant Secretary, Office of Public Affairs*

*Where we have identified a position rather than an individual, all individuals who held the position from June 1, 2025, to the present should be included.*

***REQUEST NO. 5. All documents and communications regarding the final agency actions alleged in the First Amended Complaint, e.g., in ¶¶ 282-477, including:***

    a. ***All documents and communications regarding or otherwise related to Defendants' January 20, 2025, revocation of the October 27, 2021, policy prohibiting immigration arrests in sensitive locations such as schools, courthouses, and hospitals;***

    b. ***All documents and communications from December 1, 2018, to the present regarding or otherwise related to Defendants' deployment of roving patrols of CBP and ICE during immigration enforcement activities, such as Operation Metro Surge;***

    c. ***All documents and communications from December 1, 2018, to the present regarding or otherwise related to Defendants' use of face recognition and face capture technologies during immigration enforcement activities, such as Operation Metro Surge. This request includes documents and communications related to the rescission of DHS Directive 026-11 and the issuance of the February 2025, DHS Privacy Threshold Analysis as described in ¶¶ 320-40 of the First Amended Complaint;***

    d. ***All documents and communications from December 1, 2018, to the present regarding or otherwise related to immigration agents concealing, removing, or swapping license plates when engaged in enforcement activities, such as Operation Metro Surge;***

    e. ***All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents to enter residences without a judicial warrant or otherwise enter private property without permission during immigration enforcement activities, such as Operation Metro Surge. This request includes but is not limited to the May 12, 2025, memorandum issued by ICE leadership purportedly to implement "Executive Order 14159, Protecting the American People Against Invasion";***

f. *All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents, under 8 U.S.C. § 1357(a)(2), to arrest an individual if: there is probable cause to believe that (1) the individual is removable alien and (2) the individual is likely to escape before a warrant for his arrest can be obtained. This request includes but is not limited to Defendant Lyons' January 28, 2026, memorandum regarding that arrest authority, as well as documents and communications regarding the 2022 DHS settlement in Castañon Nava et al. v. Dep't of Homeland Security et al., No. 18-cv-3757 (N.D. Ill.), that set forth a policy standard on warrantless arrests;*

g. *All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents to base seizures of individuals on (1) apparent race or ethnicity; (2) speaking Spanish or speaking English with an accent; (3) presence at a particular location (e.g., bus stop, car wash, tow yard, day laborer pick up site, agricultural site, etc.); or (4) the type of work one does. This request includes but is not limited to guidance issued by Defendants after the U.S. Supreme Court granted the federal government's application for a stay of a district court's temporary restraining order in Noem v. Vasquez Perdomo on September 8, 2025;*

h. *All documents and communications regarding or otherwise related to immigration agents concealing their faces, when engaged in enforcement activities, such as Operation Metro Surge;*

i. *All documents and communications regarding or otherwise related to Defendants' staffing and deployment policies or practices with regard to assigned personnel within Minnesota from December 1, 2018-present, including when Defendants increased the number of immigration agents during Operation Metro Surge;*

j. *All documents and communications from December 1, 2018, to the present, regarding or setting forth guidance, training, or policies on the use of force by immigration agents and immunity from State law violations arising from the use of force during immigration enforcement operations, such as Operation Metro Surge;*

k. *All documents and communications from December 1, 2018, to the present, regarding the amount of training for newly hired ICE offices, including but not limited to Defendants' reduction in training program requirements to approximately 340 hours.*

9

*Plaintiffs propose that the following requests be initially limited to responsive documents and communications created between January 20, 2025, and the present. However, where Defendants maintain an older document sets forth the most recent operative policy or most recent agency action then those documents shall also be produced. Plaintiffs additionally propose that the initial discovery production be limited to any memos, communications, or training materials reflecting agency policy or decision-making regarding:*

1. *use of force, both against immigration targets and against observers or protestors;*

2. *enforcement at churches, government buildings, medical facilities, schools, or other "sensitive locations";*

3. *entry into private property with administrative warrants but without judicial warrants;*

