Exhibit 1: Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

STATE OF MINNESOTA, *by and
through its Attorney General Keith Ellison*,
CITY OF MINNEAPOLIS, and
CITY OF ST. PAUL

   Plaintiffs,

v.

MARKWAYNE MULLIN, *in his official
capacity as Secretary of the U.S. Department of
Homeland Security*; STEPHEN MILLER, in his
official capacity as Homeland Security Advisor;
JOHN CONDON, *in his official capacity as Acting
Executive Associate Director of Homeland Security
Investigations*; U.S. Department of Homeland
Security; TODD LYONS, *in his official capacity as
Acting Director of U.S. Immigration
and Customs Enforcement*; MARCOS
CHARLES, *in his official capacity as Acting
Executive Associate Director, Enforcement and
Removal Operations;* U.S. Immigration and
Customs Enforcement; RODNEY SCOTT,
*in his official capacity as Commissioner of U.S. Customs
and Border Protection;* TOM HOMAN, *in his official capacity
as Border* Czar; U.S. Customs and Border Protection;
GREGORY BOVINO, *in his official capacity
as Commander of the U.S. Border Patrol*; U.S. Border
Patrol; DAVID EASTERWOOD, *in his official
capacity as Acting Director, Saint Paul Field Office,
U.S. Immigration and Customs Enforcement*,
*in their official capacities,*

   Defendants.

Case No. 0:26-cv-00190-KMM-DJF

**DEFENDANTS' OBJECTIONS
AND RESPONSES TO
PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION
OF DOCUMENTS**

_____

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants in the above-captioned case submit these objections and responses to Plaintiffs' First Set of Requests for Production of Documents.  Defendants' objections are based on information known to Defendants at this time and are made without prejudice to additional objections should Defendants subsequently identify additional grounds for objection. Defendants reserve the right to supplement or amend these responses as appropriate.

### General Objections and Responses to Definitions and Instructions

1.      Defendants object to Plaintiffs' requests because the Court lacks jurisdiction over this case, which should be dismissed in its entirety.  *See* ECF No. 174 & 175. Defendants also object to Plaintiffs' requests because Plaintiffs have failed to state any claims upon which relief can be granted.  *See id.*; *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, No. 24-889, 2026 WL 1593307, at *6 (U.S. June 4, 2026) ("In order to proceed to discovery, a plaintiff must state a claim to relief that is plausible on its face.") (internal quotations omitted).

2.      Defendants' objections and responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case.  Defendants object to the requests for production and accompanying instructions and definitions to the extent they impose obligations in excess of those imposed by the Federal Rules of Civil Procedure.  Defendants will comply with the Federal Rules.

3. Defendants do not, by providing information herein, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate grounds. The inadvertent production by Defendants of information or documents protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information or documents disclosed.

4. Defendants object to Plaintiffs' requests to the extent they seek information protected by the attorney-client privilege, work-product doctrine, deliberative process privilege, law enforcement privilege, state secrets privilege, executive privilege, or any other applicable privilege, exemption, or immunity. Defendants further object to the extent Plaintiffs' requests seek information protected by the constitutional or statutory rights of privacy of Defendants, federal employees, or third parties. Defendants specifically decline to produce privileged information.

5. Defendants object to Plaintiffs' requests to the extent they seek documents that are publicly available or are readily accessible to Plaintiffs or otherwise would be less burdensome for Plaintiffs to obtain than Defendants. *See* Fed. R. Civ. P. 26(b)(2)(C).

6. Defendants further object to Plaintiffs' requests to the extent they relate to any claim brought under the Administrative Procedure Act, as resolution of any such claim is based upon an administrative record without discovery. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).

7. Defendants object to the Definition and Instruction "Defendants," "You," and "Your," because it purports to require information based on an overbroad and expansive definition of documents and information in the possession, custody, or control

2

of Defendants. DHS is an organization encompassing over 250,000 employees and Plaintiffs' instruction would impose unreasonable search and production burdens, disproportionate to the needs of this case. Moreover, Plaintiffs' inclusion of "attorneys" significantly expands the burden of this definition and would include material protected by the attorney work product and attorney-client privilege, including material from Department of Justice attorneys representing Defendants in this litigation. Such material is privileged and any such search would be unreasonable, overbroad, beyond the scope of the litigation, and unduly burdensome. Further, Plaintiffs' inclusion of "other agents" is vague and overbroad, and would create unduly burdensome production obligations. To the extent that Defendants respond that they will search for and produce responsive documents, Defendants will only search locations where it is reasonable and proportional to the needs of the case and not unduly burdensome, in accordance with the Federal Rules of Civil Procedure.