4. *authority of federal immigration agents, under 8 U.S.C. § 1357(a)(2), to arrest an individual, including but not limited to Defendant Lyons' January 28, 2026, memorandum regarding that arrest authority, and prior guidance on the same subject;*

5. *consideration of race in traffic stops or other "voluntary," "collateral," or "full spectrum" enforcement or* Noem v. Vasquez Perdomo, *146 S. Ct. 1 (2025);*

6. *license plate removal or obfuscation and masking by agents;*

7.  *immunity from State or municipal law violations;*

8.  *reduction in training requirements.*

*All copies of the "IceBreaker" newsletter to the extent they reflect or contain communications regarding the agency decisions described above, and staffing deployment to Operation Metro Surge, including any newsletter announcing the command staff and staffing of Operation Metro Surge.*

*Copies of responsive materials on these topics already produced by the United States in response to FOIA requests.*

*Use of force reports and reviews concerning any use of force by Defendant Bovino, and all uses of force described in the First Amended Complaint.*

For their part, Defendants sent a separate proposal for narrowed discovery to Plaintiffs on July 13, 2026. Plaintiffs note, however, that Defendants' proposal does not really address narrowing the discovery requests by date or custodian. Instead, Defendants state that they will not produce any documents for Requests Nos. 3 and 4; that they "will perform a perform a manual search for any formal memoranda" related to Requests Nos. 1 and 2; and "[f]or the time period November 1, 2025, until February 1, 2026, Defendants agree to search for any agency memoranda or formal agency policies governing" nine topics that relate to the alleged agency policies. Although counsel for the State are willing to continue negotiating an Early Discovery Plan with Defendants, they do not believe that Defendants' proposal is consistent with the Court's order denying the requested stay of discovery. This is especially true considering that Defendants have only proposed producing "formal memoranda" whereas it is clear from the allegations and existing

11

evidence that much, if not most, of the relevant discovery will be communications and other "informal" documents. Indeed, Defendants do not even address a main concern articulated by the Court, viz., materials that are at a high risk of dissipation, such as text messages.

Defendants' Position:

On May 19, 2026, Plaintiffs issued their "First Set of Requests for Documents" to Defendants. Thereafter, Defendants sought a stay of discovery on May 27, 2026. While that motion remained pending and by response dated June 18, 2026, Defendants timely objected to Plaintiffs' discovery requests. A copy of these objections is attached hereto as Exhibit 1. Among other objections, Defendants argued that Plaintiffs' requests were overbroad, unduly burdensome, and disproportionate to the needs of the case.

By order dated June 22, 2026, this Court granted in part and denied in part Defendant's motion. ECF No. 198. This Court agreed that Plaintiffs' discovery requests were overbroad, and authorized only "limited discovery before the Motion to Dismiss (ECF No. 174) is resolved." *Id.; see* Transcript at 48-49 (June 22, 2026) ("I agree with the defendants that the scope of discovery that has been sought is still far too broad.") "Early discovery requests must be tailored to (i) [i]ssues that might inform the parties' positions in the Motion to Dismiss; and [i]nformation with a high risk of dissipation over time." ECF No. 198, 1.a.[2] Discovery requests must furthermore be limited to "a reasonable time scope and a narrowly targeted range of custodians from whom discovery is sought." *Id.* at 1.b.

---

[2] Plaintiffs have identified no information "with a high risk of dissipation over time." Appropriate litigation holds have issued, and Defendants' existing records retention

By conference call dated June 26, 2026, the parties met and conferred in conformance with the Court's June 22, 2026 Minute Order.  In that call, and as relevant here, Plaintiffs did not narrow their discovery requests.  By email dated July 13 at 5:12 pm ET, Plaintiffs presented their position on the scope of early discovery for the first time. Defendants have not had adequate time to evaluate Plaintiffs' proposal.  Defendants propose to search for and provide the following non-privileged documents and materials to the extent any are found, corresponding to Plaintiffs' Requests for Production:

> ***Request for Production No. 1: All documents that define the scope of or outline the parameters of Operation Metro Surge, including but not limited to any memoranda, communications, including deployment communications, or training materials that relate to Operation Metro Surge's goals, benchmarks, methods, tactics, quotas, or duration.***

For the time period November 1, 2025, until February 1, 2026, Defendants agree to perform a manual search for any formal memoranda, policies, and mission statements that state or describe the purpose, goals, and/or objectives of Operation Metro Surge, and to provide to Plaintiffs any responsive non-privileged documents that Defendants locate.