8.  Defendants object to the Definition and Instruction of "Operation Metro Surge" as vague and overbroad. Production of documents about "all immigration enforcement activity and fraud investigations by DHS Personnel in Minnesota" would require production of exceptionally large quantities of irrelevant information and would impose unreasonable search and production burdens, disproportionate to the needs of this case. Defendants also object to the proposed dates for Operation Metro Surge as overbroad and covering an inaccurate time period. Operation Metro Surge began in early December 2025 and its end was announced on February 12, 2026.

9.    Defendants object to the Definition and Instruction of "DHS Personnel" because it purports to require information based on an overbroad and expansive definition of documents and information in the possession, custody, or control of Defendants.  DHS is an organization encompassing over 250,000 employees and Plaintiffs' instruction would impose unreasonable search and production burdens, disproportionate to the needs of this case.  Further, Plaintiffs' inclusion of "any personnel from any agency who have been designated as DHS personnel or designated to carry out DHS functions or has coordinated with or supported DHS functions" is vague and overly burdensome, effectively sweeping in any federal employee who may have "coordinated with or supported" any of DHS's functions, including attorneys. Such information would include material protected by the attorney work product and attorney-client privilege, including material from Department of Justice attorneys representing Defendants in this litigation.  This material is privileged and any such search would be unreasonable, overbroad, beyond the scope of the litigation, and unduly burdensome.

10.    Defendants object to Plaintiffs' definition of "Communication" as vague, ambiguous, overbroad, unduly burdensome, disproportionate to the needs of this case, and beyond the scope of Defendants' obligations under the Federal Rules of Civil Procedure such that Defendants cannot reasonably interpret Plaintiffs' intended meaning.  Defendants further object to this definition to the extent that it requests "spoken" information because such oral expressions are not memorialized in writing and therefore are not properly requested pursuant to Federal Rule of Civil Procedure 34.

4

11.    Defendants object to Plaintiffs' definition of "Describe" as vague, overbroad, and beyond the scope of authorized discovery under Federal Rule of Civil Procedure 34. Nothing in Rule 34 requires Defendants to describe anything in response to a request for production. Defendants' responses will be limited to information discoverable under Rule 34.

12.    Defendants object to Plaintiffs' definition of "document" and "thing" as vague, ambiguous, unduly burdensome, disproportionate to the needs of this case, and beyond the scope of Defendants' obligations under the Federal Rules of Civil Procedure. Defendants will use the meaning of "document" as set forth in Rule 34(a)(1)(A) as relevant and proportional to the needs of this case.

13.    Defendants object to Plaintiffs' definition of "identify" in reference to "a natural person" as unduly burdensome and going beyond the requirements of Federal Rule of Civil Procedure 34 and seeking information protected by the Privacy Act and employees or third parties' right to privacy. Defendants object to Plaintiffs' definition of "identify" in reference to "a document" as unduly burdensome and going beyond the requirements of Federal Rule of Civil Procedure 34. Defendants object to the definition of "identify" in reference to an "entity other than a natural person" as unduly burdensome and going beyond the requirements of Federal Rule of Civil Procedure 34. Defendants will use the ordinary definition of "identify" in the context of the appropriate request for production of responsive documents.

14.    Defendants object to Plaintiffs' instruction regarding "Privileged or Proprietary Matter." Defendants object on the grounds that this instruction imposes

obligations beyond those in the Federal Rules of Civil Procedure. Defendants specifically decline to produce privileged information. Defendants will assert any claim of privilege in accordance with the requirements of the Federal Rules, including Rule 26(b)(5), and will serve an appropriate privilege log(s) within a reasonable time after the accompanying production of documents. Defendants further object to any requirement that they produce a privilege log for privileged material not otherwise properly within the scope of discovery and/or as to which no privilege log would be required pursuant to Federal Rule of Civil Procedure 26(b)(5). Additionally, documents created by or communications sent to or from litigation counsel (including agency counsel responsible for this litigation after commencement of this matter) will not be logged, as information contained therein is not relevant to the claims and defenses in this litigation.