> ***Request for Production No. 2: All documents that provide the justifications for or describe the objectives of Operation Metro Surge, including any memoranda, communications, including deployment communications, or training materials. This request includes but is not limited to documents regarding or forming a basis for Defendants' statements that:***
>
> ***a. Defendants sought to combat fraud with Operation Metro Surge, e.g., including Defendant Noem's post on X, which stated: "The largest DHS operation is happening right now in Minnesota. @POTUS Trump and @Sec_Noem have rallied DHS law enforcement personnel to keep Americans safe and ERADICATE fraud. We're not leaving until the***

---

policies mandate the continued preservation of any arguably relevant documents, materials, and communications, including the materials Plaintiffs seek in their May 19, 2026 requests for production.

*problem is solved"; and White House's post on X that "President Donald J. Trump and his Administration are UNLEASHING a relentless assault to dismantle the massive fraud empires built in Minnesota under the watch of incompetent Democrats like Tim Walz and his Radical Left enablers."*

*b. Defendants sought to coerce or punish so-called sanctuary jurisdictions with Operation Metro Surge, e.g., including but not limited to: Bondi's January 24, 2026, letter demanding that Plaintiffs: (1) share all of Plaintiffs' records on Medicaid and Food and Nutrition Services programs; (2) repeal "sanctuary policies"; and (3) allow the Department of Justice access to Plaintiffs' voter rolls. Attorney General Bondi indicated that acquiescing to her requests would "help bring back law and order to Minnesota"; Defendant Lyon's statement, which was posted by DHS on January 6, 2026, a day after news reports that an additional 2,000 ICE agents would be sent to Minnesota, describing ICE's operation in Minnesota as "the largest immigration operation ever taking place right now" and that Defendants were "taking the fight to these sanctuary jurisdictions; and Defendant Homan's statement that Defendants would end Operation Metro Surge "real quick" if Plaintiffs would "Let us in the jail. Stop being a sanctuary jurisdiction, sanctuary state, sanctuary city. Give us access to your jail so we can arrest these criminals in the safety and security of the jail. That way, we don't have to go into the neighborhood and find them."*

Inasmuch as this request seeks documents and materials relating to the "purpose, goals, and/or objectives of Operation Metro Surge," it will be addressed by Defendants' proposed response to Plaintiffs' Request No. 1, as noted above. *Request for Production No. 3: All documents and communications that provide or set forth the legal, statutory, regulatory, and constitutional authority to execute Operation Metro Surge.*

As Defendants stated in their objections to Plaintiffs' First Set of Requests for Documents, and among other objections, this request "expressly seeks documents and communications about Defendants' legal authority and therefore would require production of privileged information protected by (a) attorney work product; (b) the attorney-client privilege; (c) the deliberative process privilege; (d) law enforcement privilege, and/or (e) executive privilege, including presidential communications privilege." Defs. Resp. to Pls.

14

RFP No. 3. Furthermore, inasmuch as this request seeks information that is inherently legal rather than factual, it cannot be the proper subject of discovery, let alone the limited early discovery that this Court has authorized. Accordingly, Defendants disagree that this request for documents is proper under any circumstance. For purposes of briefing and deciding Defendants' Motion to Dismiss, the "legal, statutory, regulatory, and constitutional authority to execute Operation Metro Surge" is a pure question of law properly addressed by the parties' filings.