15. Defendants object to Plaintiffs' instruction regarding "Lost or Destroyed Documents" as imposing obligations outside the scope of Federal Rule of Civil Procedure 34 and for being unduly burdensome insofar as it purports to require a document-by-document recounting without regard to the date on which the document was created, the date on which it was lost, discarded, destroyed, or otherwise disposed of, or whether litigation involving the substance of the document was reasonably foreseeable at the time it was lost, discarded, destroyed, or otherwise disposed.

16. Defendants object to Plaintiffs' Instruction regarding "Documents Not In Your Custody Or Control" because it exceeds Defendants' obligations under the Federal Rules of Civil Procedure, which do not require Defendants to identify documents that are not in Defendants' possession, custody, or control. The Rules also do not mandate that

6

Defendants provide information about the inquiries made about such documents or a narrative response concerning documents no longer within Defendants' possession, custody, or control.  Such exercise is likely impossible, but in any event is unduly burdensome, disproportionate, and not required by the Federal Rules.

<strong><u>OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS</u></strong>

**REQUEST NO. 1.**

All documents that define the scope of or outline the parameters of Operation Metro Surge, including but not limited to any memoranda, communications, including deployment communications, or training materials that relate to Operation Metro Surge's goals, benchmarks, methods, tactics, quotas, or duration.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendants incorporate the General Objections and Responses to Definitions and Instructions set forth above in response to this request.  In particular, Defendants reiterate that the Court lacks jurisdiction over this case and Plaintiffs have failed to state a claim upon which relief can be granted, thus there is no basis to require the production of any documents or information in response to this request.  Defendants also object because this request purports to seek discovery related to the merits of Plaintiffs' Administrative Procedure Act claims, which must be decided on the basis of the administrative record without any additional discovery.  All discovery in this case should be stayed pending resolution of Defendants' motion to dismiss.  *See* ECF Nos. 186 & 187.

Defendants further object to this request on the grounds that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case.  As written,

7

this request purports to require DHS to search for and produce every document relating to Operation Metro Surge no matter how cumulative and duplicative in nature. The burden of obtaining and producing all such documents disproportionately outweighs any possible need for the requested documents.  The request is overly broad and unduly burdensome because of its extensive scope, requiring broad searches across DHS from a potentially significant number of custodians, which is disproportionate to the needs of the case.  The objectionable scope of the request is further magnified by the vague nature of the request for all documents that "define the scope of or outline the parameters of Operation Metro Surge," including "all deployment communications, or training materials that relate to Operation Metro Surge's goals, benchmarks, methods, tactics, quotas, or duration."  Every document produced by DHS during Metro Surge arguably would "relate to" Operation Metro Surge's "goal" or "methods."  Consequently, Defendants would have to undertake an unduly burdensome search process, expending disproportionate time and resources, collecting a massive amount of information to review, much of which would be irrelevant to the claims asserted in this case and privileged from disclosure.

Based on the above objections, Defendants will not search for or produce documents and communications in response to this request.

**REQUEST NO. 2.**

All documents that provide the justifications for or describe the objectives of Operation Metro Surge, including any memoranda, communications, including deployment communications, or training materials. This request includes but is not limited to documents regarding or forming a basis for Defendants' statements that:

8

a. Defendants sought to combat fraud with Operation Metro Surge, e.g., including Defendant Noem's post on X, which stated: "The largest DHS operation is happening right now in Minnesota. @POTUS Trump and @Sec_Noem have rallied DHS law enforcement personnel to keep Americans safe and ERADICATE fraud. We're not leaving until the problem is solved"; and White House's post on X that "President Donald J. Trump and his Administration are UNLEASHING a relentless assault to dismantle the massive fraud empires built in Minnesota under the watch of incompetent Democrats like Tim Walz and his Radical Left enablers."

b. Defendants sought to coerce or punish so-called sanctuary jurisdictions with Operation Metro Surge, e.g., including but not limited to: Bondi's January 24, 2026, letter demanding that Plaintiffs: (1) share all of Plaintiffs' records on Medicaid and Food and Nutrition Services programs; (2) repeal "sanctuary policies"; and (3) allow the Department of Justice access to Plaintiffs' voter rolls. Attorney General Bondi indicated that acquiescing to her requests would "help bring back law and order to Minnesota"; Defendant Lyon's statement, which was posted by DHS on January 6, 2026, a day after news reports that an additional 2,000 ICE agents would be sent to Minnesota, describing ICE's operation in Minnesota as "the largest immigration operation ever taking place right now" and that Defendants were "taking the fight to these sanctuary jurisdictions; and Defendant Homan's statement that Defendants would end Operation Metro Surge "real quick" if Plaintiffs would "Let us in the jail. Stop being a sanctuary jurisdiction, sanctuary state, sanctuary city. Give us access to your jail so we can arrest these criminals in the safety and security of the jail. That way, we don't have to go into the neighborhood and find them."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants incorporate the General Objections and Responses to Definitions and Instructions set forth above in response to this request. In particular, Defendants reiterate that the Court lacks jurisdiction over this case and Plaintiffs have failed to state a claim upon which relief can be granted, thus there is no basis to require the production of any documents or information in response to this request. Defendants also object because this request purports to seek discovery related to the merits of Plaintiffs' Administrative Procedure Act claims, which must be decided on the basis of the administrative record