> ***Request for Production No. 4: All documents and communications regarding or otherwise relating to the possible, anticipated, intended, or actual effects of Operation Metro Surge on economic activity in Minnesota; on Plaintiffs' provision of public safety services by law enforcement to Plaintiffs' residents; and on the provision of other governmental health and public welfare services, such as education and medical care, to Plaintiffs' residents.***

As Defendants stated in their objections to Plaintiffs' First Set of Requests for Documents, and among other objections, this request is "overbroad, unduly burdensome, and disproportionate to the needs of the case." Even assuming that responsive documents exist, they will not "inform the parties' positions in the Motion to Dismiss." The request for information about the downstream impact of federal immigration enforcement efforts on "economic activity in Minnesota" or on "Plaintiffs' provision of public safety . . . or other governmental health and public welfare services" appears to be for the purpose of supporting Plaintiffs' Article III standing, but such information is irrelevant to the legal issues to be decided on Defendants' Motion to Dismiss because Plaintiffs have disclaimed any need for such discovery to resolve the motion to dismiss. *See* ECF No. 195 at 38 n.9.

Accordingly, Defendants do not agree to produce any documents in response to this Request for Production.

> ***Request for Production No. 5. All documents and communications regarding the final agency actions alleged in the First Amended Complaint, e.g., in ¶¶ 282-477, including:***
>
> ***a. All documents and communications regarding or otherwise related to Defendants' January 20, 2025, revocation of the October 27, 2021, policy prohibiting immigration arrests in sensitive locations such as schools, courthouses, and hospitals;***
>
> ***b. All documents and communications from December 1, 2018, to the present regarding or otherwise related to Defendants' deployment of roving patrols of CBP and ICE during immigration enforcement activities, such as Operation Metro Surge;***
>
> ***c. All documents and communications from December 1, 2018, to the present regarding or otherwise related to Defendants' use of face recognition and face capture technologies during immigration enforcement activities, such as Operation Metro Surge. This request includes documents and communications related to the rescission of DHS Directive 026-11 and the issuance of the February 2025, DHS Privacy Threshold Analysis as described in ¶¶ 320-40 of the First Amended Complaint;***
>
> ***d. All documents and communications from December 1, 2018, to the present regarding or otherwise related to immigration agents concealing, removing, or swapping license plates when engaged in enforcement activities, such as Operation Metro Surge;***
>
> ***e. All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents to enter residences without a judicial warrant or otherwise enter private property without permission during immigration enforcement activities, such as Operation Metro Surge. This request includes but is not limited to the May 12, 2025, memorandum issued by ICE leadership purportedly to implement "Executive Order 14159, Protecting the American People Against Invasion";***
>
> ***f. All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal***

*immigration agents, under 8 U.S.C. § 1357(a)(2), to arrest an individual if: there is probable cause to believe that (1) the individual is removable alien and (2) the individual is likely to escape before a warrant for his arrest can be obtained. This request includes but is not limited to Defendant Lyons' January 28, 2026, memorandum regarding that arrest authority, as well as documents and communications regarding the 2022 DHS settlement in Castañon Nava et al. v. Dep't of Homeland Security et al., No. 18-cv-3757 (N.D. Ill.), that set forth a policy standard on warrantless arrests;*

*g.  All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents to base seizures of individuals on (1) apparent race or ethnicity; (2) speaking Spanish or speaking English with an accent; (3) presence at a particular location (e.g., bus stop, car wash, tow yard, day laborer pick up site, agricultural site, etc.); or (4) the type of work one does. This request includes but is not limited to guidance issued by Defendants after the U.S. Supreme Court granted the federal government's application for a stay of a district court's temporary restraining order in Noem v. Vasquez Perdomo on September 8, 2025;*

*h.  All documents and communications regarding or otherwise related to immigration agents concealing their faces, when engaged in enforcement activities, such as Operation Metro Surge;*

*i.  All documents and communications regarding or otherwise related to Defendants' staffing and deployment policies or practices with regard to assigned personnel within Minnesota from December 1, 2018-present, including when Defendants increased the number of immigration agents during Operation Metro Surge;*

*j.  All documents and communications from December 1, 2018, to the present, regarding or setting forth guidance, training, or policies on the use of force by immigration agents and immunity from State law violations arising from the use of force during immigration enforcement operations, such as Operation Metro Surge;*

*k.  All documents and communications from December 1, 2018, to the present, regarding the amount of training for newly hired ICE officers, including but not limited to Defendants' reduction in training program requirements to approximately 340 hours.*