9

without any additional discovery.  All discovery in this case should be stayed pending resolution of Defendants' motion to dismiss.  *See* ECF Nos. 186 & 187.

Defendants further object to this request on the grounds that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case.  As written, this request purports to require the entire DHS to search for and produce every document about the "objectives of Operation Metro Surge," including all "memoranda," "communications," "deployment communications," or "training materials."  The request is overly broad and unduly burdensome because of its extensive scope, requiring broad searches across DHS from a potentially significant number of custodians, which is disproportionate to the needs of the case.  The objectionable scope of the request is further magnified by requests for documents "regarding or forming a basis for" various non-party statements, such as the Attorney General and the President of the United States, which are not appropriate subjects of discovery in this case and outside Defendants' possession, custody, or control.  On its face, the request would potentially require an overwhelmingly burdensome search and collection across DHS and potentially other federal government agencies and non-parties for information "regarding or forming a basis for" various public statements.  This request would require Defendants to expend disproportionate time and resources to a massive amount of information to review, much of which would likely be irrelevant to the claims asserted in this case and privileged from disclosure.

Based on the above objections, Defendants will not search for or produce documents and communications in response to this request.

**REQUEST NO. 3.**

10

All documents and communications that provide or set forth the legal, statutory, regulatory, and constitutional authority to execute Operation Metro Surge.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendants incorporate the General Objections and Responses to Definitions and Instructions set forth above in response to this request. In particular, Defendants reiterate that the Court lacks jurisdiction over this case and Plaintiffs have failed to state a claim upon which relief can be granted, thus there is no basis to require the production of any documents or communications in response to this request. Defendants also object because this request purports to seek discovery related to the merits of Plaintiffs' Administrative Procedure Act claims, which must be decided on the basis of the administrative record without any additional discovery. All discovery in this case should be stayed pending resolution of Defendants' motion to dismiss. *See* ECF Nos. 186 & 187.

Defendants further object to this request because it expressly seeks documents and communications about Defendants' legal authority and therefore would require production of privileged information protected by (a) attorney work product; (b) the attorney-client privilege; (c) the deliberative process privilege; (d) law enforcement privilege, and/or (e) executive privilege, including presidential communications privilege. Defendants also object to this request as vague and overbroad to the extent it seeks documents and communications regarding the legal authority to undertake specific investigatory or law enforcement actions during Operation Metro Surge, such as investigations or arrests of particular individuals. Thousands of individuals were arrested during Operation Metro Surge and it would be unduly burdensome and time-consuming to produce documents

11

setting forth the legal authority for each of those individual actions. Such a request would require Defendants to expend disproportionate time and resources to search and review such information, much of which would likely be irrelevant to the claims asserted in this case, and would outweigh any possible need for the requested information.

Based on the above objections, Defendants will not search for or produce documents and communications in response to this request.

**REQUEST NO. 4.** All documents and communications regarding or otherwise relating to the possible, anticipated, intended, or actual effects of Operation Metro Surge on economic activity in Minnesota; on Plaintiffs' provision of public safety services by law enforcement to Plaintiffs' residents; and on the provision of other governmental health and public welfare services, such as education and medical care, to Plaintiffs' residents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendants incorporate the General Objections and Responses to Definitions and Instructions set forth above in response to this request. In particular, Defendants reiterate that the Court lacks jurisdiction over this case and Plaintiffs have failed to state a claim upon which relief can be granted, thus there is no basis to require the production of any documents or communications in response to this request. Defendants also object because this request to the extent it seeks discovery related to the merits of Plaintiffs' Administrative Procedure Act claims, which must be decided on the basis of the administrative record without any additional discovery. All discovery in this case should be stayed pending resolution of Defendants' motion to dismiss. *See* ECF Nos. 186 & 187.