For the time period November 1, 2025, until February 1, 2026, Defendants agree to search for any agency memoranda or formal agency policies governing:

1. "Defendants' January 20, 2025, revocation of the October 27, 2021, policy prohibiting immigration arrests in sensitive locations such as schools, courthouses, and hospitals" as it relates to Operation Metro Surge;

2. Defendants' deployment of "roving patrols" as it relates to Operation Metro Surge;

3. Defendants' use of face recognition or face-capturing technologies in relation to Operation Metro Surge;

4. Defendants' purported switching of license plates during immigration enforcement activities as it relates to Operation Metro Surge;

5. Defendants' purported entry into residences or private property without a judicial warrant or permission during immigration enforcement activities in relation to Operation Metro Surge.

6. Defendants' authority to make immigration arrests under 8 U.S.C. § 1357(a)(2) if: there is probable cause to believe that (1) the individual is a removable alien and (2) the individual is likely to escape before a warrant for his arrest can be obtained, in relation to Operation Metro Surge.

7. Defendants' authority to "base seizures of aliens on (1) apparent race or ethnicity; (2) speaking Spanish or speaking English with an accent; (3) presence at a particular location (e.g., bus stop, car wash, tow yard, day laborer pick up site, agricultural site, etc.); (4) the type of work one does," as it relates to Operation Metro Surge;

8. Immigration agents concealing their faces when engaged in immigration enforcement activities in relation to Operation Metro Surge;

9. Immigration agents' use of force when engaged in immigration enforcement activities in relation to Operation Metro Surge;

If any responsive documents are located by the searches outlined above, Defendants agree to provide them to Plaintiffs to the extent they are non-privileged.  To facilitate the

discovery outlined above, Defendants have circulated a proposed protective order to Plaintiffs, who are currently evaluating that draft.  Except as set forth above, Defendants hereby maintain and reassert the objections to discovery previously articulated in Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents dated June 18, 2026.

Dated: July 13, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

/s/ Brian S. Carter
BRIAN S. CARTER (#0390613)
Special Counsel
LIZ KRAMER (#0325089)
Solicitor General
LINDSEY MIDDLECAMP (#0392589)
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-7403 (Voice)
(651) 282-5832 (Fax)
liz.kramer@ag.state.mn.us
brian.carter@ag.state.mn.us
lindsey.middlecamp@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

MINNEAPOLIS CITY ATTORNEY'S
OFFICE
KRISTYN ANDERSON (0267752)
City Attorney
KRISTYN ANDERSON
HEATHER P. ROBERTSON (0390470)
Assistant City Attorney
SARA J. LATHROP (0310232)
Assistant City Attorney

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

/s/ Brantley T. Mayers
BRANTLEY T. MAYERS (FL#1039996)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 890-9874
brantley.t.mayers@usdoj.gov

ANDREW WARDEN
Assistant Director
LEE REEVES
Trial Attorney
Civil Division, Federal Programs Branch
*Counsel for Defendants*

KIRSTEN H. PAGEL (0399114)
Assistant City Attorney
ADAM E. SZYMANSKI (0397704)
Assistant City Attorney
MICHEL A. BREY (0398620)
Assistant City Attorney
350 South Fifth Street
Minneapolis, Minnesota 55415
Tel: 612-673-3000
kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov
heather.robertson@minneapolismn.gov
kirsten.pagel@minneapolismn.gov
adam.szymanski@minneapolismn.gov
michael.brey@minneapolismn.gov
*Attorneys for Plaintiff City of Minneapolis*

SAINT PAUL CITY ATTORNEY'S
OFFICE
IRENE KAO (0392282)
City Attorney
KELSEY MCELVEEN (0396744)
Assistant City Attorney
ALEXANDER HSU (0399275)
Assistant City Attorney
15 W. Kellogg Blvd., #400
Saint Paul, Minnesota 55102
Tel: 651-266-8710
Irene.kao@ci.stpaul.mn.us
Kelsey.mcelveen@ci.stpaul.mn.us
Alexander.hsu@ci.stpaul.mn.us
*Attorneys for Plaintiff City of Saint Paul*

20