12

Defendants further object to this request on the grounds that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case. As written, this request purports to require the entire DHS to search for and produce every document and communication "relating to the possible, anticipated, intended, or actual effects of Operation Metro Surge on economic activity in Minnesota." Every law enforcement action by the federal government arguably "relates" to "possible" "economic activity" in one way or another. Arresting someone can reduce that individual's earning potential. An investigation of an entity for fraud could lead to an arrest that results in the closure of a business or forfeiture of funds. The vague and overbroad nature of this request seemingly requires Defendants to produce every document created during Operation Metro Surge because every law enforcement action has the possibility of having a downstream economic consequence. Such a request would require Defendants to expend disproportionate time and resources to search for and review such information, much of which would likely be irrelevant to the claims asserted in this case and protected by privilege.

The same objections apply to the request for all documents "relating to" "possible, anticipated, intended, or actual effects" of "public safety services" and "other governmental health and public welfare services." Like any federal policy, investigations and arrests of individuals for immigration violations or other federal offenses have the potential to generate indirect effects on local public safety and health services. The vague and overbroad nature of this request seemingly requires Defendants to produce every document created during Operation Metro Surge. Such a request would require Defendants to expend

13

disproportionate time and resources to search and review such information, much of which would likely be irrelevant to the claims asserted in this case and protected by privilege.

Defendants also object to Plaintiffs' discovery requests to the extent they seek documents that are publicly available or are readily accessible to Plaintiffs or otherwise would be less burdensome for Plaintiffs to obtain from other sources. *See* Fed. R. Civ. P. 26(b)(2)(C). For example, Plaintiffs can more readily seek information about these topics from their own residents or agencies.

To the extent this request relates to Plaintiffs' standing, Plaintiffs have not satisfied the requirements for jurisdictional discovery. *See, e.g.*, *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011).

Based on the above objections, Defendants will not search for or produce documents and communications in response to this request.

**REQUEST NO. 5.** All documents and communications regarding the final agency actions alleged in the First Amended Complaint, e.g., in ¶¶ 282-477, including:

a) All documents and communications regarding or otherwise related to Defendants' January 20, 2025, revocation of the October 27, 2021, policy prohibiting immigration arrests in sensitive locations such as schools, courthouses, and hospitals;

b) All documents and communications from December 1, 2018, to the present regarding or otherwise related to Defendants' deployment of roving patrols of CBP and ICE during immigration enforcement activities, such as Operation Metro Surge;

c) All documents and communications from December 1, 2018, to the present regarding or otherwise related to Defendants' use of face recognition and face capture technologies during immigration enforcement activities, such as Operation Metro Surge. This request includes documents and communications related to the rescission of DHS Directive 026-11 and the issuance of the February 2025, DHS Privacy Threshold Analysis as described in ¶¶ 320-40 of the First Amended Complaint;

d) All documents and communications from December 1, 2018, to the present regarding or otherwise related to immigration agents concealing, removing, or swapping license plates when engaged in enforcement activities, such as Operation Metro Surge;

e) All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents to enter residences without a judicial warrant or otherwise enter private property without permission during immigration enforcement activities, such as Operation Metro Surge. This request includes but is not limited to the May 12, 2025, memorandum issued by ICE leadership purportedly to implement "Executive Order 14159, *Protecting the American People Against Invasion*";

f) All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents, under 8 U.S.C. § 1357(a)(2), to arrest an individual if: there is probable cause to believe that (1) the individual is removable alien and (2) the individual is likely to escape

15

before a warrant for his arrest can be obtained. This request includes but is not limited to Defendant Lyons' January 28, 2026, memorandum regarding that arrest authority, as well as documents and communications regarding the 2022 DHS settlement in *Castañon Nava et al. v. Dep't of Homeland Security et al.*, No. 18-cv-3757 (N.D. Ill.), that set forth a policy standard on warrantless arrests;

g) All documents and communications from December 1, 2018, to the present regarding or otherwise related to the authority of federal immigration agents to base seizures of individuals on (1) apparent race or ethnicity; (2) speaking Spanish or speaking English with an accent; (3) presence at a particular location (e.g., bus stop, car wash, tow yard, day laborer pick up site, agricultural site, etc.); or (4) the type of work one does. This request includes but is not limited to guidance issued by Defendants after the U.S. Supreme Court granted the federal government's application for a stay of a district court's temporary restraining order in *Noem v. Vasquez Perdomo* on September 8, 2025;

h) All documents and communications regarding or otherwise related to immigration agents concealing their faces, when engaged in enforcement activities, such as Operation Metro Surge;

i) All documents and communications regarding or otherwise related to Defendants' staffing and deployment policies or practices with regard to assigned personnel within Minnesota from December 1, 2018-present, including when Defendants increased the number of immigration agents during Operation Metro Surge;

16

j) All documents and communications from December 1, 2018, to the present, regarding or setting forth guidance, training, or policies on the use of force by immigration agents and immunity from State law violations arising from the use of force during immigration enforcement operations, such as Operation Metro Surge;

k) All documents and communications from December 1, 2018, to the present, regarding the amount of training for newly hired ICE officers, including but not limited to Defendants' reduction in training program requirements to approximately 340 hours.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants incorporate the General Objections and Responses to Definitions and Instructions set forth above in response to this request. In particular, Defendants reiterate that the Court lacks jurisdiction over this case and Plaintiffs have failed to state a claim upon which relief can be granted, thus there is no basis to require the production of any documents or communications in response to this request. Defendants also object because this request because it seeks discovery related to the merits of Plaintiffs' Administrative Procedure Act claims, which must be decided on the basis of the administrative record without any additional discovery. Indeed, the allegations set forth in paragraphs 282-477 of the Amended Complaint fall under the heading "Unlawful And Arbitrary And Capricious Final Agency Actions." "It is well-established" that review of such claims "under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). "That record, not some new record made initially in the reviewing court, becomes

17

the focal point for judicial review." *Id.*  Plaintiffs also have not made a "strong showing"

of "extraordinary circumstances" to seek extra-record discovery. *Id.*  All discovery in this

case should be stayed pending resolution of Defendants' motion to dismiss. *See* ECF Nos.

186 & 187.

Defendants further object to this request on the grounds that it is overbroad, unduly

burdensome, and disproportionate to the needs of the case.  As written, this request purports

to require the entire DHS to search for and produce every document and communication

"regarding" or "relating to" eleven broad categories of law enforcement information over

an eight-year period since December 1, 2018.  The requests are not geographically limited

to Minnesota or Operation Metro Surge, and require production of information on a

nationwide basis, including cities such as Los Angeles (*Vazquez Perdomo*) and Chicago

(*Castañon Nava*) that have no relevance to this case.  The vague requests are overbroad in

the extreme and require DHS to search potentially thousands of custodians and data

repositories nationwide for every document and communication since 2018 about, for

example, "guidance, training, or policies on the use of force by immigration agents,"

"patrols of CBP and ICE during immigration enforcement activities," "training for newly

hired ICE officers," and warrantless arrests under 8 U.S.C. § 1357.  It is not a stretch to say

that this request seeks every document and communication that DHS has created since

December 1, 2018, related to or regarding immigration enforcement in the United States.

These requests would require Defendants to expend disproportionate time and resources to

search for and review a voluminous amount of information, much of which would likely

18

be irrelevant to the claims asserted in this case and protected by privilege, and would outweigh any possible need for the requested information.

Based on the above objections, Defendants will not search for or produce documents and communications in response to this request.

Dated: June 18, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

 /s/Andrew Warden
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney
   General
ANDREW WARDEN
Assistant Branch Director
LEE REEVES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-5084
Fax: (202) 616-8470
Andrew.Warden@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on June 18, 2026, I sent the foregoing document (Defendants' Objections and Responses to Plaintiffs' First Set of Requests For Production) to the following counsel of record for Plaintiffs via email:

Lindsey Middlecamp:  Lindsey.Middlecamp@ag.state.mn.us;

Jacob Harris: Jacob.Harris@ag.state.mn.us

Sara Lathrop: sara.lathrop@minneapolismn.gov

Kelsey McElveen: kelsey.mcelveen@ci.stpaul.mn.us

Judy Fusco: Judy.Fusco@ag.state.mn.us

Brian Carter:  Brian.Carter@ag.state.mn.us


                        */s/Andrew Warden*
                        BRANTLEY T. MAYERS
                        Counsel to the Assistant Attorney
                           General
                        ANDREW WARDEN
                        Assistant Branch Director
                        LEE REEVES
                        Trial Attorney
                        U.S. Department of Justice
                        Civil Division, Federal Programs Branch
                        1100 L Street, N.W.
                        Washington, D.C. 20005
                        Telephone: (202) 616-5084
                        Fax: (202) 616-8470
                        Andrew.Warden@usdoj.gov

                        *Counsel for Defendants*

20